**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ALISHA STRIFE,** | § | **NO. _____** |
| | § | |
| | § | |
| **Plaintiff** | § | **JURY DEMANDED** |
| | § | |
| **v.** | § | |
| | § | |
| **ALDINE INDEPENDENT** | § | |
| **SCHOOL DISTRICT; RANDY** | § | |
| **BATES, JR., IN HIS OFFICIAL** | § | |
| **CAPACITY; DR. KIMBERLEY** | § | |
| **BOOKER, IN HER OFFICIAL** | § | |
| **CAPACITY; STEVE MEAD, IN** | § | |
| **HIS OFFICIAL CAPACITY;** | § | |
| **ROSE AVALOS, IN HER** | § | |
| **OFFICIAL CAPACITY;** | § | |
| **CONCEPTION ESPARZA, IN** | § | |
| **HER OFFICIAL CAPACITY;** | § | |
| **DR. VIOLA GARCIA, IN HER** | § | |
| **OFFICIAL CAPACITY;** | § | |
| **PAUL SHANKLIN, IN HIS** | § | |
| **OFFICIAL CAPACITY** | § | |
| | § | |
| **Defendants** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

In this Original Complaint, Plaintiff, Alisha Strife, respectfully asserts as follows:

## I.  INTRODUCTION

"The world will little note, nor long remember what we say here, but it can never forget what they did here. It is for us the living, rather, to be dedicated here to the unfinished work which they who fought here have thus far so nobly advanced."

President Abraham Lincoln, "The Gettysburg Address," November 19, 1863

1. In 2004, Alisha Strife suffered serious, debilitating, and long-term physical and psychological injuries while serving in the United States Army in Iraq during "Operation Iraqi Freedom."

Since 2004, Ms. Strife has undergone multiple surgeries, extensive physical rehabilitation, and extensive psychiatric therapy to address her serious service-related injuries.

In 2017, the United States Department of Veteran Affairs ("VA") determined that Ms. Strife was 100% disabled from Post-Traumatic Stress Disorder ("PTSD") and partially disabled from other service-related injuries.

In June 2022, "The Rescue For PTSD"—a non-profit organization that trains and provides service dogs to disabled U.S. military veterans suffering from PTSD—awarded Ms. Strife a specially trained service dog—named "Independence"—to help her cope with her debilitating PTSD, major depression, and physical injuries.

Since August 30, 2022, Aldine Independent School District ("AISD") has

2

repeatedly and steadfastly refused to accommodate Ms. Strife's disabilities by allowing her to have and use her service dog while she works as a Human Resources project analyst at AISD. AISD has denied Ms. Strife the right to have and use her service dog at work despite numerous pleas from Ms. Strife (both individually and through counsel), her VA doctors, and "The Rescue for PTSD" over the past five months and despite allowing able-bodied AISD employees to have and use dogs at work.

In violation of its own policies and federal and state disability discrimination laws and in retaliation for Ms. Strife exercising her right to request a reasonable accommodation of her disabilities, AISD has also repeatedly demanded that Ms. Strife undergo a complete medical examination by an *AISD-retained* doctor—a doctor who has no expertise in diagnosing or treating PTSD, depression, or other psychological conditions—as a pre-condition to its even considering her request for reasonable accommodation.

AISD has subjected other disabled individuals to such disability-based discrimination and retaliation and, therefore, its discrimination against Ms. Strife is part of a pattern, practice, custom, and/or policy of discriminating against, retaliating against, and interfering with the rights of disabled individuals who exercise their rights under federal and state law to non-discrimination in the workplace and in

"public facilities."

Therefore, this lawsuit is designed to remedy AISD's violations of Ms. Strife's rights under the ADA, the Rehabilitation Act, Tex. Labor Code section 21.001 *et seq.*, and Tex. Hum. Resources Code section 121.001 *et seq.* and prevent AISD from subjecting other disabled veterans/persons to such illegal conduct.

## II. JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction under 28 U.S.C. § 1331, in that claims are asserted against Defendants under federal law: specifically, the Americans with Disabilities Act ("ADA"), 42 U.S.C. section 12111 *et seq.*; and the Rehabilitation Act, 29 U.S.C. section 791 *et seq.*

3. This Court has supplemental jurisdiction of Plaintiff's state law claims against the Defendants under 28 U.S.C. section 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the U.S. Constitution.

4. Venue lies in this District pursuant to 28 U.S.C. § 1391, in that AISD and its Trustees reside in this District.

## V. PARTIES

5. Plaintiff, Alisha Strife, is a citizen of the United States and a resident of Harris County, Texas.

6. Defendant, Aldine Independent School District ("AISD"), is a public school district organized and operated under Chapter 11 of the Texas Education Code.

7. Defendant, Randy Bates, Jr., is an AISD Trustee. Mr. Bates is sued in his official capacity as an AISD Trustee.

8. Defendant, Dr. Kimberley Booker, is an AISD Trustee. Dr. Booker is sued in her official capacity as an AISD Trustee.

9. Defendant, Steve Mead, is an AISD Trustee. Mr. Mead is sued in his official capacity as an AISD Trustee.

10. Defendant, Rose Avalos, is an AISD Trustee. Ms. Avalos is sued in her official capacity as an AISD Trustee.

11. Defendant, Conception Esparza, is an AISD Trustee. Ms. Esparza is sued in her official capacity as an AISD Trustee.

12. Defendant, Dr. Viola Garcia, is an AISD Trustee. Dr. Garcia is sued in her official capacity as an AISD Trustee.

13. Defendant, Paul Shanklin, is an AISD Trustee. Mr. Shanklin is sued in his official capacity as an AISD Trustee.

## VI. RELEVANT FACTS

### A. Alisha Strife Is A Disabled Veteran Of The United States Military

5

14. Alisha Strife served in the United States Army from March 2003 to May 2005.

15. In 2003, Ms. Strife was deployed to Iraq to serve in the United States military operation, "Operation Iraqi Freedom."

16. In 2004—while Ms. Strife was still deployed in Iraq—she was seriously injured when a HMMWV in which she was riding hit a cement barrier.

17. During her rehabilitation, Ms. Strife was diagnosed with Post Traumatic Stress Disorder ("PTSD").

18. As a result of her physical injuries and PTSD, Ms. Strife was medically discharged from the Army in May 2005.

19. In 2006 Ms. Strife underwent reconstructive surgery at Houston's Veteran Affairs' ("VA") hospital to repair her fractured right knee.

20. In 2009 Ms. Strife underwent right shoulder surgery to repair another service-related injury.

21. In December 2019, Ms. Strife underwent a combined Medial Patellafemoral Ligament (MPFL) reconstruction with Tibial Tubercle Osteotomy surgery.

22. In May 2020 Ms. Strife suffered a left ankle fracture from a fall.

23. In September 2020, Ms. Strife underwent surgery for a torn labrum in

her right hip.

24. In October 2020 Ms. Strife fractured her right ankle after suffering another fall due to her chronic instability.  She was also diagnosed with a traumatic brain injury ("TBI") and osteopenia.

25. In April 2022, Ms. Strife again fractured her right ankle due to her service-related instability.

26. Since approximately 2005, Ms. Strife has undergone extensive medical treatment at the VA for her service-related PTSD, depression, anxiety.

27.  In 2017, the VA classified Ms. Strife as 100% disabled from her PTSD and partially disabled from her right leg injuries and degenerative joint disease. *See* Exhibit A.

28. In December 2022, the VA reaffirmed that Ms. Strife is 100% disabled from her service-related PTSD and partially disabled from her service-related physical injuries. *See* Exhibit B.

29. As a result of the serious physical injuries, PTSD, and other psychological conditions referenced in paragraphs 16 through 28, Ms. Strife constitutes an individual with a "disability," as that term is defined under the ADA (42 U.S.C. section 12102) and the Rehabilitation Act; a person with a "disability," as that term is defined under Tex. Labor Code section 21.002(6) and 21.002(11-a);

7

and  a "person with a disability," as that term is defined under Tex. Hum.

Resources Code section 121.002(4).

**B. Alisha Strife Receives A Service/Assistance Dog To Help Her Cope With Her PTSD And Other Disabilities**

30. Post-Traumatic Stress Disorder ("PTSD") is an anxiety and stress-related disorder characterized by persistent and intense symptoms related to intrusion, avoidance, negative alterations in cognition and mood, and alterations in arousal and reactivity.

31. PTSD is associated with high rates of comorbidity with substance use, depression, and suicidal ideation.

32. The VA estimates that approximately 20% of United States military veterans returning from post-9/11 deployments suffer from PTSD.

33.  Within the military population, PTSD can be difficult to treat.

34. A meta-analysis of nine randomized clinical trials of psychotherapy— a common treatment for PTSD—found that up to 72% of military patients maintained their pre-treatment PTSD diagnoses.

35. Studies show that military members infrequently take advantage of mental health services.

36. Studies further show that, among military members who do seek professional help, dropout rates during PTSD treatment can be as high as 50%.

37. Therefore, clinicians and researchers have concluded that there is a critical need for alternative and complementary treatments for PTSD in military patients.

38. Clinical studies show that specially trained therapy dogs reduce PTSD symptoms in military members and veterans and improve their quality of life. *See*, e.g., Department of Veteran Affairs, "A Randomized Trial of Differential Effectiveness of Service Dog Pairing Versus Emotional Support Dog Pairing to Improve Quality of Life for Veterans with PTSD," January 5, 2020, available at https://www.research.va.gov/REPORT-Study-of-Costs-and-Benefits-Associated-with-the-Use-of-Service-Dogs-Monograph1.pdf; Marguerite E. O'Haire & Kerri E. Rodriguez, *"Preliminary Efficacy of Service Dogs as a Complementary Treatment for Posttraumatic Stress Disorder in Military Members and Veterans," Journal of Consulting and Clinical Psychology, 86*(2), 179–188, available at https://psycnet.apa.org/manuscript/2018-02789-002.pdf; Kerri E. Rodriguez et al, "The effect of a service dog on salivary cortisol awakening response in a military population with posttraumatic stress disorder (PTSD), Psychoneuroendocrinology, 98: 202–210, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8454180/

39. "The Rescue for PTSD" ("RPTSD") is a 501(c)(3) non-profit

9

organization that trains shelter/rescue dogs to serve as psychiatric service dogs for

military veterans suffering from PTSD. *See https://rescueforptsd.org/*

40. In 2022, RPTSD specially trained and equipped a dog—named

"Independence" ("Inde")—to assist Ms. Strife in coping with her PTSD and other

service-related injuries. RPTSD specially trained and equipped "Inde" to perform

numerous commands/therapeutic techniques for Ms. Strife, including: a) "Deep

Pressure Therapy"—also known as tactile stimulation—which assists Ms. Strife

with her PTSD; b) "Grounding Handler," which assists Ms. Strife with anxiety

episodes and protects her if/when she falls; c) "On The Guard," which alerts Ms.

Strife to the presence of others; and d) "The Front/Block," which alerts Ms. Strife

to and protects her from distress. *Id.*

41. RPTSD also extensively trained Ms. Strife in handling "Inde."

42. In June 2022, RPTSD provided "Inde" to Ms. Strife for the purpose of

serving as Ms. Strife's psychiatric therapy dog.

43. Since June 2022, RPTSD has continued to specially train "Inde" to

continue to assist Ms. Strife in coping with her PTSD and other psychological and

physical disabilities.

44. Since June 2002 Ms. Strife has taken and used "Inde" as a service dog in

her children's public schools; on a college campus; on public transportation; on a

10

commercial airplane; in grocery stores and other retail establishments; in VA

facilities; on military installations; and in other venues, including "public facilities"

and "places of public accommodation"—all without incident and without denial of

entry/use.

45. Based on the facts alleged in paragraphs 38 through 44, "Inde" qualifies

as a "service animal" under the ADA, the Rehabilitation Act, and Tex. Labor Code

section 21.001 *et seq.* and as a "service animal" or "assistance animal" under Tex.

Hum. Resources Code section 121.002(1).

### C. AISD Denies Ms. Strife's Request To Have And Use "Inde" At Work And Otherwise Discriminates Against Her Based On Her Disabilities

46. Ms. Strife has been employed by AISD since the 2012-2013 school

year. Therefore, she constitutes an "employee," as that term is defined under 42

U.S.C. 1211(4) and Tex. Labor Code section 21.002(7).

47. AISD and its Trustees constitute "employer(s)," as that term is defined

under 42 U.S.C. section 12111(5) and Tex. Labor Code section 21.002(8).

48. Currently, Ms. Strife serves as the Performance Management Project

Analyst in AISD's Human Resources Department.

49. Throughout her approximately ten years of employment at AISD, Ms.

Strife has consistently received AISD's highest job evaluation.

50. On August 30, 2022, Ms. Strife first requested that AISD—through its third party contractor, Broadspire—reasonably accommodate her disabilities by allowing her to have and use "Inde" while at work at AISD

51. Throughout September 2022, Broadspire stonewalled Ms. Strife's disability accommodation request.

52. Therefore, Ms. Strife directly requested that AISD reasonably accommodate her disabilities by allowing her to have and use "Inde" at work.

53. In support of her direct accommodation request to AISD, Ms. Strife tendered a September 20, 2022 letter from Dr. Lisa Miller, a VA Doctor of Pharmacy who has treated Ms. Strife for her service-related PTSD, major depression, and anxiety since 2007. *See* Exhibit C.

54. In her September 20, 2022 letter, Dr. Miller stated that Ms. Strife suffers from "Major Depression, Post Traumatic Stress Disorder as well as a traumatic brain injury which affects her balance." *Id.* Dr. Miller further stated that Ms. Strife suffers from "osteopenia and is prone to falling." *Id.* Dr. Miller further stated that Ms. Strife's service dog is "invaluable to her mental and physical health recovery." *Id.*

55. In further support of her direct accommodation request, Ms. Strife tendered to AISD a September 29, 2022 letter from Dr. Gurtej S. Mann, a VA

psychiatrist who has treated Ms. Strife since August 2022. *See* Exhibit D.

56. In his September 29, 2022 letter, Dr. Mann also stated that Ms. Strife suffers from "Major Depression, Post Traumatic Stress Disorder as well as a traumatic brain injury which affects her balance." *Id.* Dr. Mann further stated that Ms. Strife suffers from "osteopenia and is prone to falling." *Id.* Dr. Mann further stated that Ms. Strife's service dog is "invaluable to her mental and physical health recovery." *Id.*

57. Dr. Mann concluded his September 29, 2022 letter by requesting that Ms. Strife be allowed to have her service dog with her at work. *Id.*

58. Despite Dr. Miller and Dr. Mann's attestations that Ms. Strife suffers from serious physical and psychological injuries that require her to have a service dog at work, AISD refused to allow Ms. Strife to have and use "Inde" at work.

59. On or about November 1, 2022, Dr. Mann completed an AISD-provided "Job Accommodation Questionnaire" (JAQ) regarding Ms. Strife's request that AISD reasonably accommodate her disabilities. *See* Exhibit E.

60. In his JAQ, Dr. Mann again attested that Ms. Strife requires a service dog at work as a reasonable accommodation of her disabilities. *See* Exhibit E.

61. On or about November 1, 2022, AISD received Dr. Mann's JAQ for Ms. Strife.

62. Nevertheless, AISD still refused to allow Ms. Strife to have and use "Inde" at work.

63. Despite receiving Dr. Miller and Dr. Mann's letters referenced in paragraphs 54 and 55, *supra*, and Dr. Mann's JAQ referenced in paragraph 59, *supra*, AISD notified Ms. Strife that it was requiring her to submit to a medical examination by an ***AISD-retained doctor***.

64. AISD's demand that Ms. Strife submit to a complete medical examination by an AISD-retained doctor—which, as detailed *infra*, AISD maintained through January 2023—violates AISD's own policies.  Specifically, AISD's "DBB-Local" policy provides, in relevant part:

> The Superintendent or designee may require an employee to undergo a medical examination if information received from the employee, the employee's supervisor, or other sources indicates the employee has a physical or mental impairment that:
>
> > 1. Interferes with the employee's ability to perform essential job functions; or
> >
> > 2. Poses a direct threat to the health or safety of the employee or others. A communicable or other infectious disease may constitute a direct threat.

*See* Exhibit F.

65. Before ordering Ms. Strife to submit to a medical examination by an AISD-retained doctor, AISD received ***no*** information that Ms. Strife had a physical

14

or mental impairment that interfered with her ability to perform essential job functions.

66. Consequently, on November 11, 2022, "The Rescue for PTSD"—through its legal counsel (Jennifer O'Connell)—notified AISD, in writing, that its refusal to allow Ms. Strife to have and use "Inde" at work and its demand that she submit to a medical examination by an AISD-retained doctor violate the ADA. *See* Exhibit G.

67. Nevertheless, AISD still refused to allow Ms. Strife to have and use her service dog at work.

68. On November 16, 2022, AISD ***again*** demanded that Ms. Strife submit to a complete medical examination by an ***AISD-retained doctor*** as a pre-condition to its considering allowing her to have and use "Inde" while at work. *See* Exhibit F.

69. On November 18, 2022, Ms. Strife—through her undersigned counsel—notified AISD that its demand that she submit to a medical examination by an AISD-retained doctor before even considering allowing her to have and use "Inde" at work violates federal and state disability discrimination laws, including the ADA and Tex. Labor Code section 21.001 *et seq*. Therefore, Ms. Strife demanded that AISD withdraw its medical examination requirement and permit her to have and use "Inde" at work. *See* Exhibit H.

15

70. On December 5, 2022, AISD—through its General Counsel (M. Kaye DeWalt)—notified Ms. Strife—through her undersigned counsel—that it refused to withdraw its demand that Ms. Strife submit to a medical examination by its retained doctor as a pre-condition to having and using "Inde" at work.

71. Therefore, on December 22, 2022, Ms. Strife—through her undersigned counsel—notified AISD, in writing, a ***second*** time that its demand that she submit to a medical examination by an AISD-retained doctor violates federal and state disability discrimination laws, including the ADA, the Rehabilitation, and Tex. Labor Code section 21.001 *et seq*. Ms. Strife notified AISD that if—by January 5, 2023—AISD refused to withdraw that demand, she would commence legal action against it under the aforementioned federal and state disability discrimination laws. *See* Exhibit I.

72. On December 23, 2022, AISD again notified Ms. Strife that she must submit to a complete medical examination by an AISD-retained doctor before it would consider allowing her to have and use "Inde" at work. *See* Exhibit J. Specifically, AISD instructed Ms. Strife that, on January 10, 2023, she must submit to a medical examination by "Dr. Nguyen" at a Concentra Healthcare ("Concentra") facility in Houston.

73. Dr. Nguyen—the AISD-retained doctor whom AISD demanded Ms.

Strife have examine her at Concentra—is **not** a psychiatrist or psychologist and has no other expertise in diagnosing or treating PTSD.

74. The medical examination that AISD demanded Ms. Strife submit to by its retained doctor was intended to reveal and would necessarily have revealed to AISD Ms. Strife's disability *vel non* and the extent of her disability.

75. The medical examination that AISD demanded Ms. Strife submit to by its retained-doctor would have exceeded the scope of any even *putatively* legal medical examination allowable under the ADA, the Rehabilitation Act, Tex. Labor Code section 21.001 *et seq.*, and Tex. Hum. Resources Code section 121.001 *et seq.*

76. Therefore, on January 6, 2023, Ms. Strife—through her undersigned counsel—again notified AISD, in writing, that its December 23, 2022 demand that she submit to a medical examination by an AISD-retained doctor violates federal and state disability discrimination laws, including the ADA, the Rehabilitation Act, Tex. Labor Code section 21.001 *et seq.*, and Tex. Hum. Resources Code section 121.001 *et seq.* Ms. Strife demanded—for a **third** time—that AISD withdraw its medical examination requirement and allow her to have and use "Inde" at work. *See* Exhibit K.

77. On January 10, 2023, Ms. Strife—and "Inde"—underwent a

comprehensive physical examination at the VA to determine whether "Inde"

effectively assists her with her mobility issues. The VA's physical examination of

Ms. Strife was conducted by Dr. Sheryl Vandeven, a VA doctor of Physical

Therapy. *See* Exhibit L.

78. Dr. Vandeven concluded that Ms. Strife has "chronically impaired

standing balance and gait, with history of multiple falls and injuries including

fractures requiring multiple leg surgeries." *Id.* Dr. Vandeven further concluded that

Ms. Strife's "[c]ondition is appropriate for use of a mobility dog." *Id.*

79. Based upon Dr. Vandeven's findings, Dr. Darlene Makulski—a VA and

Baylor College of Medicine Assistant Professor of Physical Medicine and

Rehabilitation who has treated Ms. Strife since December 2020—concluded that a

"certified service mobility dog is appropriate for Ms. Strife and should be utilized

in all settings (including place of employment) to avoid further balance related

injuries." *See* Exhibit M.

80. On January 11, 2023, Ms. Strife—through her undersigned counsel—

again notified AISD, in writing, that its continuing demand that she submit to a

medical examination by an AISD-retained doctor violates federal and state

disability discrimination laws, including the ADA, the Rehabilitation Act, and Tex.

Labor Code section 21.001 *et seq.* Therefore, Ms. Strife demanded—for a ***fourth***

time—that AISD withdraw its medical examination requirement and permit her to have and use "Inde" at work. *See* Exhibit N.

81. On January 13, 2023, Ms. Strife—through her undersigned counsel—provided AISD with the results of Dr. Vandeven's January 10, 2023 medical examination referenced in paragraphs 75 and 76, *supra*.

82. On January 13, 2023, AISD—through its General Counsel—notified Ms. Strife—through her undersigned legal counsel—that it ***refused*** to withdraw its demand that she submit to a medical examination by an AISD-retained doctor.

83. Despite the VA's January 10, 2023 examination and her VA doctors' consistent assessment that Ms. Strife requires a service dog at work for her disabilities, AISD has continued to refuse to allow Ms. Strife to enter with and use at work and in its "public facilities" her service dog—in violation of the ADA, the Rehabilitation Act, Tex. Labor Code section 21.001 *et seq.*, and Tex. Hum. Resources Code section 121.001 *et seq.*

### D. AISD Has Never Proffered Or Tendered To Alisha Strife Any Accommodation of Her Disabilities And Has Protracted And Violated The "Interactive Process"

84. AISD has never proffered nor tendered to Ms. Strife ***any*** reasonable accommodation of her disabilities.

85. As detailed *supra*, AISD has delayed, abandoned, and otherwise violated

the "interactive process" with respect to Ms. Strife's request that it reasonably accommodate her disabilities by allowing her to have and use her service dog at work and in its "public facilities"—in violation of the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.*, and Tex. Hum. Resources Code section 121.001 *et seq.*

### E. AISD Allows Able-Bodied Employees To Have And Use Dogs At Work

86. Although AISD has refused to reasonably accommodate Ms. Strife's disabilities by allowing her to have and use her service dog at work and in its "public facilities," AISD has allowed *able-bodied* employees to have and use dogs at work.

87. For example, AISD not only allows but authorizes AISD police officers to have and use large, highly aggressive police dogs in AISD's schools. These highly aggressive AISD dogs routinely encounter AISD students in AISD schools.

88. On January 22, 2022 AISD invited one of its highly aggressive police dogs ("Delta") and that dog's AISD handler to attend a "special recognition" ceremony held by the Board of Trustees in AISD's Donaldson administration building—a "public facility." During that ceremony, AISD's Board of Trustees—which includes Defendant Trustees—recognized its highly aggressive police dog as an AISD "Employee Of The Month."

20

### F. AISD Has Subjected Other Disabled Individuals To Disability Discrimination

89. On information, AISD has subjected other person(s) with disabilities to the same or similar discrimination and retaliation to which it has subjected Ms. Strife—in violation of the ADA, the Rehabilitation Act, Tex. Hum. Resources Code section 121.001 *et seq.*, and Tex. Labor Code section 21.001 *et seq.*

90. AISD has a pattern, practice, custom, and/or policy of subjecting "person(s) with a disability" to disability discrimination, retaliation, and other violations of the ADA, the Rehabilitation Act, Tex. Hum. Resources Code section 121.001 *et seq.*, and Tex. Labor Code section 21.001 *et seq.*

### G. AISD Has No Legitimate, Non-Discriminatory Reason For Discriminating And Retaliating Against Ms. Strife

91. AISD has never articulated nor offered any evidence of any legitimate, non-discriminatory reason for discriminating and retaliating against Alisha Strife in violation of Tex. ADA, the Rehabilitation Act, Tex. Hum. Resources Code section 121.001 *et seq.*, and Tex. Labor Code section 21.001 *et seq.*

92. To the extent that AISD may *belatedly* articulate and offer evidence of "legitimate, non-discriminatory" reason(s) for discriminating and retaliating against Alisha Strife in violation of Tex. ADA, the Rehabilitation Act, Tex. Hum. Resources Code section 121.001 *et seq.*, and Tex. Labor Code section 21.001 *et*

*seq.*, such reason(s) are not, in fact, legitimate or non-discriminatory; are not

credible; and are merely pretext(s) and subterfuge(s) for AISD's intentional

disability discrimination against, retaliation against, and interference with Ms.

Strife's rights—in violation of federal and state disability discrimination laws.

### H. AISD Will Not Suffer Any Hardship From Allowing Ms. Strife To Have And Use Her Service Dog At Work And In Its "Public Facilities"

93. AISD has never asserted nor proffered any evidence that allowing Ms.

Strife to have and use a service dog at work would cause AISD any hardship or

burden—let alone, an undue hardship or burden.

94. AISD's allowing Ms. Strife to have and use a service dog at work would

not cause AISD any undue hardship or burden.

### I. AISD Intentionally Violated Alisha Strife's Rights Under Federal And State Disability Discrimination Laws

95. As the facts detailed *supra* and incorporated herein by reference attest,

AISD has failed and/or refused to make a reasonable workplace accommodation to

known physical and/or mental limitations of Alisha Strife, an otherwise qualified

individual with a "disability" who is an AISD employee—in violation of the ADA,

the Rehabilitation Act, and/or Tex. Labor Code section 21.001 *et seq.*,

96. As the facts detailed *supra* and incorporated herein by reference attest,

AISD has refused and/or failed to employ Alisha Strife—a disabled individual—on

22

the same terms and conditions as able-bodied individuals—in violation of the

ADA, the Rehabilitation Act, Tex. Hum. Resources Code section 121.001 *et seq.*,

and Tex. Labor Code section 21.001 *et seq.*

97. As the facts detailed *supra* and incorporated herein by reference attest,

AISD has retaliated against, discriminated against, and interfered with the rights of

Alisha Strife because she opposed its discriminatory employment practice(s); made

or filed a charge of discrimination; filed a complaint of disability discrimination;

and/or assisted, or participated in any manner in an investigation, proceeding, or

hearing under those laws.

98. As the facts detailed *supra* and incorporated herein by reference attest,

AISD has made illegal demands or inquiries relating to the qualifications or

certifications of Alisha Strife's "service animal"/"assistance animal" for purposes

of that animal's admittance to "public facilit(ies)"—which demands and inquiries

violate the ADA, the Rehabilitation Act, Tex. Hum. Resources Code section

121.001 *et seq.* and Tex. Labor Code section 21.001 *et seq.*

99. As the facts detailed *supra* and incorporated herein by reference attest,

AISD's demand that Ms. Strife undergo a complete medical examination by an

(unqualified) AISD-retained doctor as a pre-condition to its considering allowing

her to have and use her service dog at work and in its "public facilities" constitutes

disability discrimination, retaliation for her exercising her protected rights, and interference with her protected rights under the ADA, the Rehabilitation Act, Tex. Labor Code section 21.001 *et seq.*, and Tex. Hum. Resources Code section 121.001 *et seq.*

100. AISD has intentionally, knowingly, and purposely discriminated against, retaliated against, and interfered with Alisha Strife's rights under federal and state disability discrimination laws in violation of the ADA, the Rehabilitation Act, Tex. Hum. Resources Code section 121.001 *et seq.*, and Tex. Labor Code section 21.001 *et seq.*

101. AISD's intentional, knowing, and purposeful disability discrimination against Alisha Strife, retaliation against Alisha Strife, and interference with her protected rights under the ADA, the Rehabilitation Act, Tex. Hum. Resources Code section 121.001 *et seq.*, and Tex. Labor Code section 21.001 *et seq.* have harmed her and caused her substantial damage. Such discrimination, retaliation, and interference are the "motivating factor," "but for" cause, "proximate" cause, and/or "sole" cause of Alisha Strife's harm and damage.

### J. AISD Will Continue To Irreparably Harm Alisha Strife If Its Illegal Conduct Is Not Enjoined

102. AISD's disability discrimination, retaliation, and interference with Ms. Strife's protected rights under the ADA, the Rehabilitation Act, Tex. Hum.

Resources Code section 121.001 *et seq.*, and Tex. Labor Code section 21.001 *et seq.*—as alleged *supra*—have caused her and—if a temporary restraining order, preliminary injunction, and permanent injunction are not entered—will continue to cause her irreparable harm and/or injury.

### K. AISD Operates Programs And Activities That Receive Federal Financial Assistance

103. Throughout Ms. Strife's employment with AISD, AISD has maintained and operated programs and/or activities with which Ms. Strife has been involved that received and continue to receive federal financial assistance under 29 U.S.C. section 794 and its implementing regulations.

### L. All Pre-Conditions To Suit Have Occurred

104. Alisha Strife has exhausted any/all administrative remedies under the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.*, and Tex. Hum. Resources Code section 121.001 *et seq.*, including, but not limited to, timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission's Civil Rights Division ("TWCCRD") and receiving "Right-To-Sue" letters from the EEOC and the TWCCRD.

105. All conditions precedent to the filing of this action have been performed or have occurred.

## VII. CAUSES OF ACTION

Plaintiff, Alisha Strife, incorporates by reference herein the allegations set forth in paragraphs 1 through 105, *supra*, and further alleges:

## FIRST CAUSE OF ACTION

106. Defendants, AISD and its above-named Trustees—acting in their official capacities—have violated Alisha Strife's rights under the ADA, 42 U.S.C. section 12111 *et seq.*, by *inter alia*: a) failing and/or refusing to make a reasonable workplace accommodation to her known physical and mental limitations; b) discriminating in any other manner against her because of her "disability" in connection with her compensation or the terms, conditions, or privileges of employment; c) limiting, segregating, and/or classifying her in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status as an employee in any other manner because of her "disability"; d) retaliating or discriminating against her because she opposed its discriminatory employment practices; made or filed a charge of discrimination; filed a complaint of disability discrimination; and/or assisted, or participated in any manner in an investigation, proceeding, or hearing under the ADA; and/or e) interfering with her in the exercise or enjoyment of, or on account of her having exercised or enjoyed, her rights under the ADA.

26

## SECOND CAUSE OF ACTION

107. Defendants, AISD and its individual Trustees—acting in their official capacities—violated Alisha Strife's rights under the Rehabilitation Act, 29 U.S.C. section 791 *et seq.*, because they excluded her from the participation in, denied her the benefits of, and/or subjected her to discrimination under a program or activity receiving federal financial assistance solely because of her "disabilities." Such exclusion, denial, and discrimination include, but are not limited to: a) failing and/or refusing to make a reasonable workplace accommodation to her known physical and mental limitations; b) discriminating in any other manner against her because of her "disability" in connection with her compensation or the terms, conditions, or privileges of employment; c) limiting, segregating, and/or classifying her in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status as an employee in any other manner because of her "disability"; d) retaliating or discriminating against her because she opposed its discriminatory employment practices; made or filed a charge of discrimination; filed a complaint of disability discrimination; and/or assisted, or participated in any manner in an investigation, proceeding, or hearing under the Rehabilitation Act; and/or e) aiding, abetting, inciting, or coercing a person to engage in a discriminatory practice.

27

## THIRD CAUSE OF ACTION

108. Defendants, AISD and its above-named Trustees—acting in their official capacities—have violated Alisha Strife's rights under Tex. Hum. Resources Code section 121.001 *et seq.* by *inter alia*: 1) denying her the use of an "assistance animal" and/or "service animal" in their "public facilities"; 2) failing to make reasonable accommodations in their policies, practice, and procedures to allow her to use her "assistance animal" and/or "service animal" in their "public facilities"; 3) failing to employ her on the same terms and conditions as persons without disabilities; and/or 4) making demands and inquiries relating to the qualifications or certifications of her "assistance animal" and/or "service animal" for purposes of admitting it to "public facilities."

## FOURTH CAUSE OF ACTION

109. Defendants, AISD and its above-named Trustees—acting in their official capacities—have violated Alisha Strife's rights under Tex. Labor Code section 21.001 *et seq.* by *inter alia*: a) failing and/or refusing to make a reasonable workplace accommodation to her known physical and mental limitations; b) discriminating in any other manner against her because of her "disability" in connection with her compensation or the terms, conditions, or privileges of employment; c) limiting, segregating, and/or classifying her in a manner that

28

would deprive or tend to deprive her of any employment opportunity or adversely affect her status as an employee in any other manner because of her "disability"; d) retaliating or discriminating against her because she opposed its discriminatory employment practices; made or filed a charge of discrimination; filed a complaint of disability discrimination; and/or assisted, or participated in any manner in an investigation, proceeding, or hearing under Tex. Labor Code section 21.001 *et seq.*; and/or e) aiding, abetting, inciting, or coercing a person to engage in a discriminatory practice.

## VIII. RELIEF SOUGHT

Accordingly, Plaintiff, Alisha Strife, respectfully moves this Honorable Court—after trial by jury on all issues so triable—for the following non-exclusive relief from Defendants, jointly and severally:

1. Declaratory Judgment that Defendants violated her rights under the ADA, 42 U.S.C. section 12111 *et seq.*; the Rehabilitation Act, 29 U.S.C. section 791 *et seq.*; Tex. Hum. Resources Code section 121.001 *et seq.*; and Tex. Labor Code section 21.001 *et seq.*;

2. Temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendants from denying her the right to have and use her service dog at work and in its "public facilities"; enjoining Defendants from requiring

her to submit to a medical examination by an AISD-retained doctor as a pre-condition to having and using her service dog at work and in its "public facilities"; and enjoining Defendants from otherwise engaging in any other violations of her rights under the ADA, the Rehabilitation Act, Tex. Hum. Resources Code section 121.001 *et seq.,* and Tex. Labor Code section 21.001 *et seq.*;

3. Compensatory and/or actual damages;

4. Reasonable attorney's fees and costs;

5. Pre-judgment and post-judgment interest; and

6. All other relief, whether at law or in equity, to which she is justly entitled.

Respectfully submitted,

**/s/ Scott Newar**
SCOTT NEWAR
S.D. Tex. Bar No. 19191
440 Louisiana, Suite 900
Houston, Texas 77002
Telephone: (713) 226-7950
Fax: (713) 226-7181 (Fax)
E-Mail: newar@newarlaw.com

ATTORNEY-IN-CHARGE
FOR PLAINTIFF, ALISHA STRIFE