### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **ALISHA STRIFE,** | § | **NO. 4:23-cv-358** |
| | § | |
| | § | |
| **Plaintiff** | § | **JURY DEMANDED** |
| | § | |
| **v.** | § | |
| | § | |
| **ALDINE INDEPENDENT** | § | |
| **SCHOOL DISTRICT** | § | |
| | § | |
| **Defendant** | § | |

### PLAINTIFF'S SECOND AMENDED COMPLAINT

In this Second Amended Complaint, Plaintiff, Alisha Strife, respectfully asserts as follows:

### I.  INTRODUCTION

1. In 2004, Alisha Strife suffered serious, debilitating, and long-term physical and psychological injuries while serving in the United States Army in Iraq during "Operation Iraqi Freedom."

Since 2004, Ms. Strife has undergone multiple surgeries, extensive physical rehabilitation, and extensive psychiatric therapy to address her serious service-related injuries.

In 2017, the United States Department of Veteran Affairs ("VA") determined Ms. Strife is 100% disabled from Post-Traumatic Stress Disorder ("PTSD") and

partially disabled from other service-related injuries.

In June 2022, "The Rescue For PTSD"—a non-profit organization that trains and provides service dogs to disabled U.S. military veterans suffering from PTSD—awarded Ms. Strife a specially trained service dog named "Independence" ("Inde") to help her cope with her debilitating PTSD, major depression, and physical injuries.

For approximately six months (September 2022 through February 24, 2023), Aldine Independent School District ("AISD") purposely and repeatedly delayed and refused to reasonably accommodate Ms. Strife's disabilities by allowing her to have and use a service dog while working as an AISD Human Resources project analyst. AISD refused Ms. Strife the right to have and use a service dog at work, despite numerous pleas from Ms. Strife (both individually and through counsel), her VA treating physicians, and "The Rescue for PTSD" and despite allowing able-bodied AISD employees to have and use dogs at work.

AISD also repeatedly retaliated against and interfered with Ms. Strife for exercising her protected right to request a reasonable accommodation of her disabilities, including by demanding she undergo a complete medical examination by an ***AISD-retained*** doctor—a doctor who has no expertise in diagnosing or treating PTSD, depression, or other psychological conditions—as a pre-condition to its even considering her request for reasonable accommodation.

2

AISD's illegal disability-based discrimination and retaliation against Ms. Strife and interference with her protected rights under federal and state disability discrimination laws seriously endangered her physical and psychological health and safety and forced her to work under dangerous, suboptimal conditions.

AISD has subjected other disabled individual(s) to such disability-based discrimination and retaliation. Hence, its discrimination and retaliation against Ms. Strife is part of a pattern, practice, custom, and/or policy of discriminating against, retaliating against, and interfering with the rights of disabled individuals who exercise their rights under federal and state law to non-discrimination in the workplace and in "public facilities."

Accordingly, this lawsuit is designed to remedy AISD's violations of Ms. Strife's rights under the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.* and prevent AISD from subjecting her and other disabled veterans/persons to such illegal conduct in the future.

## II. JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction under 28 U.S.C. § 1331, in that claims are asserted against Defendant, AISD, under federal law: specifically, the Americans with Disabilities Act ("ADA"), 42 U.S.C. section 12111 *et seq.*; and the Rehabilitation Act, 29 U.S.C. section 791 *et seq.*

3. This Court has supplemental jurisdiction of Ms. Strife's state law claims against AISD under 28 U.S.C. section 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the U.S. Constitution.

4. Venue lies in this District pursuant to 28 U.S.C. § 1391, in that AISD resides in this District.

## V. PARTIES

5. Plaintiff, Alisha Strife, is a citizen of the United States and a resident of the State of Texas.

6. Defendant, Aldine Independent School District ("AISD"), is a public school district organized and operated under Chapter 11 of the Texas Education Code.

## VI. RELEVANT FACTS

### A.    Alisha Strife Is A Disabled United States Military Veteran

7. Alisha Strife served in the United States Army from March 2003 to May 2005.

8. In 2003, Ms. Strife was deployed to Iraq to serve in the United States military operation, "Operation Iraqi Freedom."

9. In 2004—while Ms. Strife was still deployed in Iraq—she was seriously

injured when a HMMWV in which she was riding hit a cement barrier.

10. During her rehabilitation, Ms. Strife was diagnosed with Post Traumatic Stress Disorder ("PTSD").

11. As a result of her physical injuries and PTSD, Ms. Strife was medically discharged from the Army in May 2005.

12. In 2006 Ms. Strife underwent reconstructive surgery at Houston's Veteran Affairs' ("VA") hospital to repair her fractured right knee.

13. In 2009 Ms. Strife underwent right shoulder surgery to repair another service-related injury.

14. In December 2019, Ms. Strife underwent a combined Medial Patellafemoral Ligament (MPFL) reconstruction with Tibial Tubercle Osteotomy surgery.

15. In May 2020 Ms. Strife suffered a left ankle fracture from a fall.

16. In September 2020, Ms. Strife underwent surgery for a torn labrum in her right hip.

17. In October 2020 Ms. Strife fractured her right ankle after suffering another fall due to her chronic service-related physical instability. She was also diagnosed with a traumatic brain injury ("TBI") and osteopenia.

18. In April 2022, Ms. Strife again fractured her right ankle due to her

chronic service-related instability.

19. Since approximately 2005, Ms. Strife has undergone extensive medical treatment at the VA for her service-related PTSD, depression, and anxiety.

20. In 2017, the VA classified Ms. Strife as 100% disabled from her PTSD and partially disabled from her right leg injuries and degenerative joint disease. *See* Exhibit A.

21. In December 2022, the VA reaffirmed that Ms. Strife is 100% disabled from her service-related PTSD and partially disabled from her service-related physical injuries. *See* Exhibit B.

22. As a result of the serious physical injuries, PTSD, and other psychological conditions referenced in paragraphs 9 through 18, Ms. Strife constitutes an individual with a "disability," as that term is defined under the ADA (42 U.S.C. section 12102) and the Rehabilitation Act; and a person with a "disability," as that term is defined under Tex. Labor Code section 21.002(6) and 21.002(11-a).

**B. Alisha Strife Receives A Service/Assistance Dog To Help Her Cope With Her PTSD And Other Disabilities**

23. Post-Traumatic Stress Disorder ("PTSD") is an anxiety and stress-related disorder characterized by persistent and intense symptoms related to intrusion, avoidance, negative alterations in cognition and mood, and alterations in arousal

and reactivity.

24. PTSD is associated with high rates of co-morbidity with substance use, depression, and suicidal ideation.

25. The VA estimates that approximately 20% of United States military veterans returning from post-9/11 deployments suffer from PTSD.

26. Within the military population, PTSD can be difficult to treat.

27. A meta-analysis of nine randomized clinical trials of psychotherapy—a common treatment for PTSD—found that up to 72% of military patients maintained their pre-treatment PTSD diagnoses.

28. Studies show that military members infrequently take advantage of mental health services.

29. Studies further show that, among military members who do seek professional help, dropout rates during PTSD treatment can be as high as 50%.

30. Therefore, clinicians and researchers have concluded that there is a critical need for alternative and complementary treatments for PTSD in military patients.

31. Clinical studies show that specially trained therapy dogs reduce PTSD symptoms in military members and veterans and improve their quality of life. *See*, e.g., Department of Veteran Affairs, "A Randomized Trial of Differential

Effectiveness of Service Dog Pairing Versus Emotional Support Dog Pairing to

Improve Quality of Life for Veterans with PTSD," January 5, 2020, available at

https://www.research.va.gov/REPORT-Study-of-Costs-and-Benefits-Associated-

with-the-Use-of-Service-Dogs-Monograph1.pdf; Marguerite E. O'Haire & Kerri E.

Rodriguez, "Preliminary Efficacy of Service Dogs as a Complementary Treatment

for Posttraumatic Stress Disorder in Military Members and Veterans," Journal of

Consulting and Clinical Psychology, 86(2), 179–188, available at

https://psycnet.apa.org/manuscript/2018-02789-002.pdf; Kerri E. Rodriguez et al,

"The effect of a service dog on salivary cortisol awakening response in a military

population with posttraumatic stress disorder (PTSD), Psychoneuroendocrinology,

98: 202–210, available at

https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8454180/

32. "The Rescue for PTSD" ("RPTSD") is a 501(c)(3) non-profit

organization that trains shelter/rescue dogs to serve as psychiatric service dogs for

military veterans suffering from PTSD. *See https://rescueforptsd.org/*

33. In 2022, RPTSD specially trained and equipped a dog named

"Independence" ("Inde") to assist Ms. Strife in coping with her PTSD and other

service-related injuries. RPTSD specially trained and equipped "Inde" to perform

numerous commands/therapeutic techniques for Ms. Strife, including: a) "Deep

Pressure Therapy"—also known as tactile stimulation—which assists Ms. Strife with her PTSD; b) "Grounding Handler," which assists Ms. Strife with anxiety episodes and protects her if/when she falls; c) "On The Guard," which alerts Ms. Strife to the presence of others; and d) "The Front/Block," which alerts Ms. Strife to and protects her from distress. *Id.*

34. RPTSD also extensively trained Ms. Strife in handling "Inde."

35. In June 2022, RPTSD provided "Inde" to Ms. Strife for the purpose of serving as Ms. Strife's psychiatric therapy dog.

36. Since June 2022, RPTSD has continued to specially train "Inde" to continue to assist Ms. Strife in coping with her PTSD and other psychological and physical disabilities.

37. Since June 2002 Ms. Strife has taken and used "Inde" as a service dog in her children's public schools; on a college campus; on public transportation; on a commercial airplane; in grocery stores and other retail establishments; in VA facilities; on military installations; and in other venues, including "public facilities" and "places of public accommodation"—all without incident and without denial of entry or use.

38. Based on the facts alleged in paragraphs 23 through 37, "Inde" qualifies as a "service animal" under the ADA, the Rehabilitation Act, and Tex. Labor Code

section 21.001 *et seq.* and as a "service animal" or "assistance animal" under Tex. Hum. Resources Code section 121.002(1).

### C. AISD Denies Ms. Strife's Request To Have And Use "Inde" At Work And Otherwise Discriminates Against Her Based On Her Disabilities

39. Ms. Strife has been employed by AISD since the 2012-2013 school year. Therefore, she constitutes an "employee," as that term is defined under 42 U.S.C. 1211(4) and Tex. Labor Code section 21.002(7).

40. AISD constitutes an "employer," as that term is defined under 42 U.S.C. section 12111(5) and Tex. Labor Code section 21.002(8).

41. Currently, Ms. Strife serves as the Performance Management Project Analyst in AISD's Human Resources Department.

42. Throughout her approximately eleven years of employment at AISD, Ms. Strife has consistently received AISD's highest job evaluation.

43. AISD retains and utilizes a private company—Broadspire—to process AISD employees' ADA-related requests for reasonable accommodation of their disabilities. Therefore, at all relevant times, Broadspire was/is AISD's agent.

44. On August 30, 2022, Ms. Strife requested—through Broadspire—that AISD reasonably accommodate her disabilities by allowing her to have and use a service dog while at work.

45. Throughout September 2022, AISD—acting both directly and indirectly through Broadspire—stonewalled Ms. Strife's disability accommodation request.

46. In early September 2022, Ms. Strife notified AISD that Broadspire was stonewalling her ADA request for reasonable accommodation of her disabilities and again requested that AISD reasonably accommodate her disabilities by allowing her to have and use a service dog at work.

47. In support of her request for a reasonable accommodation of her disabilities, Ms. Strife tendered to AISD a September 20, 2022 letter from Dr. Lisa Miller, a VA Doctor of Pharmacy who has treated Ms. Strife for her service-related PTSD, major depression, and anxiety since 2007. *See* Exhibit C.

48. In her September 20, 2022 letter, Dr. Miller stated Ms. Strife suffers from "Major Depression, Post Traumatic Stress Disorder as well as a traumatic brain injury which affects her balance"; Ms. Strife suffers from "osteopenia and is prone to falling"; and Ms. Strife's service dog is "invaluable to her mental and physical health recovery." *Id.*

49. In further support of her request that AISD reasonably accommodate her disabilities, Ms. Strife tendered to AISD a September 29, 2022 letter from Dr. Gurtej S. Mann, a VA psychiatrist who has treated Ms. Strife since August 2022. *See* Exhibit D.

50. In his September 29, 2022 letter, Dr. Mann stated Ms. Strife suffers from "Major Depression, Post Traumatic Stress Disorder as well as a traumatic brain injury which affects her balance"; Ms. Strife suffers from "osteopenia and is prone to falling"; and Ms. Strife's service dog is "invaluable to her mental and physical health recovery." *Id.*

51. Dr. Mann concluded his September 29, 2022 letter by requesting that Ms. Strife be allowed to have her service dog at work. *Id.*

52. Despite Dr. Miller and Dr. Mann's attestations that Ms. Strife suffers from serious physical and psychological injuries that require her to have a service dog at work, AISD still refused to allow Ms. Strife to have and use a service dog at work.

53. On or about November 1, 2022, Dr. Mann completed an AISD-provided "Job Accommodation Questionnaire" (JAQ) regarding Ms. Strife's request that AISD reasonably accommodate her disabilities by allowing her to have and use a service dog at work. *See* Exhibit E.

54. In his JAQ, Dr. Mann again attested that Ms. Strife requires a service dog at work as a reasonable accommodation of her disabilities. *See* Exhibit E.

55. On or about November 1, 2022, AISD received Dr. Mann's JAQ for Ms. Strife.

56. Nevertheless, AISD still refused to allow Ms. Strife to have and use a service dog at work and, thereby, denied her a reasonable accommodation of her disabilities.

57. Despite receiving Dr. Miller and Dr. Mann's letters referenced in paragraphs 47 and 48, *supra*, and Dr. Mann's JAQ referenced in paragraph 53, *supra*, AISD notified Ms. Strife that it was requiring her to submit to a medical examination by an ***AISD-retained doctor***.

58. AISD's demand that Ms. Strife submit to a complete medical examination by an AISD-retained doctor—which, as detailed *infra*, AISD maintained through February 24, 2023—violates AISD's own policies. Specifically, AISD's "DBB-Local" policy provides, in relevant part:

> The Superintendent or designee may require an employee to undergo a medical examination if information received from the employee, the employee's supervisor, or other sources indicates the employee has a physical or mental impairment that:
>
> 1. Interferes with the employee's ability to perform essential job functions; or
>
> 2. Poses a direct threat to the health or safety of the employee or others. A communicable or other infectious disease may constitute a direct threat.

*See* Exhibit F

59. Before ordering Ms. Strife to submit to a medical examination by an

13

AISD-retained doctor, AISD received *no* information that Ms. Strife had a physical or mental impairment that interfered with her ability to perform essential job functions.

60. Consequently, on November 11, 2022, "The Rescue for PTSD"—through its legal counsel, Jennifer O'Connell—notified AISD, in writing, that its refusal to allow Ms. Strife to have and use a service dog at work and its demand that she submit to a medical examination by an AISD-retained doctor violate the ADA. *See* Exhibit G.

61. Nevertheless, AISD still refused to allow Ms. Strife to have and use a service dog at work and, thereby, denied her a reasonable accommodation of her disabilities.

62. On November 16, 2022, AISD again demanded that Ms. Strife submit to a complete medical examination by an ***AISD-retained doctor*** as a pre-condition to its considering allowing her to have and use a service dog at work. *See* Exhibit F.

63. On November 18, 2022, Ms. Strife—through her undersigned counsel—notified AISD that its demand that she submit to a medical examination by an AISD-retained doctor before even considering allowing her to have and use a service dog at work violates federal and state disability discrimination laws, including the ADA and Tex. Labor Code section 21.001 *et seq*. Therefore, Ms.

14

Strife demanded that AISD withdraw its medical examination requirement and permit her to have and use a service dog at work. *See* Exhibit H.

64. On December 5, 2022, AISD—through its General Counsel, M. Kaye DeWalt—notified Ms. Strife that it refused to withdraw its demand that she (Strife) submit to a medical examination by its retained doctor as a pre-condition to having and using a service dog at work.

65. Therefore, on December 22, 2022, Ms. Strife—through her undersigned counsel—notified AISD, in writing, a ***second*** time that its demand that she submit to a medical examination by an AISD-retained doctor violates federal and state disability discrimination laws, including the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq*. Ms. Strife notified AISD that if—by January 5, 2023—AISD refused to withdraw that demand, she would commence legal action against AISD under the aforementioned federal and state disability discrimination laws. *See* Exhibit I.

66. On December 23, 2022, AISD notified Ms. Strife a ***third*** time that she must submit to a complete medical examination by an AISD-retained doctor before it would consider allowing her to have and use a service dog at work. *See* Exhibit J. Specifically, AISD instructed Ms. Strife that, on January 10, 2023, she must submit to a medical examination by "Dr. Nguyen" at a Concentra Healthcare

("Concentra") facility in Houston.

67. Dr. Nguyen—the AISD-retained doctor by whom AISD demanded Ms. Strife submit to a complete medical examination—is ***not*** a psychiatrist or psychologist and has no other expertise in diagnosing or treating PTSD, depression, or anxiety.

68. The medical examination that AISD demanded Ms. Strife submit to by its retained, unqualified doctor (Dr. Nguyen) was intended to reveal and would necessarily have revealed to AISD Ms. Strife's disabilities and the extent of her disabilities.

69. The medical examination that AISD demanded Ms. Strife submit to by its retained, unqualified doctor (Dr. Nguyen) would have exceeded the scope of any even *putatively* legal medical examination allowable under the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.*

70. Therefore, on January 6, 2023, Ms. Strife—through her undersigned counsel—***again*** notified AISD, in writing, that its December 23, 2022 demand that she submit to a medical examination by an AISD-retained doctor violates federal and state disability discrimination laws, including the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.* Ms. Strife demanded—for a ***third*** time—that AISD withdraw its medical examination requirement and allow her to

have and use "Inde" at work. *See* Exhibit K.

71. On January 6, 2023, Ms. Strife filed a Charge of Discrimination against AISD with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission's Civil Rights Division ("TWCCRD"). In her EEOC/TWCCRD Charge, Ms. Strife alleged that—in violation of the ADA and Tex. Labor Code section 21.001—AISD had, *inter alia*, refused to allow her to work at AISD with a service dog trained to assist her with her disabilities; required her to undergo a prohibited medical examination that was neither job-related nor consistent with business necessity; and required her to undergo a medical examination by an AISD-retained physician.

72. On January 10, 2023, Ms. Strife—and "Inde"—underwent a comprehensive physical examination at the VA to determine whether "Inde" effectively assists her with her mobility issues. The VA's physical examination of Ms. Strife was conducted by Dr. Sheryl Vandeven, a VA doctor of Physical Therapy. *See* Exhibit L.

73. Dr. Vandeven concluded that Ms. Strife has "chronically impaired standing balance and gait, with history of multiple falls and injuries including fractures requiring multiple leg surgeries." *Id.* Dr. Vandeven further concluded that Ms. Strife's "[c]ondition is appropriate for use of a mobility dog." *Id.*

74. Based upon Dr. Vandeven's findings, Dr. Darlene Makulski—a VA and Baylor College of Medicine Assistant Professor of Physical Medicine and Rehabilitation who has treated Ms. Strife since December 2020—concluded that a "certified service mobility dog is appropriate for Ms. Strife and should be utilized in all settings (including place of employment) to avoid further balance related injuries." *See* Exhibit M.

75. On January 11, 2023, Ms. Strife—through her undersigned counsel—*again* notified AISD, in writing, that its continuing demand that she submit to a medical examination by an AISD-retained doctor violates federal and state disability discrimination laws, including the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.* Therefore, Ms. Strife demanded—for a ***fourth*** time—that AISD withdraw its medical examination requirement and permit her to have and use "Inde" at work. *See* Exhibit N.

76. On January 13, 2023, Ms. Strife—through her undersigned counsel—provided AISD with the results of Dr. Vandeven's January 10, 2023 medical examination referenced in paragraphs 72, 73, and 74, *supra*.

77. On January 13, 2023, AISD—through its General Counsel (DeWalt)—notified Ms. Strife—through her undersigned legal counsel—that AISD ***still*** refused to withdraw its demand that she (Strife) submit to a medical examination

18

by an AISD-retained doctor.

78. Despite the VA's January 10, 2023 examination and her VA doctors' consistent assessment that Ms. Strife requires a service dog at work for her disabilities, AISD continued to refuse to allow Ms. Strife to enter with her service dog ("Inde") and use her service dog at work and in its "public facilities. AISD thereby denied Ms. Strife a reasonable accommodation of her disabilities—in violation of the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.*

79. To end AISD's longstanding, deliberate refusal to reasonably accommodate her disabilities and disability-based discrimination and retaliation against her, Alisha Strife filed suit against AISD and its Trustees in the 333rd District Court of Harris County, Texas on January 18, 2023.

80. On January 20, 2023, Alisha Strife served AISD with a copy of the state court lawsuit referenced in paragraph 79, *supra*.

81. Despite and, indeed, because of Ms. Strife's filing a state court lawsuit against AISD on January 18, 2023, for discriminating against her based on her disabilities, AISD ***still*** refused to reasonably accommodate her disabilities by allowing her to have and use a service dog at work and still refused to end its disability-based discrimination and retaliation against her.

82. Therefore, on February 1, 2023, Alisha Strife commenced this legal action against AISD. *See* Dkt. 1.

83. On February 6, 2023, Alisha Strife filed a Motion for Temporary Restraining Order ("TRO"). *See* Dkt. 7. In her TRO motion, Ms. Strife requested this Court enjoin AISD from, *inter alia*, continuing to refuse to allow her to have and use a service dog at work. *Id.*

84. On February 15, 2023, this Court held a hearing on Alisha Strife's motion for temporary restraining order.

85. On February 15, 2023, this Court set a hearing on Ms. Strife's motion for a temporary injunction on March 9, 2023, at 1:30 p.m.

86. On February 24, 2023, AISD notified Ms. Strife that it ***conditionally*** "approve[d]" her request to have and use "Inde" at work.

87. AISD's February 24, 2023 conditional approval of Ms. Strife's ADA-related request to have and use a service dog at work was a litigation ploy designed to forestall this Court issuing a temporary injunction against it on March 9, 2023.

88. Between August 30, 2022 and February 24, 2023, AISD knowingly, intentionally, and purposely delayed and denied —whether actually or constructively—Ms. Strife's request that it reasonably accommodate her disabilities by allowing her to have and use a service dog at work.

89. AISD's knowing, intentional, and purposeful refusal to reasonably accommodate Alisha Strife's disabilit(ies) between August 30, 2022 and February 24, 2023, by allowing her to have and use a service dog at work seriously endangered and jeopardized Ms. Strife's physical and psychological health and safety and otherwise forced her to work at AISD under dangerous, suboptimal conditions.

90. AISD's serious endangerment of Ms. Strife's health and safety by intentionally and purposely delaying and refusing to allow her to have and use a service dog at work in the period August 30, 2002 through February 24, 2023, included—but was not limited to—a) subjecting Ms. Strife to a substantial risk of falling and the attendant substantial risk of major bodily injury (e.g. death; concussion; fractured extremities; etc.); and b) uncontrolled PTSD, severe anxiety, and major depression and the attendant harm to her health and well-being. Such endangerment stemmed from the fact that—as Ms. Strife's VA doctors repeatedly attested and informed AISD—absent a service dog at work, Ms. Strife was prone to losing her balance and falling and would be unable to cope with her PTSD and other disabling psychological conditions.

91. In knowingly, intentionally, and purposely delaying and refusing to reasonably accommodate Alisha Strife's disabilit(ies) between August 30, 2022

and February 24, 2023, by allowing her to have and use a service dog at work, AISD acted with deliberate indifference and/or with reckless disregard to Ms. Strife's physical and psychological health and safety and her pressing need to have and use a service dog at work.

92. Between August 30, 2022 and February 24, 2023, AISD subjected Alisha Strife to "adverse"/"ultimate" disability-based discriminatory employment actions and terms, conditions, and privileges of employment in violation of the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.* Such "adverse"/"ultimate" employment actions and/or disability-based discriminatory terms, conditions, and privileges of employment include, but are not necessarily limited to, the following: a) continuously refusing to reasonably accommodate Ms. Strife's disabilities; b) seriously endangering and jeopardizing her physical and psychological health and safety by refusing to allow her to have and use a service dog at work; c) forcing her to work at AISD under dangerous, suboptimal conditions; and d) attempting to force her to submit to a medical examination by its retained, unqualified medical provider as a condition to being allowed to have and use a service dog at work.

93. Whether singularly or collectively, the "adverse"/"ultimate" actions and/or disability-based discriminatory terms, conditions, and privileges of

22

employment detailed in paragraph 92, *supra*, also constitute a disability-based hostile work environment in that they a) subjected Ms. Strife to unwelcome disability-based harassment; b) they affected a term, condition, and privilege of Ms. Strife's employment, as detailed in paragraph 92, *supra*; and c) AISD knew or should have known of this disability-based harassment and failed to take prompt, effective remedial action to stop it.

94. Between August 30, 2023 and February 24, 2023, AISD knowingly, intentionally, and purposely subjected Alisha Strife to retaliation and interference with her protected disability-based rights under the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.* AISD's "adverse"/"ultimate" actions of retaliation and interference include, but are not necessarily limited to, the following: a) continuously refusing to reasonably accommodate Ms. Strife's disabilities; b) seriously endangering and jeopardizing her physical and psychological health and safety by refusing to allow her to have and use a service dog at work; c) forcing her to work at AISD under dangerous, suboptimal conditions; and d) attempting to force her to submit to a medical examination by its retained, unqualified medical provider as a condition to being allowed to have and use a service dog at work. These actions—whether singularly or cumulatively— could and would have dissuaded a reasonable worker from making or supporting a

charge of discrimination.

95. The "adverse"/"ultimate" actions specified in paragraph 94, *supra*—whether singularly or collectively—also constitute the "adverse"/"ultimate" actions of a retaliation-based hostile working environment, as they a) subjected Ms. Strife to unwelcome retaliation-based harassment; b) they affected a term, condition, and privilege of Ms. Strife's employment, as detailed in paragraph 94, *supra*; and c) AISD knew or should have known of this retaliation-based harassment and failed to take prompt, effective remedial action to stop it. These actions could and would have dissuaded a reasonable worker from making or supporting a charge of discrimination.

### D. AISD Never Proffered Or Tendered To Alisha Strife Any Accommodation of Her Disabilities And Protracted And Violated The "Interactive Process"

96. Before February 24, 2023, AISD never proffered nor tendered to Ms. Strife *any* reasonable accommodation of her disabilities.

97. As detailed *supra*, AISD knowingly, intentionally, purposely, and unjustifiably delayed, abandoned, and otherwise violated the ADA/Rehabilitation Act/Tex. Labor Code section 21.001 *et seq.* "interactive process" with respect to Ms. Strife's request that it reasonably accommodate her disabilities by allowing her to have and use a service dog at work and in its "public facilities."

98. AISD's knowing, intentional, purposeful, and unjustifiable delay and/or abandonment of the ADA/Rehabilitation Act/Tex. Labor Code section 21.001 *et seq.* "interactive process" seriously endangered Alisha Strife's physical and psychological health and safety and otherwise forced her to work under dangerous and/or suboptimal conditions—as detailed in paragraph 90, *supra*.

### E. AISD Allows Able-Bodied Employees To Have And Use Dogs At Work

99. Although AISD knowingly, intentionally, and purposely refused to reasonably accommodate Ms. Strife's disabilities by allowing her to have and use her service dog at work and in its "public facilities," AISD has allowed *able-bodied* employees to have and use dogs at work.

100. For example, AISD not only allowed but authorized AISD police officers to have and use large, highly aggressive police dogs in AISD's schools. These highly aggressive AISD dogs routinely encounter AISD students in AISD schools.

101. On January 22, 2022 AISD invited one of its highly aggressive police dogs ("Delta") and that dog's AISD handler to attend a "special recognition" ceremony held by the Board of Trustees in AISD's Donaldson administration building—a "public facility." During that ceremony, AISD's Board of Trustees recognized its highly aggressive police dog as an AISD "Employee Of The

Month."

## F. AISD Has Subjected Other Disabled Individuals To Disability Discrimination

102. AISD has subjected other person(s) with disabilities to the same or similar disability-based discrimination and retaliation to which it has subjected Ms. Strife—in violation of the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.*

103. AISD has a pattern, practice, custom, and/or policy of subjecting "person(s) with a disability"—including those who require service dogs— to disability discrimination, retaliation, interference with protected rights, and other violations of the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.*

## G. AISD Has No Legitimate, Non-Discriminatory Reason For Discriminating And Retaliating Against Ms. Strife

104. AISD has neither articulated nor offered any evidence of any legitimate, non-discriminatory reason for discriminating against (including failing to reasonably accommodate her disabilities), retaliating against, and interfering with Alisha Strife's protected rights under the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.*

105. To the extent that AISD may *belatedly* articulate and offer evidence of

"legitimate, non-discriminatory" reason(s) for discriminating against, retaliating against, and interfering with Alisha Strife's protected rights in violation of the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.*, such reason(s) are not, in fact, legitimate or non-discriminatory; are not credible; and are merely pretext(s) and subterfuge(s) for AISD's intentional disability discrimination against, retaliation against, and interference with Ms. Strife's rights—in violation of federal and state disability discrimination laws.

### H. AISD Will Not Suffer Any Hardship From Allowing Ms. Strife To Have And Use Her Service Dog At Work And In Its "Public Facilities"

106. AISD has never proffered any evidence that allowing Ms. Strife to have and use a service dog at work would cause AISD any hardship or burden—let alone, an undue hardship or burden.

107. To the contrary, during the February 15, 2023 hearing on Ms. Strife's motion for temporary restraining order, AISD conceded it would suffer no undue hardship from allowing Ms. Strife to have/use her service dog at work.

### I. AISD Knowing Intentionally, And Purposely Violated Alisha Strife's Rights Under Federal And State Disability Discrimination Laws

108. As the facts detailed *supra* and incorporated herein by reference attest, AISD failed and/or refused to make a reasonable workplace accommodation to known physical and/or mental limitations of Alisha Strife, an otherwise qualified

individual with a "disability" who is an AISD employee—in violation of the ADA, the Rehabilitation Act, and/or Tex. Labor Code section 21.001 *et seq.*

109. As the facts detailed *supra* and incorporated herein by reference attest, AISD failed and/or refused to employ Alisha Strife—a disabled individual—on the same terms and conditions as able-bodied individuals—in violation of the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.*

110. As the facts detailed *supra* and incorporated herein by reference attest, AISD retaliated against, discriminated against, and interfered with the rights of Alisha Strife under federal and Texas disability discrimination laws because she opposed its discriminatory employment practice(s); made or filed a charge of discrimination; filed a complaint of disability discrimination; and/or assisted, or participated in any manner in an investigation, proceeding, or hearing under those laws—in violation of the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.*

111. As the facts detailed *supra* and incorporated herein by reference attest, AISD has made illegal demands or inquiries relating to the qualifications or certifications of Alisha Strife's "service animal"/"assistance animal" for purposes of that animal's admittance to "public facilit(ies)"—which demands and inquiries violate the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et*

*seq.*

112. As the facts detailed *supra* and incorporated herein by reference attest, AISD's demand that Ms. Strife undergo a complete medical examination by an unqualified AISD-retained doctor as a pre-condition to its considering allowing her to have and use her service dog at work and in its "public facilities" constitutes disability discrimination, retaliation for her exercising her protected rights, and interference with her protected rights under the ADA, the Rehabilitation Act, Tex. and Labor Code section 21.001 *et seq.*

113. AISD intentionally, knowingly, and purposely discriminated against Alish Strife (including actually or constructively denying her a reasonable accommodation of her disabilities), retaliated against her, and interfered with her rights under federal and state disability discrimination laws in violation of the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.*

114. AISD's intentional, knowing, and purposeful disability-based discrimination against Alisha Strife (including actually or constructively denying her a reasonable accommodation of her disabilities), disability-based retaliation against Alisha Strife, and interference with her protected rights under the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.* have substantially harmed her and caused her actual damage.

115. AISD's illegal disability-based discrimination against Alisha Strife (including actually or constructively denying her a reasonable accommodation of her disabilities), disability-based retaliation against Alisha Strife, and disability-based interference with Ms. Strife's protected rights under the ADA, Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq* are the "motivating factor," "but for" cause, "proximate" cause, and/or "sole" cause of Alisha Strife's substantial harm and damage.

### J. AISD Operates Programs And Activities That Receive Federal Financial Assistance

116. Throughout Ms. Strife's employment with AISD, AISD has maintained and operated programs and/or activities with which Ms. Strife has been involved that received and continue to receive federal financial assistance under 29 U.S.C. section 794 and its implementing regulations.

### L. All Pre-Conditions To Suit Have Occurred

117. Alisha Strife has exhausted any/all administrative remedies under the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.*, including, but not limited to, timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission's Civil Rights Division ("TWCCRD"); receiving "Right-To-Sue" letters from the EEOC and the TWCCRD; and timely filing the instant lawsuit.

118. All conditions precedent to the filing of this action have been performed or have occurred.

## VII. CAUSES OF ACTION

Plaintiff, Alisha Strife, incorporates by reference herein the allegations set forth in paragraphs 1 through 118, *supra*, and further alleges:

## FIRST CAUSE OF ACTION

119. Defendant, AISD, violated Alisha Strife's rights under the ADA, 42 U.S.C. section 12111 *et seq.*, by *inter alia*: a) failing and/or refusing to make a reasonable workplace accommodation to her known physical and mental limitations; b) discriminating in any other manner against her because of her "disability" in connection with her compensation or the terms, conditions, or privileges of employment; c) limiting, segregating, and/or classifying her in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status as an employee in any other manner because of her "disability"; d) retaliating or discriminating against her because she opposed its discriminatory employment practices; made or filed a charge of discrimination; filed a complaint of disability discrimination; and/or assisted, or participated in any manner in an investigation, proceeding, or hearing under the ADA; and/or e) interfering with her in the exercise or enjoyment of, or on account of her having

exercised or enjoyed, her rights under the ADA.

## SECOND CAUSE OF ACTION

120. Defendant, AISD, violated Alisha Strife's rights under the Rehabilitation Act, 29 U.S.C. section 791 *et seq.*, because it excluded her from participating in, denied her the benefits of, and/or subjected her to discrimination under a program or activity receiving federal financial assistance solely because of her "disabilities." Such exclusion, denial, and discrimination include, but are not limited to: a) failing and/or refusing to make a reasonable workplace accommodation to her known physical and mental limitations; b) discriminating in any other manner against her because of her "disability" in connection with her compensation or the terms, conditions, or privileges of employment; c) limiting, segregating, and/or classifying her in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status as an employee in any other manner because of her "disability"; d) retaliating or discriminating against her because she opposed its discriminatory employment practices; made or filed a charge of discrimination; filed a complaint of disability discrimination; and/or assisted, or participated in any manner in an investigation, proceeding, or hearing under the Rehabilitation Act; and/or e) aiding, abetting, inciting, or coercing a person to engage in a discriminatory practice.

## THIRD CAUSE OF ACTION

121. Defendant, AISD, violated Alisha Strife's rights under Tex. Labor Code section 21.001 *et seq.* by *inter alia*: a) failing and/or refusing to make a reasonable workplace accommodation to her known physical and mental limitations; b) discriminating in any other manner against her because of her "disability" in connection with her compensation or the terms, conditions, or privileges of employment; c) limiting, segregating, and/or classifying her in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status as an employee in any other manner because of her "disability"; d) retaliating or discriminating against her because she opposed its discriminatory employment practices; made or filed a charge of discrimination; filed a complaint of disability discrimination; and/or assisted, or participated in any manner in an investigation, proceeding, or hearing under Tex. Labor Code section 21.001 *et seq.*; and/or e) aiding, abetting, inciting, or coercing a person to engage in a discriminatory practice.

## VIII. RELIEF SOUGHT

Accordingly, Plaintiff, Alisha Strife, respectfully moves this Honorable Court—after trial by jury on all issues so triable—for the following non-exclusive relief from Defendant, AISD:

33

1. Declaratory Judgment that AISD violated her rights under the ADA, 42 U.S.C. section 12111 *et seq.*; the Rehabilitation Act, 29 U.S.C. section 791 *et seq.*; and Tex. Labor Code section 21.001 *et seq.*;

2. Permanent injunction enjoining AISD from denying her the right to have and use a service dog at work and in its "public facilities"; enjoining AISD from requiring her to submit to a medical examination by an AISD-retained doctor as a pre-condition to having and using a service dog at work and in its "public facilities"; and enjoining AISD from otherwise engaging in any other violations of her rights under the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.*;

3. Other equitable relief, including a permanent injunction requiring AISD to effectively train relevant AISD officials regarding the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.*'s legal requirements respecting service dogs and certify such training to the Court;

4. Compensatory and/or actual damages;

5. Reasonable attorney's fees and costs;

6. Pre-judgment and post-judgment interest; and

7. All other relief, whether at law or in equity, to which she is justly entitled.

Respectfully submitted,


**/s/ Scott Newar**
SCOTT NEWAR
S.D. Tex. Bar No. 19191
440 Louisiana, Suite 900
Houston, Texas 77002
Telephone: (713) 226-7950
Fax: (713) 226-7181 (Fax)
E-Mail: newar@newarlaw.com

Dennis Herlong
Law Office of Dennis Herlong
Texas Bar No. 09510500
440 Louisiana, Suite 900
Houston, Texas 77002
Telephone: 713-228-9222
Fax: 713-228-9226
E-Mail: lawfirm@dennisherlong.com

ATTORNEYS FOR PLAINTIFF, ALISHA
STRIFE


## CERTIFICATE OF SERVICE

I hereby certify that, on November 7, 2023, I served the instant pleading on Defendants via DCECF e-filing to their legal counsel, Cory Rush and Andrew Francis, in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Texas.

**/s/ Scott Newar**