IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALISHA STRIFE, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | C.A. No. 4:23-cv-00358 |
| § | |
| ALDINE INDEPENDENT § | |
| SCHOOL DISTRICT, *et al.*, § | |
| § | |
| *Defendants*. § | |

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Aldine Independent School District (AISD or the District) granted Plaintiff Alsiha Strife's request to bring her service dog "Inde" to work as an accommodation. Plaintiff claims that the duration of the interactive process and the abandoned request that she attend a medical evaluation as part of that process violated the Americans with Disabilities Act (ADA), the Rehabilitation Act of 1973 (RA), and Chapter 21 of the Texas Labor Code (Chapter 21).[1] AISD now files its Motion for Summary Judgment[2] as follows:

### Factual Background

*A.  Plaintiff suffers disabling injuries during military service before working at AISD.*

In 2004, Plaintiff suffered long-term physical and psychological injuries while serving in the United States Army in Iraq. *See* Strife Deposition Transcript, attached as **Ex. A**, at p. 8 (lns. 9-25), pp. 9-11. Since 2004, Plaintiff has undergone multiple surgeries and treatments to address her service-

---

[1] As the Court noted in its Order on AISD's Motion to Dismiss Plaintiff's First Amended Complaint, claims under these statutes are properly analyzed together. *See* Dkt. 65 at p. 4, n.4 (citing *Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010); quoting *Williamson v. Am. Nat. Ins. Co.*, 695 F. Supp. 2d 431,452 (S.D. Tex. 2010)).

[2] This Motion is subject to AISD's currently pending Motion for Partial Dismissal Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(6), which seeks dismissal of Plaintiff's failure-to-accommodate, harassment, and pattern-and-practice claims. *See* Dkt. 68. The District hereby adopts by reference its pending Motion for Partial Dismissal. *See* Fed. R. Civ. P. 10(c).

1

related injuries and diagnoses, which include a traumatic brain injury (TBI), Post-Traumatic Stress Disorder (PTSD), a leg injury impacting her stability, and a shoulder injury. *See* Ex. A at pp. 10-11, pp. 32 (lns. 10-25) - 33 (lns. 1-22).

AISD originally employed Plaintiff as a teacher in the 2012-2013 school year. *See* Ex. A, at p. 13 (lns. 9-25). Plaintiff then worked as a Testing Coordinator within the District until the beginning of the 2022-2023 school year, when she was offered the position of Performance Management Project Analyst for AISD's Human Resources Department at the central administration building. *See id* at p. 14. Plaintiff had not requested any accommodations for her disabilities prior to the 2022-2023 school year. *See* Ex. A at p. 15 (lns. 9-11), p. 18 (lns. 13-21).

### B.     AISD engages Plaintiff in the interactive process.

In late August 2022, Plaintiff began the process to seek a reasonable accommodation through Broadspire Services Inc. (Broadspire), AISD's third party benefits vendor. *See* Ex. A at pp. 18 (lns. 13-25) - 20 (lns. 1-13). Specifically, Plaintiff requested to bring her service dog Independence or "Inde" to work. *See id*. Thereafter, in early September 2022, Plaintiff uploaded documentation in support of her request to Broadspire's online submission portal regarding Plaintiff's and Inde's certifications and trainings. *See* Ex. A at pp. 18 (lns. 22-25) - 20 (lns.1-7); *see also* Strife Initial Supporting Documents, attached as **Ex. A-1**; *see also* 9/14/2022 Email Correspondence, attached as **Ex. A-2**.

On September 16, 2022, the AISD Employee Accommodation Committee (the Committee), which held standing meetings each Friday during the 2022-2023 school year to meet and evaluate pending AISD employee accommodation requests, met to discuss Plaintiff's accommodation request. *See* Dr. Javier Villareal Deposition Transcript, attached as **Ex. B** at pp. 27 (lns. 16-25) - 29, pp. 40 – 42 (lns. 1-5). After considering Plaintiff's request and supporting documentation, the Committee

determined that they needed additional information from the Plaintiff and her medical providers so they could evaluate Plaintiff's essential job functions that were impacted by Plaintiff's disabilities, how the service dog would be utilized, and if there were any alternative accommodations that Plaintiff could utilize to assist with her limitations. *See* Ex. B at pp. 40 (lns. 9-25) - 41 (lns. 1-15).

On September 20, 2022, Broadspire contacted Plaintiff to confirm receipt of her request and inform her that her healthcare provider needed to complete a job accommodation questionnaire (JAQ) by October 5, 2022, so her request could be processed. *See* Ex. A at pp. 23 (lns. 9-25) - 24 (lns. 1-22); *see also* 9/20/2022 Email Correspondence, attached as **Ex. A-3**. The JAQ and other information Broadspire requested was due by October 5, 2023. Ex. A-3.

On September 26, 2022, Plaintiff sent Smith a letter from Dr. Lisa Miller, Pharm. D, which stated that Plaintiff has PTSD, TBI, and osteopenia, which affects her balance and makes her prone to falling. See Ex. A at pp. 26 - 28 (lns. 1-14); *see also* 9/26/2022 Email Correspondence, attached as **Ex. A-4**. The letter also stated Plaintiff needed a service dog to accompany her to work to help Plaintiff with her balance and to provide "Deep Pressure Therapy." *See id*. The letter did not mention alternative options. *See id*.

The following morning, Smith sent an email to Plaintiff explaining that she needed documentation from a medical doctor that is licensed to diagnose the Plaintiff's conditions described in Dr. Miller's letter, because Dr. Miller was a pharmacist, not a physician. *See* Ex. A at p. 28 (lns. 6-14); Ex. A-4 at p. 2. Thereafter, on September 29, 2022, Plaintiff sent Smith a letter dated September 29, 2022, this time from psychiatrist Dr. Gurtej S. Mann, M.D., which was substantively identical to Dr. Miller's September 22, 2022, letter. *See* Ex. A at pp. 28 (lns. 16-25) - 30 (lns. 1-10); *see also* 9/29/2022 Letter from Dr. Mann, attached as **Ex. A-5**.

3

On November 1, 2022, Plaintiff emailed Smith to inform her that she left a copy of a completed JAQ in Smith's office. *See* Ex. A at pp. 51 (lns. 20-25) - 52; *see also* 11/1/2022 Email Correspondence, attached as **Ex. A-6** at p. 1. The JAQ did not address alternative accommodations. *See* Ex. A at p. 54 (lns. 19-25), pp. 56 (lns. 18-25) - 58 (lns. 1-2); *see also* JAQ, attached as **Ex. A-7**. The JAQ provided that Plaintiff's physical limitations impacted her performance of job duties. Ex. A at pp. 57 (lns. 6-25) - 58 (lns. 1-2); Ex. A-7.

Smith and Dr. Javier Villareal, Chief of Operations for AISD, determined Plaintiff needed to attend an examination with a third-party medical provider to get additional information the Committee still needed to finalize the interactive process. *See* Ex. B at pp. 10 (lns. 20-25) - 13 (lns. 1-3). AISD Board Policy DBB (Local) provides that an employee may "undergo a medical examination if information received from the employee . . . or other sources indicates the employee has a physical or mental impairment that . . . interferes with the employee's ability to perform essential job functions[.]" AISD Board Policy DBB (Local), attached as **Ex. A-8** (omissions and alterations added); Ex. A at pp. 70 (lns. 4-25) - 72 (lns. 1-16). Here, although AISD had Plaintiff's diagnostic conclusions and that she wanted a service animal at work, AISD still lacked answers about whether alternative accommodations were available. *See* Ex. B at pp. 10 (lns. 20-25) - 13 (lns. 1-3).

Thereafter, on November 11, 2022, Smith met with Plaintiff and notified her that she would be scheduled to attend a medical examination so that the physician could fully evaluate Plaintiff's accommodation needs and opine regarding potential alternative accommodations. *See* Ex. A at pp. 58-60, p. 64 (lns. 15-19), p. 66 (lns. 19-22); *see also* 11/10/2022 Email Correspondence, attached as **Ex. A-9**. Later that afternoon, Smith received a letter from O'Connell (of The Rescue for PTSD organization), espousing legal conclusions regarding the interactive process with Plaintiff and the District's request that Plaintiff attend a medical examination. *See* Ex. A at pp. 65 (lns. 16-25) - 66

(lns. 1-18); *see also* 11/11/2022 Letter, attached as **Ex. A-10**. This letter still did not address the information the Committee deemed incomplete regarding Plaintiff, including whether there were any alternative accommodations that could support Plaintiff's limitations. *See id.*

On November 16, 2022, Smith sent Plaintiff a letter following up on their November 11, 2022, discussion, wherein Smith explained the medical examination would occur at the Concentra Occupational Health Center. *See* Ex. A at pp. 66 (lns. 23-25) - 68 (lns. 1-11); *see also* Medical Examination Letters, attached as **Ex. A-11** at p. 1. Smith also attached AISD Board Policy DBB (Local) to the letter. *See* Ex. A at pp. 69 (lns. 18-25) - 72; *see also* Ex. A-8. After returning from Thanksgiving break, Smith sent Plaintiff a letter on December 23, 2022, that informed Plaintiff that the medical examination was scheduled for January 10, 2023, and disclosed the physician who would perform the examination. *See* Ex. A at p. 68 (lns. 12-23); Ex. A-11 at p. 2. However, Plaintiff did not attend the scheduled appointment on January 10, 2023, or anytime thereafter, and did not inform AISD that she was not going to attend. *See* Ex. A at pp. 68 (lns. 19-25) - 69 (lns. 1-7).

Plaintiff's counsel sent AISD a letter dated January 11, 2023, from Dr. Darlene Makulski, Physical Therapist at the VA. *See* Ex. A at p. 74 (lns. 13-25), pp. 78 (lns. 19-25) - 79 (lns. 1-4); *see also* Strife January 2023 Supporting Documentation, attached as **Ex. A-12**, at p. 1. Dr. Makulski opined that she and Plaintiff's physical therapist felt that a certified service mobility dog was appropriate for Ms. Strife to utilize to avoid further balance-related injuries. *See id*. In addition, Dr. Makulski directed AISD to review a medical note from Dr. Sheryl Vandeven, Doctor of Physical Therapy. *See id*. Dr. Vandeven's' physical therapy consult notes dated January 10, 2023, provided a thorough analysis of Plaintiff's physical limitations and tasks her service animal would provide to address Plaintiff's mobility related impairments. *See* Ex. A at pp. 76 (lns. 11-25) - 79; Ex. A-12 at pp. 5-8. Notably, however, neither Dr. Makulski's letter nor Dr. Vandeven's consult notes addressed

5

whether any alternative accommodations existed for Plaintiff's mobility-and-stability based limitations. *See* Ex. A at p. 79 (lns. 9-24); Ex. A-12; Ex. B at pp. 83 (lns. 24-25) - 86 (lns. 1-16). Dr. Villareal testified that although the District finally possessed a thorough analysis of Plaintiff's physical limitations and how Plaintiff's service dog would be utilized to assist with her physical limitations, information remained lacking regarding whether alternative accommodations existed. *See* Ex. B at pp. 83 (lns. 24-25) – 86 (lns. 1-16).

### C.     *Plaintiff sues AISD twice before the conclusion of the interactive process.*

On January 18, 2023, Plaintiff filed an Original Petition in Harris County District Court, seeking a temporary restraining order (TRO) and injunction. *See* Case No. 2023-03186 Judgments/Events Summary, attached as **Ex. C**. Plaintiff non-suited the state court lawsuit after failing to obtain a TRO at the January 27, 2023, hearing, and on February 1, 2023, Plaintiff filed the instant lawsuit and sought injunctive relief. *See id.*; *see also* Dkts. 1 and 7.

The Court held a TRO hearing on February 15, 2023. *See generally* Dkt. 17. The Court denied the TRO. *See id.* at p. 28 (lns. 7-8). The Court admonished the parties with the expectation that the interactive process be completed through a decision regarding Plaintiff's accommodation prior to the permanent injunction hearing. *See id.* at pp. 33-35. The Court advised Plaintiff that perhaps she could provide a "more limited release that will get [AISD] the information that they need regarding the decision-making of the doctors in affording this particular accommodation to the Plaintiff." *See id.* at p. 36 (lns. 10-14) (alteration added).

### D.     *AISD approves Plaintiff's requested accommodation.*

On February 17, 2023, the undersigned wrote Plaintiff's counsel seeking authorization to have Plaintiff's medical providers specifically address whether alternative accommodations existed, such as a walker, cane, or wheelchair, which could address Plaintiff's mobility-and-stability related

6

limitations. *See* Ex. A at p. 80, lns. 1-14, p. 84, lns. 8-25; *see also* Strife Accommodation Approval Letter, attached as **Ex. A-13** at p. 2. In response, Plaintiff's counsel provided it was "self-evident that a walker, cane, and/or wheelchair would not be an effective accommodation," and explained the basis for that contention. *See* Ex. A-13. This was the first time AISD received an answer concerning potential alternative accommodations for Plaintiff. *See* Ex. A at pp. 85 (lns. 24-25) - 86 (lns. 1-9). Based on the latest information received from Drs. Makulski and Vandeeven, as well as the information from Plaintiff's counsel negating alternative accommodations, the Committee approved Plaintiff's request to bring Inde to work on February 24, 2023. *See* Ex. A at p. 80 (lns. 1-14); Ex. A-13; Ex. B at pp. 81 - 83 (lns. 1-9). Plaintiff and Inde have worked together at AISD since the accommodation was approved. *See* Ex. A at pp. 83 (lns. 24-25) - 84 (ln. 1).

## Arguments and Authorities

### A. AISD granted Plaintiff's requested accommodation.[3]

The ADA requires an employer to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability…" *Delaval v. PTech Drilling Tubulars*, *L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016) (quoting 42 U.S.C § 12112(b)(5)(A)). "Under the ADA, as amended by the ADA Amendments Act of 2008, a plaintiff in this circuit must prove the following statutory elements to prevail in a failure-to-accommodate claim: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Trautman v. Time Warner Cable Tex., L.L.C.*, 756 F. App'x 421, 430 (5th Cir. 2018) (internal quotations omitted)). Assuming,

---

[3] The Court dismissed Plaintiff's failure-to-accommodate claim under Rule 12(b)(6) as pleaded in her First Amended Complaint without prejudice. *See* Dkt. 65 at pp. 8-9. Plaintiff resurrected this claim in her Second Amended Complaint, and AISD's pending Motion for Partial Dismissal seeks dismissal of it for the same reasons the Court has already provided in this case. *See* Dkt. 68 at pp. 3-6.

7

*arguendo*, that Plaintiff meets the first two elements, her failure-to-accommodate claim fails because it is undisputed fact that AISD granted the exact accommodation Plaintiff requested. *See* Ex. A at pp. 80 (lns. 1-14) - 81 (lns. 1-7); Ex. A-13; Ex. B at p. 83 (lns. 1-9).

"Consistent with the interpretive guidance of the EEOC, 29 C.F.R. pt. 1630, app. § 1630.9, we have held that ADA compliance requires an employer to engage in an interactive process with an employee who requests an accommodation for her disability to ascertain what changes could allow her to continue working." *Dillard v. City of Austin*, 837 F.3d 557, 562 (5th Cir. 2016) (citing *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 700 (5th Cir. 2014)). Relevant here, the Fifth Circuit does not recognize a claim based on an employer's complete failure to engage in the interactive process; rather, "When an employer's unwillingness to engage in a good faith interactive process *leads to* a failure to reasonably accommodate an employee, . . . the employer violates the ADA." *Silva v. City of Hidalgo*, 575 F. App'x 419, 424 (5th Cir. 2014) (quoting *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999)) (omission added and emphasis in original). It follows, then, when a failure-to-accommodate claim is based on a delay in the interactive process, "Undue delay is only an ADA violation to the extent it renders an accommodation (if any) unreasonable; the statute provides no separate claim for undue delay." *Schilling v. La. DOT & Dev.*, 662 F. App'x 243, 247 (5th Cir. 2016).

In *Loulseged*, the Fifth Circuit explained that "[n]othing in the regulations or the cases indicates to us that an employer must move with maximum speed to complete this process and preempt any possible concerns." *Loulseged*, 178 F.3d at 737. The Court then hypothesized about circumstances in which an employer's delay in the interactive process could lead to liability. *See id.* at 737 n.6 (quoting *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d at 1130, 1135 (7th Cir. 1996); citing *Taylor v. Phoenixville Sch. Dist.*, 174 .3d 142, 165 (3d Cir. 1999)). Notably, none of the circumstances hypothesized in *Loulseged* or any Fifth Circuit case contemplate liability for "delay" when, as is

undisputed here, the employee receives the accommodation she requested. *But see Molden v. E. Baton Rouge Par. Sch. Bd.*, 715 F. App'x 310, 316 (5th Cir. 2017) ("The record, however, is clear that the School Board did provide Molden with a reasonable accommodation. ***Thus any putative failure to engage in an interactive process cannot be said to have led to a failure to reasonably accommodate***.") (emphasis added).

The record in this case does not contain any of the hallmarks that could show an employer's alleged delay in the interactive process was in bad faith and either led to a failure to accommodate or rendered an accommodation unreasonable. *See, e.g., Loulseged*, 178 F.3d at 737. Put plainly, the time it took to approve Plaintiff's accommodation request was not due to AISD's unwillingness to engage in a good faith interactive process with Plaintiff; rather, it was the result of Plaintiff repeatedly providing AISD with documentation that didn't allow the Committee to adequately evaluate Plaintiff's need for requested accommodation, including whether alternative accommodations were available. *See* Ex. A at pp. 55-56; pp. 85 (lns. 4-25) - 86 (lns. 1-9); Ex. A-1, Ex. A-4 at p. 3; Ex. A-5; Ex. A-6; Ex. A-7; A-10; A-12; Ex. B at pp. 40 (lns. 9-25) - 41 (lns. 1-15), pp. 84 - 86 (lns. 1-16). Broadspire's early missteps impacted the interactive process, but AISD addressed and timely remedied those situations when alerted. *See* Ex. A at pp. 52 (lns. 14-25) - 54 (lns. 1-8); Ex. A-3; Ex. A-6; Ex. B at pp. 24 (lns. 23-25) - 26 (lns. 1-8), p. 32 (lns. 16-25), p. 47 (lns. 5-9).[4] Moreover, Plaintiff testified during her deposition that she never tripped, fell, or suffered an injury on AISD property while the interactive process was ongoing. *See* Ex. A at p. 50 (lns. 13-25). Plaintiff's testimony clearly illustrates that the alleged delay in the interactive process did not impact Plaintiff's physical and psychological health or force her to work in suboptimal conditions; rather, she worked successfully without an accommodation as she had done for the 10 years before she brought Inde to work. *See id.*;

---

[4] AISD has terminated its contract with Broadspire. *See* Ex. B at pp. 24 - 26 (lns. 1-8).

9

*see also id.* at p. 18 (lns. 13-21). Accordingly, Plaintiff's failure-to-accommodate claim should be dismissed on summary judgment since it is undisputed that the alleged delay did not lead to a failure to reasonably accommodate the Plaintiff. *See Molden*, 715 F. App'x at 316.

### B.  *Plaintiff cannot establish a plausible hostile work environment claim.*[5]

"To establish a hostile work environment claim under the ADA, a plaintiff must show: '(1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of affected a term of employment; and (5) that the employer knew or should have known of the harassment and failed to take, prompt remedial action.'" *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 445 (5th Cir. 2017) (quoting *Flowers v. S. Reg'l Physician Servs. Inc*, 247 F.3d 229, at 235-36 (5th Cir. 2001)). Additionally, "the disability-based harassment must 'be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment.'" *Flowers*, 247 F.3d at 236 (quoting *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998)).

Aside from the first *prima facie* element, this record is devoid of any evidence to support a viable hostile work environment claim. Plaintiff testified that Smith never made disparaging remarks about her having a disability, nor did she make any disparaging comments about her service dog. *See* Ex. A at p. 25 (lns. 19-25), p. 65 (lns. 2-4). In fact, Plaintiff testified that Smith was "pleasant" and "cordial" with her, and always answered her questions whenever discussing Plaintiff's accommodation request. *See* Ex. A p. 25 (lns. 7-18), p. 65 (lns. 10-14), p. 81 (lns. 8-15). Moreover, when asked if Villareal or other members of the Committee made disparaging or discriminatory comments about her disability, Plaintiff testified that she was not aware of any them making such comments. *See* Ex. A at pp. 90 (lns. 13-25) - 91 (lns. 1-6). Plaintiff has never received

---

[5] AISD's pending Motion for Partial Dismissal seeks dismissal of this claim in Plaintiff's Second Amended Complaint for the same reasons the Court has already provided in this case. *See* Dkt. 65 at pp. 9-10; Dkt. 68 at pp. 6-8.

a negative performance review or received a reprimand from her manager or the HR team. *See* Ex. A at p. 17. Further, even if Plaintiff were to try to assert that AISD's alleged delay in approving her accommodation request could support an inference of a hostile work environment, courts in this circuit would hold otherwise. *See, e.g., Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 585 (5th Cir. 2020) (quoting *Credeur v. La. Through Off. of Att'y Gen.*, 860 F.3d 785, 796 (5th Cir. 2017)) ("a disagreement with an employer over terms of employment or an accommodation do[es] not amount to harassment."). In the absence of any evidence showing Plaintiff was the victim of unwelcome, disability-based harassment that was sufficiently pervasive or severe, Plaintiff's vague hostile work environment claims should be dismissed.

C.      *Plaintiff cannot establish an interference claim.*

Plaintiff asserts a claim that AISD interfered with her rights under the ADA. The Fifth Circuit has yet to articulate a test to state an ADA interference claim; however, other circuits have found the test for anti-interference claims under the Fair Housing Act, 42 U.S.C. § 3617, which includes an interference provision identical to that in the ADA, to be analogous. *See Huber v. Blue Cross & Blue Shield of Fla., Inc.*, 2022 WL 1528564, at *5 (E.D. La. May 13, 2022) (citing *Frakes v. Peoria Sch. Dist.*, 872 F.3d 545, 550 (7th Cir. 2017)) (citing *Brown v. City of Tucson*, 336 F.3d 1181, 1191-1193 (9th Cir. 2003)).[6] To establish an ADA interference claim a Plaintiff must demonstrate that she: (1) engaged in activity statutorily protected by the ADA; or (2) engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; and (3) that the defendant coerced, threatened, intimidated, or interfered on account of her protected activity; and (4) that the defendants were motivated by an intent to discriminate. *See Frakes*, 872 F.3d at 550-51. Courts have opined that the statutory term "interfere with" is broad and captures all

---

[6] It should be noted that whether a disability-based interference claim exists under Texas law in Chapter 21 is dubious. *See Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 58 (Tex. 2021).

11

practices which the effect of interfering with the exercise of rights" under the ADA. *See Brown*, 336 F.3d at 1191 (cleaned up). However, courts find the term to not read "so broad as to prohibit 'any action whatsoever that in any way hinders a member of a protected class.'" *See id*. at 1192 (quoting *Mich. Prot. & Advocacy Serv. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994)).

Although it is undisputed that Plaintiff engaged in a protected activity when she requested (and received) an accommodation, nothing in the record evidence shows that AISD interfered with her ADA rights. Indeed, Plaintiff admits that no AISD employees harassed or intimidated her at any time during the interactive process. *See* Ex. A p. 25 (lns. 7-25), p. 65 (lns. 10-14), p. 81 (lns. 8-15), pp. 90 (lns. 13-25) - 91 (lns. 1-6). Thus, whatever the Fifth Circuit may find sufficient to constitute an ADA interference claim, this case is plainly not it. *See Kelly*, 90 F.4th 158 at *8 (interference claim failed because plaintiff failed to show motivation of intent to discriminate).

D.      *Plaintiff's discrimination and retaliation claim are without merit.*

Plaintiff cannot provide any evidence of discrimination based on her disabilities or retaliation after engaging in activity protected under the ADA. A plaintiff may prove employment discrimination or retaliation with either direct or circumstantial evidence. *See Clark v. Champion Nat. Sec.*, Inc., 952 F.3d 570, 579, 588 (5th Cir. 2020). Courts apply the burden-shifting analysis first articulated in *McDonnell Douglas*, a Title VII case, when, as here, a Plaintiff relies on indirect or circumstantial evidence. *See Clark*, 952 F.3d at 582. Under the burden-shifting framework, Plaintiff must first establish a *prima facie* case of discrimination and retaliation. *See Clark*, 952 F.3d at 582, 588. If Plaintiff establishes her *prima facie* case, then the burden of production shifts to AISD to articulate legitimate, nondiscriminatory, and non-retaliatory reasons for its alleged adverse employment actions. *Id*. Once AISD sustains its burden, the burden shifts back to Plaintiff to establish that AISD's proffered reasons are merely a pretext for discrimination or retaliation. *Id*.

*1. Plaintiff did not suffer an adverse employment action.*

To establish a *prima facie* case of disability discrimination, Plaintiff must show that: (1) she has a disability or was regarded as disabled; (2) she was qualified for the job; and (3) she was subject to an adverse employment decision on account of her disability. *See Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016). Similarly, "To show an unlawful retaliation, a plaintiff must establish a *prima facie* case of (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." *Clark*, 952 F.3d at 588 (internal quotations omitted).

Assuming for the sake of argument that Plaintiff can establish the first element of her *prima facie* cases of discrimination and retaliation, she would have to still demonstrate that she suffered an adverse employment action for either claim to be viable. In the discrimination context, to establish an adverse employment action under the recent precedent, Plaintiff must first establish that the alleged adverse action altered the terms, conditions, or privileges of her employment. *See Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 430 (5th Cir. 2023) (per curiam) (*citing Hamilton v. Dallas Cnty.*, 79 F.4th 494, 502-03 (5th Cir. 2023)). Second, the plaintiff must establish that the adverse action was something more than "*de minimis*" harm. *See id.* at 431. This means "the complained-of-action must involve a meaningful difference in the terms of employment and injure the affected employee[.]" *Id.* (cleaned up). In expounding its *Hamilton* decision, the Fifth Circuit more recently explained:

> Title VII does not permit liability for *de minimis* workplace trifles. Thus, Harrison must allege not only an adverse action, but something more than a de minimis harm borne of that action. This is often referred to as the "materiality" half of the analysis . . . To discriminate reasonably sweeps in some form of an adversity and a materiality threshold. It prevents the undefined word "discrimination" from commanding judges to supervise the minutiae of personnel management. It ensures that a discrimination claim involves a

13

> meaningful difference in the terms of employment and one that injures the affected employee . . . .

*Harrison* at 82 F.4th at 431-32 (cleaned up). Similarly, in the retaliation context, it is well-settled that an adverse action must also be "materially adverse" to a reasonable employee, meaning the employer's action is harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination. *Stringer v. N. Bolivar Consol. Sch. Dist.*, 727 F. App'x 793, 804 (5th Cir. 2018).

Plaintiff contends that three alleged harms qualify as adverse employment actions: "a) continuously refusing to reasonably accommodate Ms. Strife's disabilities; b) seriously endangering and jeopardizing her physical and psychological health and safety by refusing to allow her to have and use her service dog at work; and c) attempting to force her to submit to a medical examination by its retained, unqualified medical provider as a condition to being allowed to have and use her service dog at work." Dkt. 66 at ¶ 92. But none of these allegations amount to adverse employment actions in either the discrimination or retaliation context. From the outset, as explained above, it is undisputed that AISD granted the Plaintiff her requested accommodation, and there is no evidence in the record that AISD ever "refused" to reasonably accommodate Plaintiff. In any event, "A failure-to-accommodate claim under the ADA is distinct from a claim of disparate treatment and is analyzed separately under the law," *Bridges v. Dep't of Social Servs.*, 254 F.3d 71, 71 n.1 (5th Cir. 2001) (unpublished); *accord LHC Grp.*, 773 F.3d at 703 n.6 ("A failure-to-accommodate claim provides a mechanism to combat workplace discrimination even when the employee in question *has not* suffered adverse employment action.") (emphasis in original). Moreover, as also previously stated, the record shows that there is no evidence that Plaintiff's allegations that AISD's alleged delay in granting her accommodation "endangered and jeopardized" her physical and psychological health and safety—she continued working in the same

14

manner as she had from the onset of her decade-long employment with AISD. *See* Ex. A at p. 50 (lns. 13-25), p. 34 (lns. 7-21). Indeed, Plaintiff had access to a walker if she needed it for stability and had used it when she worked in a campus-based location before she transitioned to her human resources position in central office. *See id.* at p. 31 (lns. 3-22).[7] In other words, AISD made no decision *at all* that altered the terms or conditions of Plaintiff's employment, let alone that caused any actionable injury, and Plaintiff's fear of injury, especially when considering her own stability/mobility devices she could have used in the *interim* if needed, plainly falls short of the materiality standard for actionable discrimination or retaliation claims. *See, e.g., Sambrano v. United Airlines, Inc.*, 2023 WL 8721437, at *4 (N.D. Tex. 2023); *see also Stringer*, 727 F. App'x at 804-05.

Regarding the abandoned medical examination directive, it is job-related and consistent with business necessity for an employer to make medical inquiries in response to an employee's requested accommodation. 42 U.S.C. § 12112(d)(4)(A) (allowing for medical inquiries when job-related and consistent with business necessity); *see also Delaval*, 824 F.3d at 482. And, notable here, "[A]n examination ordered for valid reasons is neither an adverse job action nor does it prove discrimination." *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 813 (6th Cir. 1999) (alteration added); *see also Gipson v. Tawas Police Auth.*, 794 F. App'x 503, 508 n.6 (6th Cir. 2019) ("We recognize that the definition of an 'adverse employment action' for retaliation claims is broader than for discrimination claims . . . But even in a retaliation claim, we don't think that 'adverse employment action' is broad enough to include a valid medical exam requested for legitimate business reasons.

---

[7] Plaintiff also had access to a wheelchair, although she had never used it at work. *See id.* at p. 62 (lns. 13-22).

Otherwise, every employee who is required to take a medical exam when he requests accommodations could make out a prima facie case of retaliation.") (internal citation omitted).

AISD attempted to have Plaintiff submit to a medical examination because Plaintiff repeatedly failed to send adequate documentation that the Committee could use to thoroughly evaluate her request, and Plaintiff provided no information regarding potential alternative accommodations. *See* Ex. A at pp. 58 - 61 (lns. 1-17), p. 64 (lns. 15-19), p. 66 (lns. 19-22); Ex. B at p. 10 (lns. 20-25) - 13 (lns. 1-3). The requested (but abandoned) medical examination was authorized under AISD Board Policy DBB (Local) and the law. *See* Ex. A-8; Ex. B at p. 10 (lns. 8-17); *see also Hannah P. v. Coats*, 916 F.3d 327, 339 (4th Cir. 2019) ("An employer's request for a medical examination is job-related and consistent with business necessity when: '(1) the employee requests an accommodation . . . ") (quoting *Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014)); *accord Delaval*, 824 F.3d at 482. In short, AISD acted in a manner that it is expressly allowed to do under the interactive process, as it is the employer who has the ultimate discretion to choose among effective accommodations, and the abandoned directive to attend a medical examination did not cause Plaintiff even a *de minimis* harm. *Cf. Thompson v. Microsoft Corp.*, 2 F.4th 460, 469 (5th Cir. 2021) (employer did not violate the ADA by collaborating with employee regarding accommodations for several months, explaining accommodations it deemed unreasonable, asking the employee to respond with alternative accommodations, and offering to consult directly with the employee's doctors). Therefore, the Court should dismiss Plaintiff's discrimination and retaliation claims as the complained of actions fall below the standards for adverse actions. *See Harrison*, 82 F.4th 427 at 431 ("[D]ifferential treatment that helps the employee…[i]t is not an employment action that injures the affected employee."); *see Austgen v. Allied Barton Sec. Servs., L.L.C.*, 815 F. App'x 772, 776 (5th Cir.

2020) (temporary, unpaid leave as prior to offering the employee a reasonable accommodation was not an adverse employment action in a retaliation claim).

    *2. AISD's actions were legitimate, nondiscriminatory, and non-retaliatory.*

Even if the Plaintiff could carry the burden of showing her *prima facie* cases – which she cannot – summary judgement would still be warranted because AISD's actions during the interactive process were all valid and justified. An employer's burden at this stage is one of production only, not persuasion. *See Reeves v. Sanderson Plumbing Prods*., Inc., 530 U.S. 133, 142.

As previously explained, the interactive process extended primarily due to Plaintiff's delay in getting AISD the requisite documents they needed to make a final decision on her service animal. *See* Ex. A at pp. 55-56; pp. 85 (lns. 4-25) - 86 (lns. 1-9); Ex. A-1, Ex. A-4 at 3; Ex. A-5; Ex. A-6; Ex. A-7; A-10; A-12; Ex. B at pp. 40 (lns. 9-25) - 41 (lns. 1-15), pp. 84 - 86 (lns. 1-16). The record evidence shows AISD did not receive the requisite information it needed to evaluate Plaintiff's physical limitations and how Plaintiff's service dog would be utilized to assist with her physical limitations until January 2023, nearly five months after Plaintiff initiated the accommodation process. *See* Ex. A at pp. 76 (lns. 11-25) - 79; Ex. A-12 at pp. 5-8. Additionally, AISD did not receive information concerning viable alternative accommodations until February 17, 2023. *See* Ex. A at pp. 84 (lns. 8-25) - 86 (lns. 1-9); Ex. A-13 at p. 2. Regarding AISD's abandoned medical examination request, AISD only made the request after not obtaining the requisite information from Plaintiff and her medical providers over several months, needing to evaluate potential alternatives, and the District withdrew the request before granting her accommodation in any event. *See* Ex. A at pp. 58-60, p. 64 (lns. 15-19), p. 66 (lns. 19-22), pp. 85 (lns. 4-25) - 86 (lns. 1-9); Ex. A-13; Ex. B at pp. 10 (lns. 20-25) - 13 (lns. 1-3); pp. 80 - 83 (lns. 1-

9). AISD, therefore, met its burden of production regarding its legitimate, nondiscriminatory, and non-retaliatory reasons for taking the actions Plaintiff purports to be adverse.

### 3. Plaintiff has no evidence of pretext.

Because AISD has met its burden of production, the burden shifts back to Plaintiff to establish pretext. *See Clark*, 952 F.3d at 582, 588. Plaintiff's pretext burden in the discrimination context requires her to offer sufficient evidence to create a genuine issue of material fact that each of AISD's reasons are untrue but are, instead, a pretext for disability discrimination. *See LHC Grp.*, 773 F.3d at 702. Pretext in the retaliation context requires Plaintiff to show "that the adverse action would not have occurred 'but for' the employer's retaliatory motive[.]" *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (internal citations omitted). In the absence of any corroborative evidence, the subjective beliefs and conjecture of a plaintiff are not enough to create a genuine issue of material fact. *See, e.g., Garcia v. Penske Logistics, LLC*, 165 F. Supp. 3d 542, 551 (S.D. Tex. 2014), aff'd 631 F. App'x 204 (5th Cir. 2015).

Plaintiff's deposition testimony reveals, beyond dispute, that her belief that she was discriminated or retaliated against based on the length of the interactive process and the abandoned request for a medical examination is purely subjective. See Ex. A at pp. 87-91. No doubt, Plaintiff believes the interactive process should have concluded faster and disagrees with the withdrawn decision to have her submit to a medical examination, but her mere disagreement is insufficient to demonstrate discriminatory or retaliatory intent. *See Mayberry v. Vought Aircraft, Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."). In sum, because Plaintiff's own deposition testimony and the evidence on the record unquestionably reveals Plaintiff is armed with rank speculation and nothing more, summary judgment is warranted due to her inability to

demonstrate pretext for discrimination or retaliation. *See Jurach*, 642 F. App'x at 321; *Rodriguez v. Eli Lilly & Co.*, 820 F. 3d 759, 766 (5th Cir. 2016).

E.  *Plaintiff is precluded from bringing a "pattern and practice" claim.*

It is also unclear in Plaintiff's Second Amended Complaint whether she intends to bring a "pattern and practice" claim against the District despite the Court already finding such a claim to be "precluded." *See* Dkt. 65 at p. 10 n.6; Dkt. 66 at ¶¶ 102-103. It remains true at this stage in the case that the Fifth Circuit forecloses her ability to do so in the discrimination context. *See Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003) (citing *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 355-56 (5th Cir. 2001) (stating that the pattern-or-practice method of proof is not available in private, non-class action lawsuits)). The Court should, therefore, dismiss this claim again.

## Prayer

AISD requests that the Court grant its Motion for Summary Judgment, dismiss Plaintiff's claims with prejudice, and award AISD its taxable costs of court.

Respectfully submitted,

SPALDING NICHOLS LAMP LANGLOIS

_____
C. CORY RUSH
State Bar No. 24074989
Fed. I.D. No. 1125441
crush@snll-law.com
ANDREW FRANCIS
State Bar No. 24123604
Fed. I.D. No. 3699278
afrancis@snll-law.com
3700 Buffalo Speedway, Suite 560
Houston, Texas 77098
Telephone:   713/993-7066
Facsimile:    888/726-8374

ATTORNEYS FOR DEFENDANT

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record via electronic mail and/or ECF on January 29, 2024, addressed as follows:

Scott Newar
440 Louisiana Street, Suite 900
Houston, Texas 77002
newar@newarlaw.com
*(via e-file)*

_____
ATTORNEY FOR DEFENDANT

20