**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **ALISHA STRIFE,** | § | **NO. 4:23-cv-358** |
| | § | |
| | § | |
| **Plaintiff** | § | **JURY DEMANDED** |
| | § | |
| **v.** | § | |
| | § | |
| **ALDINE INDEPENDENT** | § | |
| **SCHOOL DISTRICT** | § | |
| | § | |
| **Defendant** | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Alisha Strife, files this Response to Defendant, Aldine Independent School District's, Motion For Summary Judgment (Dkt. 71) and respectfully asserts as follows:

i

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................... iv

I. Introduction ................................................................................................................1

II. Relevant Facts ...........................................................................................................1

    A.    Strife Suffers Disabling Physical and Psychological Injuries Serving In The United States Army In Iraq ...............................................................................1

    B.    Strife Excels As An AISD Teacher, Teaching Coordinator, And Project Analyst.................................................................................................................2

    C.    VA Deems Strife "100%" Disabled ...................................................................3

    D.    The Rescue For PTSD Awards Strife A Certified Service Dog...................................3

    E.    Strife Requests AISD Reasonably Accommodate Her Physical/Psychological Disabilities By Allowing Her To Work With Her Service Dog...................................4

    F.    AISD's Employee Accommodations Committee Stonewalls Strife's Service Dog Request ........................................................................................................4

    G.    Strife's VA Doctors Confirm Her Disabilities And Need For A Service Dog To Reasonably Accommodate Them ...................................................................5

    H.    AISD Attempts To Violate Strife's HIPAA Rights ........................................6

    I.    Strife Pleads With AISD To Allow Her To Work With Her Service Dog ...................7

    J.    AISD Continues To Stonewall Strife's Service Dog Request And Harass/Retaliate Against Her ............................................................................8

    K.    RPTSD And Strife Object To AISD's ADA/RA/TLC Violations..............................11

    L.    AISD Continues To Stonewall Strife's Service Dog Request And Demand She Submit To An Invasive Medical Examination ...............................................12

    M.    Strife Files An EEOC Charge Against AISD........................................................14

    N.    VA Doctors Confirm "Inde" Effectively Accommodates Strife's Mobility Impairments...................................................................................................14

O.    AISD Still Refuses To Approve Strife's Service Dog ...................................15

P.    Strife Files Suit Against AISD ...................................................................17

Q.    AISD Approves Strife's Service Dog Request Under Threat Of A
Preliminary Injunction..............................................................................17

III. Legal Argument .............................................................................................18

A.    Standard of Review ..................................................................................18

B.    Strife Has Raised A Genuine Issue Of Material Fact That AISD Failed To
Reasonably Accommodate Her Disabilities................................................19

C.    Strife Has Raised A Genuine Issue of Material Fact That AISD ................................25

Discriminated Against Her Based On Her Disabilities.........................................25

D.    Strife Has Raised A Genuine Issue of Material Fact That AISD Retaliated
Against Her For Her ADA/RA/TLC Protected Activity................................27

E.    Strife Has Raised A Genuine Issue Of Material Fact That AISD's
"Legitimate, Non-Discriminatory" Reason(s) For
Delaying/Constructively Denying Her Service Dog Request Are Pretexts .................29

F.    AISD's Discriminatory Animus Against Service Animals Is A "But For"
Cause Of AISD's Discrimination And Retaliation Against Strife ..............................37

G.    Strife Has Raised A Genuine Issue Of Material Fact That ADA Subjected Her
To A Disability-Based Hostile Work Environment ......................................38

IV. Conclusion .....................................................................................................39

CERTIFICATE OF SERVICE .................................................................................40

# TABLE OF AUTHORITIES

**Cases**

*Abdallah v. Mesa Air Group*, 83 F.4th 1006 (5th Cir. 2023) ........................................................ 37

*Battle v. United Parcel Serv., Inc.*, 438 F.3d 856 (8th Cir. 2006) ................................................ 22

*Bostock v. Clayton County, Georgia*, 140 S.Ct. 1731 (2020) ...................................................... 37

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) .................................................. 28

*Calero-Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6 (1st Cir. 2004) ............................................ 22

*Davis v. City of Phila.*,  CIVIL ACTION NO.: 18-0668, at *4 (E.D. Pa. Jan. 11, 2019) ............. 35

*Fabela v. Socorro Independent School District*, 329 F.3d 409 (5th Cir. 2003) ............................ 19

*Feist v. State of Louisiana*, 730 F.3d 450 (5th Cir. 2013) ............................................................ 20

*Flowers v. Southern Regional Physician Serv.*, 247 F.3d 229 (5th Cir. 2001) ............................ 38

*Goudeau v. Nat'l Oilwell Varco, L.P.,* 793 F.3d 470 (5th Cir. 2015) ........................................... 37

*Groome Resources Ltd. v. Parish of Jefferson*, 234 F.3d 192 (5th Cir. 2000) ............................ 22

*Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023) ............................................................... 26

*Harrison v. Brookhaven Sch. Dist.*, No. 21-60771 (5th Circ. September 21, 2023) ..................... 26

*Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128 (9th Cir. 2001) ...................................... 32

*Jackson v. Host Intern, Inc.*, 426 Fed. Appx. 215 (5th Cir. 2011) ................................................ 33

*Kemp v. Holder*, 610 F.3d 231 (5th Cir. 2010) ............................................................................. 20

*Loulseged v. Akzo Nobel Inc.*, 178 F. 3d 731(5th Cir. 1999) ........................................................ 21

*Machinchick v. PB Power, Inc.*, 398 F.3d 345 (5th Cir. 2005) ..................................................... 33

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) ........................................................... 39

*Perkins v. City of New York*, 2023 WL 370906 (2nd Cir. 2023) ................................................... 21

*Peterson v. Linear Controls, Inc.*, 757 F.App'x 370 (5th Cir. 2019) ............................................ 27

*Reeves v. Sanderson Plumbing Products*, 530 U.S. 133 (2000) ................................................... 36

*Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. 2097 (2000) ........................................ 19

iv

*Riel v. Electronic Data Systems Corp.*, 99 F.3d678 (5th Cir. 1996)............................................. 24

*Russell v. Mckinney Hosp. Venture*, 235 F.3d 219 (5th Cir. 2000) ................................................. 19

*Spears v. La. Coll.*, No. 20-30522, at **\*9** (5th Cir. Apr. 6, 2023).................................................... 25

*Sullivan v. Vallejo City Unified School Dist.*, 731 F.Supp. 947 (E.D. Cal. 1990) ....................... 35

*Tabatchnik v. Continental Airlines*, 262 F. App'x 674 (5th Cir. 2008) ......................................... 27

*Tuli v. Brigham & Women's Hosp.*, 656 F.3d 33 (1st Cir. 2011) ................................................... 29

*Vance v. Union Planters Corp.*, 209 F.3d 438 (5th Cir. 2000)....................................................... 39

*Vaughn v. Woodforest Bank*, 665 F.3d 632 (5th Cir. 2011)............................................................ 19

*Williams v. Tarrant Cnty. Coll. Dist.*, 717 Fed.Appx. 440, 447-448 (5th Cir. 2018).................. 34

**Statutes**

42 U.S.C. 12112(d)(4)(A) ................................................................................................................ 27

42 U.S.C. section 12112(b)(5)(A)................................................................................................... 20

Tex. Educ. Code section 48.112 ........................................................................................................ 3

Tex. Hum. Res. Code section 121.003(c), (i) ................................................................................ 17

Tex. Hum. Resources Code section 121.001 et seq........................................................................ 17

Tex. Labor Code section 21.001 *et seq.*................................................................................. passim

**Rules**

28 C.F.R. 36.104 .............................................................................................................................. 34

29 C.F.R. 1630.2(j)(3)(iii)............................................................................................................... 34

Fed. R. Civ. P. 56............................................................................................................................ 18

## I.  Introduction

For approximately six months, AISD—a Texas public school district—refused to allow Alisha Strife—a physically and psychologically disabled U.S. Army veteran and long-term AISD employee—to have a certified service dog at work. AISD's refusal was motivated by its discriminatory animus against service animals and its retaliatory animus against Strife for seeking to enforce her rights under the ADA, the Rehabilitation Act ("RA"), and Tex. Labor Code section 21.001 *et seq.* ("TLC") to such a reasonable accommodation of her disabilities.

AISD's discrimination against, retaliation against, and interference with Strife not only denied her the rights and protections afforded by the ADA, the RA, and the TLC but seriously endangered her physical and psychological health and safety.

Therefore, Strife brought this lawsuit to protect and vindicate her rights under the ADA, the RA, and the TLC and to prevent AISD from subjecting other disabled employees to the same or similar discriminatory and retaliatory conduct.

## II. Relevant Facts

Following are the indisputable facts:

### A.    Strife Suffers Disabling Physical and Psychological Injuries Serving In The United States Army In Iraq

Alisha Strife ("Strife") is 38 years old and a mother of two. *See* Declaration of Alisha Strife (Exhibit B), at para. 2.

In February 2003, Strife enlisted in the United States Army. *See* Strife (Exhibit A), at 8:9-13. In late 2003/early 2004, the Army deployed Strife first to Kuwait and then to Mosul, Iraq. *Id.*, at 9:7-17

1

While serving in Iraq, Strife sustained a Traumatic Brain Injury ("TBI"), shoulder injury, leg injury, and Post-Traumatic Stress Disorder ("PTSD"). *Id.*, at 9:25-11:12.

In May 2005, the Army medically discharged Strife. *Id.*, at 11:16-21

As a result of her service-related injuries, Strife has undergone multiple surgeries over the last fifteen years, including two leg surgeries; Tibial Tubercle Osteotomy and Medial Patellofemoral Ligament ("TTO/MPFL") reconstruction; and hip surgery. *Id.*, at 32:14-33:1. She has also undergone extensive psychiatric/psychological therapy for PTSD, major depression, and anxiety. *Id.*, at 36:22-37:11; 37:19-24.

**B.     Strife Excels As An AISD Teacher, Teaching Coordinator, And Project Analyst**

In 2010, Strife obtained a bachelor's degree in elementary education from Stephen F. Austin State University. *Id.*, at  12:10-18. After obtaining her degree, Strife taught pre-school. *Id.*, at 12:24-13:

In the fall 2012, Strife began working at AISD as an elementary school teacher. *Id.*, 13:9-15. Strife taught fifth and sixth grade in AISD for two and a half years. *Id.*, at 13:16-18.

Because of her disabling PTSD, anxiety, and depression, Strife could not continue teaching—which is her lifelong passion. Therefore, she became an AISD Testing Coordinator and worked in that capacity for approximately six years. *Id.*, at 13:19-21;14:4-7.

In July 2022, AISD promoted Strife to Project Analyst in its Human Resources department. *Id.*, at 14:15-15:11 As a Project Analyst, Strife is responsible for securing and managing AISD's Teacher Incentive Allotment ("TIA") from the State of Texas. The TIA provides qualified Texas public school  teachers with  "beneficial financial incentive[s]." *Id.*, at

17:12-16; *see also* https://tiatexas.org/; Tex. Educ. Code section 48.112. AISD positively

evaluated Strife's job performance as a Project Analyst. *Id.*, at 17:5-11.

Strife works in an office in AISD's administration building. In 2022, the most immediate

route to Strife's office from the AISD administration building parking lot—where she *attempted*

to park in a handicapped parking space—required her to climb a steep stair bank. *See* Strife

(Exhibit A), at 39:7-40:2; 42:14-43:7; 45:25-46:13; Exhibit B, at para. 4, at Exhibit 1; and at

para. 5, at Exhibit 2.

### C.     VA Deems Strife "100%" Disabled

In 2017, the Veterans Administration ("VA") deemed Strife 100% disabled from her

service-related PTSD and depression; 20% disabled from a right knee subluxation; 10% disabled

from a left chronic ankle sprain; and 10% disabled from joint disease in her right knee. *See*

Exhibit G. In December 2022, the VA reaffirmed Strife's 100% disability rating. *See* Exhibit C.

### D.     The Rescue For PTSD Awards Strife A Certified Service Dog

In the years preceding 2022, Strife tried numerous standard PTSD treatments—all to no

avail. *Id.*, at 36:22-37:11; 37:19-24. Therefore, in 2021, Strife applied for a service dog from The

Rescue for PTSD ("RPTSD")—a non-profit organization that trains and provides services dogs

to military veterans suffering from PTSD. *Id.*, at 19:16-20:1; Exhibit D; https://rescueforptsd.org/

In June 2022, RPTSD awarded Strife an RPTSD-trained and certified service dog named

"Independence" (a/k/a "Inde"). *Id.*, at 19:25-20:1; 21:16-22:6; Exhibit D. "Inde" assists Strife

with her physical and psychological disabilities. Specifically, "Inde" enables Strife to, *inter alia*,

rise and stand from a seated position ("post"); helps her maintain her balance and gait; and

applies deep pressure therapy to ameliorate her PTSD. *Id.*, at 35:13-36:5; 36:12-21; Exhibit E.

3

**E.      Strife Requests AISD Reasonably Accommodate Her Physical/Psychological Disabilities By Allowing Her To Work With Her Service Dog**

On August 30, 2022, Strife first requested AISD reasonably accommodate her physical and psychological disabilities by allowing her to work with "Inde." Specifically, Strife submitted an ADA reasonable accommodation request to AISD through its third party contractor, Broadspire. *See* Smith (Exhibit H), at 57:22-58:21.

**F.      AISD's Employee Accommodations Committee Stonewalls Strife's Service Dog Request**

AISD's Employee Accommodations Committee ("EAC") is an *ad hoc* committee of AISD employees that considers and determines whether to approve AISD employees' requests for reasonable accommodations of their disabilities. Mindy Smith ("Smith")—an AISD Human Resources Executive Director—is the EAC's chairperson. *See* Smith (Exhibit H), at 38:19-25; 39:22-23

The EAC has *no* policies or procedures and maintains *no* formal meeting notes or records. *See* Smith (Exhibit H), at 39:1-7; 192:24-193:10. Additionally, most AISD EAC members lack *any* ADA knowledge, experience, or training. *See* Villarreal (Exhibit I), at 36:1-36:15; Smith (Exhibit H), at 51:9-15; 194:19-195:6; Exhibit J.

On September 16, 2022, the EAC met to consider Strife's service dog accommodation request. The EAC refused to approve Strife's service dog accommodation request then because—according to AISD—the EAC wanted to know whether there were ***"alternative accommodations*...**" (i.e. a non-service dog). *See* Exhibit K (emphasis added), at Response 2.

Smith's September 16th meeting notes reveal the EAC's decision to require Strife and her doctors to identify "alternative accommodations" was motivated by EAC member(s)' purported

concern that "Inde" might harbor "fleas," exacerbate "allergies," and/or pose a "threat" to "safety." *See* Smith (Exhibit H), at 33:22-35:9; and Exhibit L. This, despite the fact that: 1) Strife had provided AISD with RPTSD and American Kennel Club ("AKC") certifications of "Inde"[1]; and 2) AISD allows highly aggressive police dogs to enter and patrol its schools, where those dogs invariably encounter children. *See* Villarreal (Exhibit I), at 90:25-93:23.

> ### G.    Strife's VA Doctors Confirm Her Disabilities And Need For A Service Dog To Reasonably Accommodate Them

On September 22, 2022, Dr. Lisa Miller—a Doctor of Pharmacology with a specialization in psychiatric pharmacology who has treated Strife for PTSD, depression, and anxiety at the VA since 2007—attested that Strife requires a service dog for those psychological conditions. *See* Exhibit M; Exhibit N**;** Strife (Exhibit A)**,** at 26:5-27:13; 26:22-27:4. On September 26, 2022, Strife tendered Dr. Miller's September 22nd letter to Smith. *See* Exhibit O.

On September 27, 2022, Smith informed Strife that Miller's September 22nd letter was "***exactly*** what [AISD] needs…" *See* Exhibit P (emphasis added); Smith (Exhibit H), at 96:4-19; Strife (Exhibit A), at 27:25-28:14. Yet, in contravention of the ADA,[2] Smith—acting upon AISD's in-house counsel's advice—informed Strife that AISD "need[ed]" ***"a Medical Doctor…licensed to diagnose conditions"*** to provide the same information. *See* Exhibit P (emphasis added); Smith (Exhibit H), at 99:24-100:3. Smith further notified Strife—again, in contravention of the ADA—that AISD expected any such "medical doctor" to be ***"board-certified*****.** *Id.* (emphasis added).

---

[1] *See* Exhibit D; Exhibit U; Exhibit F

[2] *See infra*, at 35-36.

In response, Strife informed Smith that Miller *is* her VA treating doctor. Strife also provided Smith with a link to an online article entitled: "Role of the US Veterans Health Administration Clinical Pharmacy Specialist Provider: Shaping the Future of Comprehensive Medication Management." *See* Exhibit P. This article explains that, because of "substantial shortages of primary and specialty care providers…" at the VA, Doctors of Pharmacology—such as Dr. Miller—provide "direct patient care" to veterans. *Id.*; Exhibit O (VA Doctors of Pharmacology "with specialization and Board certifications are considered to be mid-level providers, much like nurse practitioners" and have their "own panel of patients.").

Unfortunately, Smith declined to read this article. *See* Smith (Exhibit H), at 102:5-14.

Nevertheless, in a continuing good-faith attempt to comply with the ADA "interactive process," Strife tendered to AISD a September 29, 2022 letter from Dr. Gurtej Mann—a VA psychiatrist. *See* Exhibit S; Strife (Exhibit A), at 28:16-2. In his letter, Dr. Mann affirmed that Strife suffers from PTSD, TBI, and osteopenia. Dr. Mann also stated that a service dog would be "invaluable" to Strife's "mental and physical health recovery." *Id.*

Yet, despite receiving by September 29, 2022, the ***"exact"*** information it had requested, AISD ***still*** refused to approve "Inde."

### H.    AISD Attempts To Violate Strife's HIPAA Rights

In its desperation to identify *any* "alternative" accommodation to a service dog, AISD attempted to violate Strife's HIPAA rights. Specifically, on October 14, 2022, Smith—***without*** Strife's knowledge and ***without*** Strife's written authorization—went to the Michael Debakey VA Center and attempted to elicit HIPAA-protected information from Strife's VA doctors about her medical conditions. *See* Villarreal (Exhibit I), at 46:24-48:5; Smith (Exhibit H), at 148-21-151:8.

6

In her November 30, 2023 deposition, Smith prevaricated about the reason she went to the VA on October 14, 2022. Smith testified she went to the VA *only* to request that Drs. Mann and Miller "verify" their respective September 22nd (Miller) and September 29th (Mann) letters. *Id.*, at 150:16-23. However, in his January 12, 2024 deposition, Dr. Javier Villarreal—who served as AISD's Chief Human Resources Officer from November 1, 2018 until July 1, 2023[3]— revealed that, with his approval, Smith went to the VA to ***elicit*** information from Drs. Miller and Mann about Strife's ***medical condition***, including her ***"physical limitations"*** and whether she needed a service dog to accommodate those limitations. *See* Villarreal (Exhibit I), at 46:24-47:22 (emphasis added).

The VA refused to allow Smith to speak with Drs. Mann and Miller because she had no medical release authorizing her to do so. Smith left but not without first taking photographs of the facility to "prove" she had been there. *See* Smith (Exhibit H), at 149:15-150:11.

## I.     Strife Pleads With AISD To Allow Her To Work With Her Service Dog

Throughout October 2022, Ms. Strife requested updates from Smith regarding the status of her service dog request. *See*, e.g., Exhibit U. On October 24, 2022, Strife pleaded with Smith to approve her request to work with "Inde":

> I need to know what HR needs. "We have been trying to obtain
> verification from your doctor's office." This meant to me that you
> needed to talk to them, but then you said we need "official
> paperwork completed." I just need to know what you need; I feel
> defeated [at] this point. I thought everything was good because I
> had not heard anything since late September. The last time we
> spoke was about the file needing a letter stating what the service do
> was needed for and signed by an MD. I want to do this the right

---

[3] *See* Villarreal (Exhibit I), at 21:13-22:2. On July 1, 2023, Dr. Villarreal became AISD's Chief of Schools. *Id.*, at 21:23-22:2.

> way, but I had no idea anything [sic] was still needing
> documentation."

*See* Exhibit U

AISD turned a deaf ear to Strife's pleas because it remained steadfastly opposed to her having a service dog at work. *See* Exhibit U. AISD's steadfast opposition to Strife working with her service dog is revealed in Smith's October 24, 2022 internal email to Broadspire:

> We also need to know if she can perform the essential duties of her job ***without a service dog*** and/or if the doctor can recommend ***alternate*** accommodations."

*See* Exhibit U (emphasis added)

### J.    AISD Continues To Stonewall Strife's Service Dog Request And Harass/Retaliate Against Her

In support of Strife's continuing efforts to comply with AISD's continuing demand that she provide additional evidence substantiating her need for a service dog, Dr. Mann—Strife's VA psychiatrist—completed and tendered to AISD on November 1, 2022, an ADA "Job Accommodation Questionnaire" ("JAQ"). In the JAQ, Dr. Mann stated Strife suffers from Major Depression, PTSD, anxiety disorder, and TBI, among other disabling conditions. *See* Exhibit W. Dr. Mann further stated that a "trained service animal"—capable of "grounding" Strife and applying "deep pressure therapy"—was the ***only*** "reasonable accommodation" of her disabling psychological conditions. *Id.*, at Question 4. Despite Dr. Mann's additional confirmation that Strife required a service dog, AISD still refused to approve her service dog request.

In her November 30, 2023 deposition, Smith revealed—for the first time—*another* reason AISD refused to lift its "veto" of Strife's service dog: Smith/AISD considered Strife's service dog to be an "emotional support animal," not a "service animal." *See* Smith (Exhibit H),

8

at 109:16-111:22. This, despite RPTSD's September 5, 2022 letter certifying that "Inde" is a "fully trained *service dog*."[4]

Therefore, AISD decided—again, in violation of the ADA[5] and without notifying Strife—that it would approve her service dog request *only* if Strife could establish that "Inde" reasonably accommodated her *physical* disabilities. *Id.*[6]

To this end, on November 11, 2022, AISD mandated that Strife undergo a *complete* physical examination by an AISD-retained doctor. AISD's emails and internal documents—which Strife obtained only in discovery—reveal that it mandated Strife submit to this egregious invasion of her privacy/physical autonomy because of its animus against service animals. AISD's illegal animus against service animals is reflected in its Director of Risk Management, Patricia Guidry's, November 9, 2022 email to the Texas Association of School Boards ("TASB"):

> "The district would like for [Strife] to be evaluated by the peer review doctor/ designated doctor and advise *if alternative accommodations, other than service animals*, can be implemented…"

*See* Exhibit X (emphasis added).

---

[4] *See* Exhibit D (emphasis added)

[5] *See infra*, at 39.

[6] In its MSJ, AISD has not advanced—and, therefore, has waived—any "emotional support animal" defense. *See* Dkt. 71. In any event, during the February 15, 2023 TRO hearing, AISD's outside counsel conceded that "Inde" constitutes a "reasonable accommodation" of Strife's disabilities. *See* Dkt. 17, at 11:19-21 (emphasis added) ("I don't doubt [a service dog would benefit Ms. Strife]. Ms. Dewalt doesn't doubt that. But are there *other reasonable accommodations* available short of having an animal on the job site…"). In so conceding, AISD implicitly conceded that "Inde" is an ADA/RA-protected "service animal," not an "emotional support animal."

In her internal November 11, 2022 notes, Smith recorded AISD's illegal animus against service animals and its illegal motivation for mandating Strife submit to an invasive medical examination by an AISD-retained doctor. *See* Exhibit Y. Specifically, Smith noted that AISD mandated Strife undergo a physical examination "to determine if a ***service animal*** is required to perform her essential job functions or if ***alternative accommodations*** can be recommended." *Id.* (emphasis added).

AISD's demand that Strife submit to a medical examination by an AISD-retained doctor violated AISD's *own* policy. Under AISD policy, AISD could require an employee to undergo such an examination only if "information received…indicates the employee has a physical or mental impairment that interferes with the employee's ability to perform ***essential*** job functions; or poses a direct threat to the health or safety of the employee or others…" *See* Exhibit Z (emphasis added).

By Smith's own admission on November 3, 2022—that is, eight days earlier—Strife ***could*** perform her ***essential*** Project Analyst job duties with or without reasonable accommodation. *See* Exhibit AA; Smith (Exhibit H), at 27:5-30:5.[7] Furthermore, AISD had no evidence that Strife's physical/psychological impairments posed ***any***—let alone, a "direct"— threat to anyone.[8]

---

[7] Furthermore, before retaining the doctor to perform this invasive physical examination of Strife, AISD made no effort to determine whether the doctor (Dr. Nguyen) had any expertise in diagnosing or treating PTSD or depression. *See* Smith (Exhibit H), at 148:10-20.

[8] This is further evidenced by the fact that AISD has never asserted—and, therefore, has waived—an "undue hardship" defense.

### K.      RPTSD And Strife Object To AISD's ADA/RA/TLC Violations

AISD's illegal demand that Strife submit to a medical examination by an AISD-retained physician and its continued stonewalling of her service dog request—which, by that time, exceeded two months—forced Strife to seek legal counsel. *See* Exhibit Y.[9]

Strife first sought legal counsel from RPTSD. On November 11, 2022, Jennifer O'Connell—RPTSD's counsel—transmitted a second letter to AISD regarding Strife/"Inde." In her letter, O'Connell advised AISD that its continuing refusal to approve Strife's service dog request and its November 11, 2022 demand that Strife submit to a medical examination by an AISD-retained physician violated the ADA. *See* Exhibit CC; AISD's Exhibit K, at Response 1, at 4-5.[10]

AISD was angered by RPTSD's attempt to protect Strife's ADA rights. In response to RPTSD's letter, Smith—acting upon the advice of AISD's in-house counsel, M. Kaye Dewalt ("Dewalt")[11]—demanded that Strife notify AISD whether she was "refusing to continue the interactive process to determine whether she [could] perform the essential functions of her job with or without reasonable accommodations."  *See* Exhibit DD; Exhibit EE. This, despite the fact: 1) AISD had ***already*** determined that Strife ***could*** perform her ***essential*** job functions[12]; and

---

[9] On November 10, 2022, Strife offered to have RPTSD provide AISD with service dog training. *See* Exhibit U. AISD rejected this offer—further evidencing its refusal to engage in good-faith in the ADA/RA "interactive process." *See* Smith (Exhibit H), 55:15-19; 127:11-128:9.

[10] *See also* Exhibit K, at 4-5 ("In response to the meeting with Ms. Smith, Ms. O'Connell sent an email [sic] on behalf of Ms. Strife explaining that Ms. Strife's medical condition meets the ADA's definition of "disability," and concluding Ms. Strife provided ample documentation to support her request for accommodation.").

[11] *See* Exhibit EE. In her internal 11/11/22 (3:35 p.m.) notes, Smith recorded that, after receiving O'Connell's November 11th letter, she (Smith) went to "see Kaye Dewalt who advise[d] her…"

[12] *See* Exhibit AA, at 607.

2) neither RPTSD nor Strife had ever indicated that Strife was refusing to continue the "interactive process." Smith further advised Strife that—despite RPTSD's letter—AISD was still requiring her to submit to a medical examination by an AISD-retained doctor. *Id.*

Because AISD refused to retract its demand that Strife submit to a medical examination by its retained physician and refused to respond to RPTSD's November 11, 2022 letter, Strife retained independent legal counsel. On November 18, 2022, Scott Newar ("Newar")—one of Strife's undersigned attorneys—transmitted a letter to AISD Superintendent Dr. LaTonya Gofney ("Gofney"). In his letter, Newar informed Gofney that AISD's demand that Strife undergo a medical examination by an AISD-retained physician and its continuing refusal to approve Strife's service dog request violated the ADA and Texas law. *See* Exhibit GG. Newar notified Gofney that, if AISD refused to retract the medical examination directive by November 28, 2022, Strife would commence legal action against AISD. *Id.*

### L.    AISD Continues To Stonewall Strife's Service Dog Request And Demand She Submit To An Invasive Medical Examination

In a November 18th email, Dewalt responded to Newar's letter to Gofney. Dewalt stated AISD refused to retract its demand that Strife submit to a medical examination by an AISD retained physician because—Dewalt stated—AISD wished to identify ***"other"/"additional"*** accommodations. *See* Exhibit HH (emphasis added). This was further evidence of AISD's continuing hostile, illegal animus against service animals.

Therefore, on November 19th, Newar responded to Dewalt. In his response, Newar requested that—consistent with the ADA's "interactive process"—AISD provide Strife within three business days information pertaining to its long-running refusal to approve her service dog

request, including identifying any "additional accommodations" that AISD was considering. *See* Exhibit II. AISD/Dewalt did not respond to Newar within three business days.

Instead, on December 5, 2022, Dewalt transmitted to Newar a letter stating AISD refused to retract its demand that Strife submit to a medical examination by an AISD-retained physician. *See* Exhibit JJ, at 3 ("[W]e cannot withdraw our request that Ms. Strife is [sic] examined by a medical provider as you have proposed."). Dewalt advanced several reasons for AISD's refusal to retract its medical examination demand: 1) Dr. Miller's September 22, 2022 letter was "unsigned"; 2) Dr. Miller's signature line contained the pre-nominal, "Dr.," before her name—a pre-nominal that, according to Dewalt (a non-physician), is "highly unusual" for a ***Doctor*** of Pharmacology; and 3) Dr. Mann's September 29, 2022 letter was not on VA "letterhead" and contained "only an electronic signature." *Id.*

These reasons were naked pretexts designed to mask AISD's true reason for continuing to refuse to approve Strife's service dog request and continuing to demand Strife undergo a medical examination by an AISD-retained doctor: AISD's illegal animus against service animals. This illegal animus is reflected in Dewalt/AISD's insistence that Strife/her doctors proffer ***"other"*** reasonable accommodations to AISD. *See id.*, at 2 (emphasis added) ("Ms. Strife's psychiatrist did not provide any information about ***other*** reasonable ***accommodations*** for her mobility issues…"); at 3 (emphasis added)  ("The questionnaire bearing Ms. Strife's psychiatrist's signature is missing critical information regarding ***other possible accommodations***.").

Therefore, on December 23, 2022, Newar transmitted to AISD a response to Dewalt's December 5, 2022 letter. Newar provided AISD with additional evidence supporting Strife's

need for "Inde" at work: 1) a December 21, 2022 letter from Dr. Lisa Miller, attesting that Miller

is, in fact, a **_doctor_**; had served as one of Strife's treating VA physicians since 2007; and had

written the September 22, 2022 letter attesting to Strife's need for a service dog; 2) a December

22, 2022 letter from Dr. Robert Garza—Director of the VA's Mental Health Clinic at the

Debakey Center—attesting that Strife suffers from PTSD, depression, and TBI and that both Drs.

Miller and Mann had treated her for those conditions; and 3) a December 19, 2022 VA

determination that Strife continues to "100%" disabled from PTSD and depressive disorder. *See*

Exhibit KK. Based on this information, Newar requested that, by January 5, 2023, AISD

withdraw its demand that Strife submit to a  medical examination by AISD's retained physician

and that AISD approve her service dog request. *Id.* Newar stated that, if AISD failed to do so,

Strife would commence legal action against it under the ADA, the RA, and Texas law. *Id.*

### M.    Strife Files An EEOC Charge Against AISD

Unfortunately, AISD **_still_** did not relent. To the contrary, on December 23, 2022—that is,

the same day it received Newar's letter demanding that it retract its medical examination

directive—AISD **_again_** ordered Strife to submit to a medical examination by an AISD-retained

physician on January 10, 2023. *See* Exhibit LL.

Consequently, on January 6, 2023, Strife filed a Charge of Discrimination against AISD

with the EEOC and the Texas Workforce Commission ("TWC"). Strife—through Newar—

notified AISD of this filing. *See* Exhibit MM.

### N.    VA Doctors Confirm "Inde" Effectively Accommodates Strife's Mobility
###        Impairments

On January 10, 2023, Strife (and "Inde") underwent a medical examination at the VA to

determine whether she suffers from mobility impairments and, if so, whether "Inde" effectively

14

assists her with those impairments. Dr. Sheryl Vandeven, a VA Physical Therapist, performed the examination.

Dr. Vandeven determined that Strife suffers from "chronically impaired standing, balance and gait with history of multiple falls and injuries…" Dr. Vandeven also determined that "Inde" effectively assists Strife with her mobility impairments. *See* Exhibit E.

Following Dr. Vandeven's examination, Dr. Darlene Makulski—a VA Assistant Professor of Physical Medicine and Rehabilitation who referred Strife/"Inde" to Dr. Vandeven for the January 10th physical examination—issued a letter attesting: 1) she (Makulski) had treated Strife at the VA's TBI-polytrauma clinic since December 2020; 2) Dr. Vandeven had examined Strife to determine whether a service dog would assist Strife with her mobility impairments; and 3) based on Dr. Vandeven's examination, she (Makulski) and Vandeven determined Strife should utilize a service dog "***in all settings (including place of employment) to avoid  further balance-related injuries.***" *See* Exhibit E (emphasis added).

On January 11, 2023, Newar transmitted to AISD Dr. Makulski's January 10, 2023 letter and a January 9, 2023 letter from Dr. Mann. *See* Exhibit OO. In his January 9th letter, Dr. Mann reaffirmed that he had treated Strife for PTSD and depression since August 2022 and had authored the September 29, 2022 letter and November 1, 2022 JAQ. *Id.*, at Exhibit OO.

### O.    AISD Still Refuses To Approve Strife's Service Dog

Unfortunately, despite receiving ***multiple*** VA doctors' (Mann; Makulski; Miller; Vandeven; and Garza) written determinations that Strife required a service dog for her physical and psychological disabilities, AISD ***still*** refused to approve Strife's service dog request.

In a January 13, 2023 letter, Dewalt notified Newar to this effect. *See* Exhibit PP. Unfortunately, Dewalt—once again—resorted to artifice/pretext. According to Dewalt, Dr. Makulski's January 10th letter did not suffice because Makulski did not tender ***Dr. Vandeven's*** examination notes. *Id.*

Despite AISD's continuing artifices/pretexts, Strife continued her good-faith efforts to comply with the ADA "interactive process." On January 13, 2023, Newar transmitted to Dewalt Dr. Vandeven's exam notes. *See* Exhibit E. Dr. Vandeven's exam notes *irrefutably* confirm Strife's mobility impairments and "Inde's" mitigation of those impairments. *Id.*

Yet, despite receiving Dr. Vandeven's exam notes on January 13th, AISD ***still*** did not relent. As AISD's Supplemental Interrogatory responses make clear, the reason it did not relent is because of its continuing, unwavering hostility to service animals. Specifically, AISD averred:

> On or about January 10, 2022, Ms. Strife provided AISD with a report from Dr. Sheryl Vandeven, physical therapist, which provided information regarding the specific job functions that were impacted by the Plaintiff's disabilities. However, this document did not provide any information regarding ***potential alternative accommodations***.

*See* Exhibit K, at 5 (emphasis added); *id.* (emphasis added) ("The note from Dr. Mann and the letter from Dr. Makulski, did not provide any new information particularly regarding the ***range of effective accommodation options that may be available***.").[13]

---

[13] AISD's artifices/pretexts and steadfast opposition to Strife's service dog are further evidenced by the fact that, in January 2023, it did not provide the EAC—or even convene the EAC to consider—Dr. Makulski's January 10th letter and Dr. Vandeven's January 10th examination notes. *See* Smith (Exhibit H), at 107:17-19; 173:3-21; 182:8-16. This, despite the fact the EAC has "standing" Friday meetings. *See* Dkt. 71, at 2.

### P.     Strife Files Suit Against AISD

Therefore, on January 18, 2023, Strife filed suit against AISD in Harris County District Court for violating her rights under Texas' employment discrimination law (Tex. Labor Code section 21.001 *et seq.* and Tex. Hum. Resources Code section 121.001 *et seq.*).[14] *See* Exhibit RR. On January 26, 2023, Strife filed an application for temporary restraining order. *See* Exhibit SS.

On January 27, 2023, the Harris County Ancillary District Court held a hearing on Strife's TRO application. *Id.* The Ancillary District Court recessed the hearing without a ruling.

On January 30, 2023, Strife non-suited her state court action. *Id.* On February 2, 2023, the Harris County District Court entered a non-suit without prejudice.

On February 1, 2023, Strife filed the instant lawsuit. *See* Dkt. 1. On February 6, 2023, Strife filed a Motion for Temporary Restraining Order. *See* Dkt. 7.

On February 15, 2023, this Court held a hearing on Strife's Motion for Temporary Restraining Order. This Court denied Strife's Motion for Temporary Restraining Order but granted Strife's Motion for Expedited Discovery and scheduled a March 9, 2023 hearing on Strife's Motion for Preliminary Injunction. *See* Dkt. 14; Dkt. 17.

### Q.     AISD Approves Strife's Service Dog Request Under Threat Of A Preliminary Injunction

On February 24, 2023—that is, approximately six months after Strife first requested AISD allow her to work with a service dog—AISD retracted its demand that Strife submit to a medical examination by an AISD-retained doctor and finally approved Strife's service dog request. AISD would have this Court believe it retracted its medical examination directive and

---

[14] Tex. Hum. Res. Code section 121.001 *et seq.* prohibits discrimination against "persons with disabilities," "service animals," and "assistance animals" in public facilities. *See* Tex. Hum. Res. Code section 121.003(c), (i).

approved Strife's service dog request then because—it *claims*—that, after the February 15, 2023 TRO hearing, Strife provided it for *"the first time"* with "*new information* regarding the range of effective accommodation options that may be available and the ineffectiveness of alternative accommodation options such as a cane, walker, or wheelchair." *See* Exhibit TT, at 5-6 (emphasis added); Dkt. 71, at 7  ("This was the first time AISD received an answer concerning potential alternative accommodations for Plaintiff.").

AISD's assertion is disingenuous, at best. Neither Strife nor her doctors provided any new information to AISD after the February 15th TRO hearing. In a February 21, 2023 letter to AISD's outside counsel, Newar simply *reiterated* that AISD's representation to this Court during the TRO hearing that Strife had "failed to provide it with sufficient information to enable it to evaluate her ADA/Rehabilitation Act and corollary state law accommodation request for a service dog…" was "*false*." *See* Exhibit R (emphasis added). In his letter, Newar also recounted in exhaustive detail the evidence in his, Strife's, Strife's doctors', and RPTSD's *prior* communications with AISD that demonstrated her legal entitlement to work with a service dog. *Id.*

## III. Legal Argument

### A.    Standard of Review

The summary judgment standard of review—which is prescribed by Fed. R. Civ. P. 56—is well-settled and favors Strife. AISD is entitled to summary judgment only if it "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).

The summary judgment record must be viewed in the light most favorable to Strife—as the non-movant—with all reasonable inferences drawn in her favor. Additionally, this Court must give credence to the evidence favoring Strife and only credit the "uncontradicted and unimpeached" testimony of AISD and only "to the extent that that evidence comes from disinterested witnesses." *See Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. 2097, 2110 (2000).   This Court may not make credibility determinations, weigh the evidence, or draw legitimate inferences from the facts, as that is the province of a jury. *Id.*, at 2110 (2000).[15]

The Fifth Circuit has made clear:

> [I]t is well-settled that at the summary judgment stage of the litigation the function of the trial bench…is not to step into the stead of the jury and weigh the evidence in the search for truth but is instead to determine whether there exists a genuine issue for trial.

*Fabela v. Socorro Independent School District*, 329 F.3d 409, 414 (5th Cir. 2003).[16]

**B.** **Strife Has Raised A Genuine Issue Of Material Fact That AISD Failed To Reasonably Accommodate Her Disabilities**

Strife has raised a genuine issue of material fact that AISD violated her right under the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.*  to a "reasonable accommodation" of her disabilities. The ADA provides:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge

---

[15]*Russell v. McKinney*, 235 F.3d 219, 223 n. 4 (5th Cir. 2000) ("We therefore underscore that *Reeves* is the authoritative statement regarding the standard for summary judgment as a matter of law in discrimination cases.").

[16]*See also Vaughn v. Woodforest Bank,* 665 F.3d 632, 639 (5th Cir. 2011) (cleaned up) (Reversing summary judgment for the employer because the District Court "impermissibly substituted its judgment concerning the weight of the evidence for the jury's" and failed to view the employee's "rebuttal evidence…as a whole and in the light most favorable to [plaintiff]…").

of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

*See* 42 U.S.C. section 12112(a)

The ADA further provides:

(b) As used in subsection (a), the term "discriminate against a qualified individual on the basis of disability" includes—

(5)

(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity

*See* 42 U.S.C. section 12112(b)(5)(A)

To prevail on her "failure-to-accommodate" claim under the ADA and the Rehabilitation Act,[17] Strife must prove: (1) she is a "qualified individual with a disability;" (2) her disability and its consequential limitations were known by AISD; and (3) AISD failed to make "reasonable accommodations" for such known limitations. *See Feist v. State of Louisiana*, 730 F.3d 450, 452 (5th Cir. 2013).

In its MSJ, AISD does not dispute that Strife is a "qualified individual with a disability" or that it knew of her disabilities and their consequential limitations. *See* Dkt. 71, at 7-8 (AISD "assum[es], *arguendo*, that [Strife] meets the first two elements of [her] failure-to-accommodate claim.") Therefore, AISD has effectively—if not, actually—conceded the first two prongs of her

---

[17] Strife's RA discrimination and retaliation claims are governed by the same analysis as her ADA discrimination and retaliation claims. *See Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010); Dkt. 65, at 4 n. 1. Therefore, for judicial economy purposes, Strife will not duplicate that analysis and simply incorporates it by reference.

"failure-to-accommodate" claims.[18] In its MSJ, AISD also does not dispute and, therefore, effectively—if not, actually—concedes that a service dog was a "reasonable accommodation" of Strife's disabilities.[19]

AISD argues only that, since it *ultimately*—that is, after six months of stonewalling and harassing Strife—approved her request for a service dog on February 24, 2023, the district did not fail to make a "reasonable accommodation" of her disabilities. *Id.*, at 8 ("[Strife's] failure-to-accommodate claim fails because it is undisputed fact that AISD granted the exact accommodation [Strife] requested.").

Fifth Circuit and other circuit precedent refutes AISD's argument. The Fifth Circuit has made clear that an employer's "undue delay" in reasonably accommodating an employee's disability violates the ADA and the RA, where the delay "renders an accommodation (if any) unreasonable"; forces the employee to work under "suboptimal conditions"; and/or there is a "pressing need to rapidly address the accommodation issue…" *See Loulseged v. Akzo Nobel Inc.*, 178 F. 3d 731, 737 n. 6 (5th Cir. 1999) ("An employer that dragged its feet in [the interactive process] could force the employee to work under suboptimal conditions…An employer's delaying of the process under those conditions might create liability. There may be other situations in which there is a pressing need to rapidly address the accommodation issue

---

[18] During the February 15, 2023 TRO hearing, AISD actually conceded both prongs. *See* Dkt. 17, at 11:6-8 (emphasis added) ("*She is a qualified individual with a disability. On the record, she is a qualified individual with a disability.*"); *Id.*, at 9:25-10:2 (Strife's doctor tendered a completed ADA "job accommodation questionnaire" on November 1, 2022.)

[19] During the February 15, 2023 TRO hearing, AISD also conceded that a service dog constitutes a "reasonable accommodation" of her disabilit(ies) *See* Transcript, at 11:19-21 (emphasis added) ("*I don't doubt [a service dog would benefit Ms. Strife].* Ms. DeWalt doesn't doubt that. But are there *other reasonable accommodations* available short of having an animal on the job site…"); at 12:11 (emphasis added) ("*We don't have an objection to*

comprehensively."). Other circuits have held likewise. *See Perkins v. City of New York*, 2023 WL 370906, at *9 (2nd Cir. 2023) (employer's delay in responding to employee's request for reasonable accommodation violated the ADA); *Battle v. United Parcel Serv., Inc.*, 438 F.3d 856, 862–863 (8th Cir. 2006) (affirming jury verdict that employer failed to engage in the interactive process in good-faith where it took at least two months to grant employee's request for reasonable accommodation); *Calero-Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 24 (1st Cir. 2004) ("[A] factfinder might well conclude that, in the face of plaintiff's increasingly desperate requests for an accommodation, the defendants simply stonewalled — going so far as to deny, in the face of substantial medical evidence, that plaintiff suffered a disability at all.").

Furthermore, the Fifth Circuit has expressly held that a "denial [of a reasonable accommodation] can be both actual or constructive" and that an *"indeterminate delay has the same effect as an outright denial." See Groome Resources Ltd. v. Parish of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000) (emphasis added). In *Groome*, the Fifth Circuit affirmed the trial court's determination that the defendant violated the Fair Housing Act's reasonable accommodation requirement by delaying/constructively denying the plaintiff's disability accommodation for *127 days*.[20]

---

*[a service dog]*…"); at 14:1-2 ("I don't know that it's appropriate to say that there is an objection to the service animal.").

[20] AISD cites *Molden v. E. Baton  Rouge Par. Sch. Bd.*, 715 F. App'x 310, 316 (5th Cir. 2017) for the proposition that an employer's delay in granting a reasonable accommodation is not actionable where the employer ultimately grants the accommodation. *See* Dkt. 71, at 9. However, *Molden*—an unpublished and, therefore, non-binding Fifth Circuit decision (*id.*, at 310)—is distinguishable on, at least, two grounds: 1) unlike AISD, the East Baton Rouge Parish School Board ("EBRPSB") granted Molden multiple accommodations (medical leaves and re-assignment to a position that accommodated his putative disabilities) and did so *before* Molden commenced legal action against it; and 2) unlike Strife, Molden did not allege and adduced no evidence that EBRPSB's failure to accommodate his putative disabilities seriously endangered his physical health and safety; that there was a pressing need to accommodate him; or that the failure to accommodate him forced him to work under suboptimal conditions.

As Strife's VA doctors repeatedly attested, there was a pressing need for AISD to approve Strife's service dog accommodation request at least ***five months*** before it finally did so: her long, documented history of falls/injuries, mobility impairments, and unremediated PTSD, depression disorder, and anxiety disorder. Additionally, AISD's protracted delay—which constitutes a constructive denial of her accommodation request (*see Groome*, *supra*)—seriously endangered Strife's physical and psychological health and safety and forced her to work under suboptimal conditions. As Dr. Vandeven's January 10, 2023 examination attests, AISD's delay exposed Strife—***every working day***—to a substantial risk of falling and the consequential risk of serious bodily injury (e.g. concussion; fractures; etc.).[21]

AISD's assertion that Strife is responsible for this undue delay because—according to AISD—she "repeatedly provid[ed] AISD with documentation that didn't allow the [EAC] to adequately evaluate [her] need for requested accommodation, including whether alternative accommodations were available" is demonstrably untrue. The undisputed evidence establishes that, for almost six months, AISD subjected Strife to a cruel, Kafkaesque "game" in which it repeatedly demanded that she and her VA doctors produce more and more information establishing her ***already*** demonstrated need for a service dog. Each time Strife and her doctors complied with AISD's unlawful demands, AISD "moved the goalposts" and did so using

---

[21]As Dr. Vandeven's January 10, 2023 physical examination of Strife attests (*see* Exhibit E), AISD's assertion that "the alleged delay in the interactive in the interactive process did not impact Plaintiff's physical and psychological health or force her to work in suboptimal conditions" is repugnant. *See* Dkt. 71, at 9. AISD's assertion that Strife "testified during her deposition that she never tripped, fell, or suffered an injury on AISD property while the interactive process was ongoing" is also misleading. *Id.* In her deposition, Strife testified she *has* fallen at work. *See* Strife (Exhibit A), at 34:7-35:8. Strife also testified—and Dr. Vandeven's examination notes confirm—that, because of her chronic mobility impairments, she is ***always*** at risk of falling. *Id.*, at 35:13-36:5. This risk was heightened by the fact that, during the 2022-2023 school year, Strife had to climb an outside stair bank to enter her office. *See* Exhibit B, at para. 4, at Exhibit 1.

pretexts and artifices that violate the ADA: for example, rejecting Dr. Miller's September 22, 2022 opinion because Miller is a Doctor of Pharmacology—not a "board-certified" "medical doctor"—and used the pre-nominal, "Dr.," before her name; rejecting the opinion of Dr. Mann, a VA psychiatrist (i.e. an **M.D.**), because his opinion was not on VA "letterhead" and was "electronically" signed; and rejecting the opinion of Dr. Makulski—a ***Board-Certified*** VA physical rehabilitation ***medical doctor***—because Dr. Makulski cited but did not tender *another* doctor's (Dr. Vandeven) examination notes.

The undisputed evidence—including AISD's in-house counsel's communications, its internal documents, its Interrogatory responses, and its judicial admissions during the TRO hearing and in its MSJ—establishes the reason AISD subjected Strife to this Kafkaesque "game" is because of its discriminatory hostility to and animus against service animals.

In this vein, without any legal justification, AISD repeatedly demanded that ***Strife*** and her doctors propose "other"/"alternative"/"additional" reasonable accommodations. *See supra*. Yet, neither the ADA nor the RA requires an ***employee or the employee's doctors*** to propose "other," "alternative," and/or "additional" reasonable accommodations. An employee and/or her doctor(s) need only propose "***a***" reasonable accommodation. *See Riel v. Electronic Data Systems Corp.*, 99 F.3d678, 684 (5th Cir. 1996) (cleaned up) (emphasis added) ("[W]e still must address whether Riel has proposed ***a*** reasonable accommodation to his disability***…[A]*** reasonable accommodation is a method of accommodation that is reasonable in the run of cases, whereas the undue hardship *inquiry* focuses on the hardships imposed by the ***plaintiff's preferred*** accommodation in the context of the particular [employer's] operations."). Once the employee does so, the employer must provide the employee with that "preferred" accommodation, unless

the employer can demonstrate that the "preferred" accommodation poses an "undue hardship." *Id.*

Strife and her doctors proposed *a* reasonable accommodation to AISD: Strife's RPTSD-trained, certified service dog ("Inde"). AISD has never asserted—much less proved—"Inde" posed an "undue hardship."[22] Therefore, AISD was legally *obligated* to approve Strife's service dog, even *if* it had determined that other reasonable accommodations existed. *Id.* Yet, it is undisputed that AISD never proposed or offered Strife any "alternative," "additional," or "other" accommodation. *See* Smith (Exhibit H), at 187:2-6.

For these reasons, AISD is not entitled to summary judgment on Strife's failure-to-accommodate claims.

### C.    Strife Has Raised A Genuine Issue of Material Fact That AISD Discriminated Against Her Based On Her Disabilities

Strife has also raised a genuine issue of material fact that AISD discriminated against her based on her disabilities in violation of the ADA, the RA, and Tex. Labor Code section 21.001 *et seq*. A plaintiff establishes a *prima facie* case of disability discrimination by showing she (1) has a disability; was regarded as disabled; or has a record of a disability; (2) was qualified for the job; and (3) was subjected to an adverse employment decision on account of her disability. If the employee makes that showing, a presumption of discrimination arises, and the employer must articulate a legitimate non-discriminatory reason for the adverse employment action. The burden then shifts to the plaintiff to produce evidence from which a jury could conclude that the

---

[22] AISD has long allowed highly aggressive police dogs to enter and work in its schools, where those dogs encounter children. *See* Villarreal (Exhibit I), at 90:25-93:23. Strife works in an office in Aldine's administration building. *See* Strife (Exhibit A), at 39:7-10; 43:12-44:5. This fact alone not only negates AISD's (unasserted) "undue hardship" defense but underscores AISD's discriminatory animus against service animals such as "Inde."

employer's articulated reason is pretextual. *See Spears v. La. Coll.*, No. 20-30522, at \*9 (5th Cir. Apr. 6, 2023).

Again, AISD does not dispute—and, therefore, effectively concedes—the first two elements: 1) Strife has a disability; and 2) Strife was qualified for her job. *See* MSJ, at 13 ("Assuming for the sake of argument that [Strife] can establish the first element of her *prima facie* cases of discrimination and retaliation…"). However, AISD contends Strife has failed to raise a genuine issue of fact that AISD subjected her to an "adverse" employment decision. *Id.*, at 13-14.

In partially denying AISD's Motion To Dismiss, this Court held that—under *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 506 (5th Cir. 2023) (*en banc*)—Strife is *not* required to raise a genuine issue of material fact that she suffered an "ultimate"—that is, an "economically adverse"— action. *See* Dkt. 65, at 5. Rather, Strife need only raise a genuine issue of material fact that AISD subjected her to more than "*de minimis*" harm with respect to the "terms, conditions, and privileges" of her employment. *See Hamilton*, 79 F.4th at 506; *Harrison v. Brookhaven Sch. Dist.*, No. 21-60771 (5th Circ. September 21, 2023).

Strife easily clears this bar. The record establishes that—in delaying/stonewalling her service dog request for approximately six months (178 days)—AISD subjected Strife, on a ***daily*** basis, to a substantial risk of falling and the attendant substantial risk of serious bodily injury (e.g. concussion; fractured extremities; etc.); and to uncontrolled PTSD, severe anxiety, and major depression and the attendant harm to her physical and psychological health and well-

being.[23] By any measurement, such harm is more than *de minimis*. *See Hamilton*, 794 F.4[th] at

500, citing approvingly *Peterson v. Linear Controls, Inc.*, 757 F.App'x 370, 373 (5th Cir. 2019)

(per curiam), *cert. dismissed* 140 S.Ct. 2841 (2020) (Forcing black employees to work outside

without water while allowing white employees to work inside with air conditioning constitutes

an adverse term, condition, or privilege of employment).[24]

### D.   Strife Has Raised A Genuine Issue of Material Fact That AISD Retaliated Against Her For Her ADA/RA/TLC Protected Activity

Strife has also raised a genuine issue of material fact that AISD retaliated against her for

engaging in protected ADA, the RA, and TLC activity and interfering with her rights under those

statutes. An employee establishes a *prima facie* case of ADA/RA retaliation and interference by

showing (1) engagement in an activity protected by the ADA/RA, (2) an adverse employment

action, and (3) a causal connection between the protected act and the adverse action. If the

employee establishes a *prima facie* case, the employer must come forward with a legitimate,

non-discriminatory reason for the adverse employment action. If such a reason is provided, the

---

[23] AISD asserts Strife's health and safety were not seriously endangered during this six month period because—it claims—she "had access to a walker if she needed it for stability…" *See* Motion, at 15. For two reasons this assertion is risible: 1) neither a walker, wheelchair, cane, or other mechanical device would have accommodated Strife's *psychological* impairments (i.e. PTSD; Major Depression; and anxiety disorder); and 2) as Newar's February 21, 2023 letter states, it is "self-evident that a walker, cane, and/or wheelchair would not be an effective accommodation of Strife's physical impairments, as they would be of no benefit if/when she falls, becomes grounded, and possibly fractures her extremities (or worse)." *See* Exhibit R, at 8. Since AISD would have this Court believe that Newar's above-quoted assertion constituted the "new information" that caused it to approve Strife's service dog request on February 24, 2023, AISD cannot—in good-faith—maintain the "walker" canard here.

[24] AISD also discriminated against Strife by repeatedly attempting to force her to submit to a medical examination by an AISD-retained doctor for over three months (November 11, 2022-February 24, 2023). The ADA provides that an employer engages in prohibited ***"discrimination"*** by subjecting an employee to a post-employment medical examination or inquiry where such an exam/inquiry is not "job-related" and "consistent with business necessity." *See* 42 U.S.C. 12112(d)(4)(A) (emphasis added). By AISD's own admission on November 3, 2022, Strife could perform the "essential" functions of her job with or without reasonable accommodation. *See* Exhibit AA, at 607. Therefore, by definition, the AISD-required medical examination was neither job-related nor consistent with business necessity.

employee must submit sufficient evidence that the proffered reason is a pretext for retaliation. The employee must show that "but for" the protected activity, the adverse employment action would not have occurred. *See Tabatchnik v. Continental Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008).[25]

Again, AISD effectively concedes the first prong. *See* Motion, at 13 ("[a]ssuming for the sake of argument that [Strife] can establish the first element of her *prima facie* case[] of…retaliation"). AISD argues only that Strife has not raised a genuine issue of material fact that AISD subjected her to a "materially adverse" action. *Id.*, at 13-17.

In *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), the Supreme Court held any employer action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination" constitutes actionable retaliation. *See White*, 548 U.S. at 68. AISD's delay and actual/constructive denial of Strife's request for a reasonable accommodation of her disabilities for approximately *six months* could well dissuade a reasonable worker from making or supporting a charge of discrimination because he/she could/would not risk suffering serious physical/psychological endangerment by making or supporting such a charge. *Cf. White*, 548 U.S. at 71-73 (37 day suspension of employee without pay constitutes actionable retaliation despite employer's subsequent rescission and payment). Additionally, as both this Court and the EEOC have made clear, AISD's attempt to force Ms. Strife to submit to an invasive medical examination by an AISD-retained doctor—after she and her VA doctors provided AISD with sufficient evidence of her physical and psychological

---

[25] Strife's ADA "interference" claim (*see* 42 U.S.C. section 12203(b)) is distinct from her ADA retaliation claim. However, it is predicated on the same underlying facts as her ADA retaliation claim. Therefore, Strife incorporates her ADA retaliation analysis by reference.

impairments—could well dissuade a reasonable worker from making or supporting a charge of discrimination. *See* Dkt. 65, at 6-8; EEOC "Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under The ADA," at n. 33 ("If an individual provides sufficient documentation to show the existence of an ADA disability and the need for reasonable accommodation, ***continued efforts by the employer to require that the individual see the employer's health professional could be considered retaliation***."); *see also Tuli v. Brigham & Women's Hosp.*, 656 F.3d 33, 42 (1st Cir. 2011) (reasonable jury could conclude that consequences of obligatory counseling required by employer—invasion of privacy, potential stigma, and impact on employment and licensing elsewhere— might dissuade reasonable worker from filing charge).[26]

**E.    Strife Has Raised A Genuine Issue Of Material Fact That AISD's "Legitimate, Non-Discriminatory" Reason(s) For Delaying/Constructively Denying Her Service Dog Request Are Pretexts**

Strife has raised a genuine issue of material fact that AISD's putative "legitimate, non-discriminatory" reason for unduly delaying and/or denying her service dog request is a pretext for discriminating against her based on her disabilities and retaliating against her for efforts to protect her rights under the ADA, the RA, and Tex. Labor Code section 21.001 *et seq.*

AISD asserts that the delay in its approving Strife's service dog request was due "primarily to [Strife's] delay in getting AISD the requisite documents they [sic] needed to make

---

[26] In its Motion To Dismiss (Dkt. 44), AISD contended its repeated efforts to compel Ms. Strife to undergo a medical examination are not an "adverse" employment action because it ultimately "withdrew" that demand. *See* Dkt. 44., at 7. This Court previously rejected AISD's argument. *See* Dkt. 65, at 7-8. Nevertheless, in its MSJ, AISD attempts to resurrect that argument. *See* Dkt. 71, at 17 ("the District withdrew the [medical examination] request before granting her accommodation in any event."); at 15 ("Regarding the abandoned medical examination directive…"). This Court should again reject AISD's argument—not least because AISD withdrew its medical examination directive only *after* Strife commenced this lawsuit and did so then only because it feared this Court would enjoin that examination at the March 9, 2023 preliminary injunction hearing.

a final decision on her service animal." *See* Motion, at 17. In this same vein, AISD asserts that it "did not receive the requisite information it needed to evaluate Plaintiff's physical limitations and how Plaintiff's service dog would be utilized to assist with her physical limitations until January 2023…" AISD's assertions are demonstrably false and pretextual.

The uncontroverted evidence establishes that, on **September 26, 2022**, Strife tendered to AISD Dr. Miller's September 22, 2022 letter attesting to her need for a service dog to accommodate her PTSD and other psychological conditions. On **September 27, 2022**, Mindy Smith confirmed that Miller's letter was "***exactly*** what [AISD] needs…" *See* Exhibit M (emphasis added); Smith (Exhibit H), at 95:24-96:19; Strife (Exhibit A), at 27:25-28:14, at Exhibit 4. However, Smith stated that AISD "need[ed]" ***" a Medical Doctor…licensed to diagnose conditions"***—and, preferably, one "board-certified"—to provide the letter. *See* Exhibit P (emphasis added).[27]

Smith's demand that Strife tender a letter from a Board-Certified "Medical Doctor…licensed to diagnose conditions" violated the ADA. The EEOC's "Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA" provides, in relevant part:

> An employer may require that the documentation about the disability and the functional limitations come from an appropriate health care or rehabilitation professional. The appropriate professional in any particular situation will depend on the disability and the type of functional limitation it imposes. Appropriate professionals include, ***but are not limited to***, doctors (including psychiatrists), psychologists, nurses, physical therapists, occupational therapists, speech therapists, vocational rehabilitation specialists, and licensed mental health professionals.

---

[27] During her November 30, 2023 deposition, Smith reiterated her baseless belief that the ADA required Strife to provide AISD with a letter from a Board-Certified medical doctor. *See* Smith (Exhibit H), at 100:15-102:22

*See* *https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada*, at question 6

Additionally, the EEOC's "Enforcement Guidance on the ADA and Psychiatric Disabilities" provides, in relevant part:

> The employer may require the applicant to provide documentation from an appropriate professional concerning his/her disability and functional limitations. ***A variety of health professionals may provide such documentation regarding psychiatric disabilities including primary health care professionals***, psychiatrists, psychologists, psychiatric nurses, and licensed mental health professionals such as licensed clinical social workers and licensed professional counselors.

*See* *https://www.eeoc.gov/laws/guidance/enforcement-guidance-ada-and-psychiatric-disabilities*, at question 14

As detailed above, Dr. Miller is a Doctor of Pharmacology with a specialization in psychiatric pharmacology. *See* Exhibit M. Under the VA's protocols, Dr. Miller is authorized to diagnose and treat and has long diagnosed and treated veterans—such as Strife—with psychological conditions, such as PTSD, Major Depression, and anxiety disorder. In fact, Dr. Miller had treated Strife for PTSD, Major Depression, and anxiety disorder since 2007. *Id.* Therefore, AISD's refusal to credit Dr. Miller's September 22nd letter and to demand that Strife tender such a letter from a Board-Certified medical doctor violated the ADA/RA.

In any event, Strife complied with Smith's illegal demand by tendering to AISD on September 29th a contemporaneous letter from Dr. Gurtej Mann—her VA treating psychiatrist (i.e. a ***medical doctor***). *See* Exhibit S; Exhibit P; Strife, at 28:16-2. In that letter, Dr. Mann stated that Strife suffers from PTSD, TBI, and osteopenia. Dr. Mann also opined that a service dog would be "invaluable" to her "mental and physical health…" *Id.* Therefore, by AISD's own

admission, by **September 29, 2022**—at the latest—AISD had "exactly" what it needed to approve Strife's service dog request. Still, it refused to do so for another five months.

AISD also asserts that it "did not receive information concerning viable alternative accommodations until February 17, 2023." Again, this assertion is false and—as previously noted—misapprehends Strife and its respective obligations with respect to the ADA/RA/TLC's "interactive process." Under the ADA/RA/TLC, Strife and her doctors were only obligated to propose to AISD "***a***" reasonable accommodation. *See  Riel v. Electronic Data Systems Corp.*, 99 F.3d678, 684 (5th Cir. 1996) (cleaned up) (emphasis added). They did: a service dog.

Once Strife and her doctors proffered "a" reasonable accommodation (i.e. service dog), AISD was obligated to provide her with that "preferred" accommodation, unless it could demonstrate that this  "preferred" accommodation posed an "undue hardship." *Id.* Again, AISD has ***never*** asserted that Strife's service dog posed any—let alone, an "undue"—hardship. Therefore, by delaying approximately five months (September 26, 2022 through February 24, 2023) in approving Strife's service dog request, AISD violated the ADA, RA, and the TLC.

Yet, there is substantial *additional* pretext evidence:

1. **AISD's failed propose any "alternative"/"additional" accommodations**

AISD's admitted failure to propose any "alternative"/"additional" reasonable accommodation—in response to Strife's service dog proposal—violates the ADA's "interactive process" and constitutes pretext. *See*, e.g., *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001) ("[A]n employer fails to engage in the interactive process as a matter of law where it rejects the employee's proposed accommodations by letter and offers no practical alternatives.").

## 2. **AISD's false/inconsistent deposition testimony**

AISD's false/inconsistent deposition testimony also constitutes pretext.

In her November 30, 2023 deposition, Smith testified she went to the VA on October 14, 2022, only to "verify" Dr. Miller and Dr. Mann's signatures on their respective September 22, 2022 (Miller) and September 29, 2022 (Mann) letters. However, Dr. Villarreal testified that—with his approval—Smith went to the VA to elicit confidential information about Strife's medical diagnoses and need for a service dog, despite lacking any written authorization from Strife—a clear HIPAA violation. *See*, e.g., *Jackson v. Host Intern, Inc.*, 426 Fed. Appx. 215, 220 (5th Cir. 2011) ("Host's internal communications surrounding Jackson's firing were riddled with inconsistencies, and testimony at trial was also inconsistent")

## 3. **AISD's repeated, illegal demands that Strife provide additional evidence to support her service dog request and submit to a medical examination by an AISD-retained physician**

AISD's repeated, illegal demands that Strife provide additional evidence to support her service dog request (e.g. a letter from a "Board-certified" "medical doctor") and submit to an invasive medical examination by an AISD-retained physician—the latter, in clear violation of its own internal policy and the ADA, RA, and TLC—also constitute pretext. *See* EEOC "Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under The ADA," at n. 33 (emphasis added) ("If an individual provides sufficient documentation to show the existence of an ADA disability and the need for reasonable accommodation, ***continued efforts by the employer to require that the individual see the employer's health professional could be considered retaliation***."); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354 n. 29 (5th Cir. 2005) (Employer's failure to follow an internal policy can raise an inference of pretext).

In this vein, it is important to underscore that, in her November 30, 2023 deposition, Smith revealed—for the first time—that AISD considered "Inde" to be an "emotional support animal"—not a trained service dog—and, therefore, not only refused to credit "Inde" as a reasonable accommodation of Strife's *psychological* disabilities but required her to undergo a *physical* examination by AISD's retained doctor. *See* Smith (Exhibit H), at 109:16-111:22. This, despite the fact that: 1) on September 5, 2022, RPTSD certified that "Inde" is a "fully trained ***service dog***" (i.e. not an "emotional support animal")[28]; and 2) the ADA expressly defines "service animals" to include "any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a…psychiatric…disability.[29] PTSD and major depressive disorder are psychiatric disabilities. *See* 29 C.F.R. 1630.2(j)(3)(iii) (MDD and PTSD "substantially limit brain function"); *Williams v. Tarrant Cnty. Coll. Dist.*, 717 Fed.Appx. 440, 447-448 (5th Cir. 2018) (ADA regulations recognize PTSD and major depressive disorder as substantial limitations on brain function). In short, AISD's refusal to approve Strife's request to work with "Inde" as a reasonable accommodation of her ***psychological*** disabilities by September 29, 2022—at the latest—also violated her rights under the ADA, RA, and TLC. *Id.*

### 4.    AISD's Discriminatory Animus Against Service Animals

AISD's pretext is further evidenced by its long-running, unwavering hostility to allowing Strife to work with a service animal. The evidence—including AISD's in-house counsel's letters, its internal documents/emails, its Interrogatory responses, and its  judicial admissions during the TRO hearing—makes pellucidly clear AISD refused to grant Strife's service dog request because the

---

[28] *See* Exhibit D (emphasis added)

[29] *See* 28 C.F.R. 36.104

district had an illegal animus against service animals.[30] AISD used the terms, "alternative," "additional," and "other" accommodations, to mask this illegal animus. Yet, AISD's long-running stonewalling of Strife's service dog request—including its unjustified delay/denial of that request; its pretextual demands for additional supporting documentation from Strife and her doctors; its attempt to violate her HIPAA rights; and its repeated illegal demand that Strife undergo an invasive medical examination by an AISD-retained physician—reveal that the terms, "alternative," "additional," and "other" accommodations were merely AISD euphemisms for ***any accommodation other than a service animal***. This is the essence of ADA/RA/TLC disability discrimination. *See Davis v. City of Phila.*, CIVIL ACTION NO. 18-0668, at *4 (E.D. Pa. Jan. 11, 2019) (Police officers' alleged refusal to allow plaintiff to access a place of public accommodation with her ADA-compliant service dog constitutes actionable disability discrimination under Title II of the ADA); *Sullivan v. Vallejo City Unified School Dist.*, 731 F.Supp. 947, 958 (E.D. Cal. 1990) (Defendants' decision to exclude disabled person's service dog violates RA's prohibition against disability discrimination).

### 5. AISD's lie about and cover-up of its discriminatory animus against service animals

Finally, AISD's pretext is evidenced by its brazen attempt to lie about and cover-up its discriminatory animus against service animals and its stonewalling of Strife's service dog request. In its February 24, 2023 letter to Strife, Interrogatory responses, and its MSJ, AISD asserted the ***EAC*** approved Strife's service dog request on February 24, 2023, and that the EAC

---

[30] AISD's illegal animus against service dogs is further evidenced by the fact that, before it denied Strife's service dog request, it denied at least one other AISD employee's request for a service dog. *See* Exhibit UU (filed under seal); Exhibit K, at Response 4. In that case, AISD contended the service dog was an "emotional support animal," not a "service animal." *Id.* The AISD employee in question—who was acting *pro se*—also filed an EEOC Charge

did so at that time because of purportedly "new information" Strife presented to AISD justifying

her entitlement to a service dog. *See*, e.g., Dkt. 71, at 7 (emphasis added) ("Based on the latest

information received from Drs. Makulski and Vandeven, as well as the information from

Plaintiff's counsel negating alternative accommodations, the ***Committee*** approved Plaintiff's

request to bring Inde to work on February 24, 2023.").

However, in her November 30, 2023 deposition, Smith revealed that the ***EAC*** never saw

Dr. Vandeven's January 10, 2023 exam notes or Dr. Makulski's January 10th letter ***before or***

***during*** the February 24th meeting. *See* Smith (Exhibit H), at 173:3-174:13; 182:8-19. Smith also

attested that AISD's ***legal counsel*** drafted the February 24, 2023 letter ***approving*** Strife's service

dog request ***before*** the EAC met on February 24th. *Id.*, at 176:2-177:15.

In short, AISD's legal counsel—***not*** the EAC—approved Strife's request on February 24,

2023 and did so then not because of any new information Strife provided AISD on February

21st—as none had been provided—but because AISD feared that, if it failed to do so, this Court

would enter a preliminary injunction against it at the March 9, 2023 preliminary injunction

hearing. *See* Dkt. 17, at 33:24-33-34:3 ("[I]f it turns out her medical doctors have told her that

she needs a service animal and the conditions are as describe[d], I'm sympathetic to that,

especially, given the fact that we have a veteran who has provided service to this country.").

AISD's lie and attempted cover-up also evidence pretext. *See Reeves v. Sanderson Plumbing*

*Products*, 530 U.S. 133, 147 (2000) ("[The trier of fact can reasonably infer from the falsity of

the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an

---

against AISD for ADA discrimination and retaliation. AISD resolved that employee's Charge in a pre-suit
mediation. *See* Exhibit VV (filed under seal).

inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "'affirmative evidence of guilt.'").

    **F.**    **AISD's Discriminatory Animus Against Service Animals Is A "But For" Cause Of AISD's Discrimination And Retaliation Against Strife**

AISD's discriminatory animus against service animals is a "motivating factor" for its discrimination and a "but for" cause of its retaliation against/interference with Strife. As detailed above, Strife has established a *prima facie* case that AISD subjected her to both disability discrimination and retaliation/interference in violation of the ADA, RA, and TLC. Strife has also adduced substantial evidence of pretext.

Strife's *prima facie* case of discrimination and retaliation/interference—combined with the substantial pretext evidence—suffices to establish a genuine issue of material fact that, "but for" AISD's discriminatory animus against service animals and its retaliatory animus against Strife for seeking to enforce her ADA/RA/TLC rights, AISD would not have actually/constructively denied her service dog accommodation request. *See Bostock v. Clayton County, Georgia*, 140 S.Ct. 1731, 1739 (2020) ("When it comes to Title VII, the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision. So long as the plaintiff 's sex was one but-for cause of that decision, that is enough to trigger the law."); *Abdallah v. Mesa Air Group*, 83 F.4th 1006, 1015 (5th Cir. 2023) ("The ["but for"] test is whether the outcome would be different but for the protected class: That can be shown by comparing the experience of the plaintiff to what his treatment would have been but for the protected class or comparing the experience of the plaintiff to another individual without the protected class…"); *Goudeau v. Nat'l Oilwell Varco, L.P.,* 793 F.3d 470, 478 (5th Cir. 2015) ("[T]he pretext inquiry asks whether there is sufficient

evidence demonstrating the falsity of the employer's explanation, taken together with the prima facie case, to allow the jury to find that discrimination was the but-for cause of the termination.").

### G. Strife Has Raised A Genuine Issue Of Material Fact That ADA Subjected Her To A Disability-Based Hostile Work Environment

Finally, Strife has raised a genuine issue of material fact that AISD subjected her to a disability-based hostile work environment. To establish a claim of disability-based harassment, Strife must establish a genuine issue of material fact:

> (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) AISD knew or should have known of the harassment and failed to take prompt, remedial action.

See Flowers v. Southern Regional Physician Serv., 247 F.3d 229, 235-236 (5th Cir. 2001)

The disability-based harassment must be sufficiently severe **or** pervasive to alter the conditions of her employment and create an abusive working environment. Id.

The evidence recounted above—including AISD's long-running actual/constructive denial of Strife's service dog request, which seriously endangered her physical and psychological health and safety; its multiple illegal attempts to subject her to an invasive medical examination by its retained doctor; its attempt to violate her HIPAA rights; and its ever-increasing, pretextual demands for additional information to support her service dog request—establishes that AISD subjected Strife to severe and/or pervasive disability-based harassment that affected a term, condition, or privilege of her employment: specifically, her day-to-day working conditions. AISD—through its Superintendent (Gofney), its in-house counsel (Dewalt), and its Human Resources officials (Smith

and Villarreal)—not only knew of this harassment and failed to take prompt remedial action to stop it but perpetrated and perpetuated it. [31]

## IV. Conclusion

For these reasons, Plaintiff, Alisha Strife, respectfully requests this Court deny AISD's Motion For Summary Judgment (Dkt. 71) and award her all other relief to which she is entitled.

Respectfully submitted,

**/s/ Scott Newar**
SCOTT NEWAR
S.D. Texas Bar No. 19191
440 Louisiana, Suite 900
Houston, Texas 77002
Telephone: (713) 226-7950
Fax: (713) 226-7181 (Fax)
E-Mail: newar@newarlaw.com

ATTORNEY-IN-CHARGE
FOR PLAINTIFF, ALISHA STRIFE

**Of Counsel**
Dennis Herlong
Texas Bar No. 09510500
440 Louisiana, Suite 900
Houston, Texas 77002
Telephone: 713-228-9222
Fax: 713-228-9226
E-Mail: lawfirm@dennisherlong.com

---

[31] Contrary to AISD's assertion (Dkt. 71, at 19), Strife has never asserted a "pattern or practice" ***claim*** under the ADA, RA, or TLC. Rather, Strife asserts and maintains that "pattern"/"practice" ***evidence*** is admissible to prove her ADA, RA, and TLC discrimination, retaliation, and interference claims. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804-05 (1973) (Employer's "general policy and practice with respect to minority employment" "may be relevant to any showing of pretext"); *Vance v. Union Planters Corp.*, 209 F.3d 438, 445 (5th Cir. 2000) (emphasis added) ("Evidence concerning an employer's *general policy and practice* with respect to minority employment may be relevant to any showing of pretext.").

<u>**CERTIFICATE OF SERVICE**</u>

     I hereby certify that, on March 4, 2024, I served the instant pleading on Defendant, AISD, through its legal counsel via e-filing in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Texas.

<u>**/s/ Scott Newar**</u>