**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ALISHA STRIFE,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:23-cv-00358** |
| | § | |
| **ALDINE INDEPENDENT SCHOOL DISTRICT,** | § | |
| | § | |
| | § | |
| ***Defendant.*** | § | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Aldine Independent School District (AISD or the District) files its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

## I. Introduction

This case returns to the Court on a single, narrow issue. The Fifth Circuit affirmed judgment in AISD's favor on Plaintiff's claims for disability discrimination, retaliation, interference, and hostile work environment, leaving only Plaintiff's failure-to-accommodate claim. *Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 247-48 (5th Cir. 2025). This remaining claim turns on whether AISD's interactive process, through which Plaintiff ultimately received the exact accommodation she requested, was unlawfully "delayed" and not conducted in good faith. Importantly, the Fifth Circuit answered this question in affirming summary judgment on Plaintiff's retaliation claim:

> **[T]he evidentiary record offers ample support for AISD's assertions that despite Strife's submissions, it still needed an independent medical exam to complete its review. . . . AISD accordingly held a legitimate, non-discriminatory reason for insisting that Strife undergo an independent medical exam: to determine whether any alternative accommodations existed. Indeed, as soon as Strife's attorney affirmatively confirmed that no alternative accommodations were sufficient, the district dropped its request for an independent medical exam and approved Inde's**

**presence in the workplace.**

*Strife*, 138 F.4th at 250-51 (emphasis added).

The summary judgment record establishes that AISD continuously engaged in the interactive process, repeatedly sought information necessary to evaluate Plaintiff's request, and approved Plaintiff's requested accommodation immediately after receiving the final information the Employee Accommodation Committee (the Committee) had consistently requested throughout the process.

The undisputed evidence demonstrates that AISD did not ignore Plaintiff's request, it did not refuse to participate in the interactive process, nor did it intentionally prolong its review. Rather, the interactive process progressed as additional medical information became available and as AISD sought to determine whether any effective reasonable accommodation other than Plaintiff's preferred accommodation existed, in full compliance with the ADA. As soon as AISD confirmed that no effective alternative accommodation was available, it approved Plaintiff's request without delay. Because no reasonable jury could conclude from the summary judgment evidence that AISD failed to engage in the interactive process in good faith or unreasonably delayed Plaintiff's accommodation request, AISD is entitled to judgment as a matter of law.[1]

## II. Factual Background

### *A. Plaintiff suffers disabling injuries during military service before working at AISD.*

In 2004, Plaintiff suffered long-term physical and psychological injuries while serving in the United States Army in Iraq. ***See* Strife Deposition Transcript, attached as Ex. A, pp. 8:9-11:21**.

[1] Plaintiff brings her failure-to-accommodate claim under the ADA, the Rehabilitation Act, and Chapter 21 of the Texas Labor Code. Dkt. 66 at pp. 31-33. The Fifth Circuit reviews claims brought under these laws coextensively. *Strife*, 138 F.4th at 245 n.2. AISD's Motion for Summary Judgment seeks the dismissal of Plaintiff's failure-to-accommodate claim under each of these laws.

Since 2004, Plaintiff has undergone multiple surgeries and treatments to address her service-related injuries and diagnoses, which include a traumatic brain injury (TBI), Post-Traumatic Stress Disorder (PTSD), a leg injury impacting her stability, and a shoulder injury. *See* Ex. A, pp. 10-11, 32:10-33:22.

AISD originally employed Plaintiff as a teacher in the 2012-2013 school year. *See* Ex. A, p. 13:9-15. Plaintiff then worked as a Testing Coordinator within the District until the beginning of the 2022-2023 school year, when she was offered the position of Performance Management Project Analyst for AISD's Human Resources Department at the central administration building. Ex. A, pp. 13:19-15:11. Plaintiff had not requested any accommodations for her disabilities prior to the 2022-2023 school year. *See* Ex. A, pp. 15:9-11, 18:13-21.

***B. AISD engages Plaintiff in the interactive process.***

In late August 2022, Plaintiff began the process to seek a reasonable accommodation through Broadspire Services Inc. (Broadspire), AISD's third party benefits vendor. *See* Ex. A, pp. 18:13-20:13. Specifically, Plaintiff requested to bring her service dog Independence or "Inde" to work. *See id*. Thereafter, in early September 2022, Plaintiff uploaded documentation in support of her request to Broadspire's online submission portal regarding Plaintiff's and Inde's certifications and trainings. *See* Ex. A, pp. 18:22- 20:7; *see also* **Strife Initial Supporting Documents, attached as Ex. A-1**; *see* also **9/14/2022 Email Correspondence, attached as Ex. A-2**.

On September 16, 2022, the AISD Employee Accommodation Committee (the Committee), which held standing meetings each Friday during the 2022-2023 school year to meet and evaluate pending AISD employee accommodation requests, met to discuss Plaintiff's accommodation request. *See* **Dr. Javier Villareal Deposition Transcript, attached as Ex. B at pp. 27:16-29:24, pp. 39:22–42:5**. After considering Plaintiff's request and supporting documentation, the Committee determined that they needed additional information from the Plaintiff and her medical providers so they could

evaluate Plaintiff's essential job functions that were impacted by Plaintiff's disabilities, how the service dog would be utilized, and if there were any alternative accommodations that Plaintiff could utilize to assist with her limitations. *See* Ex. B, pp. 40:9-42:15.

On September 20, 2022, Broadspire contacted Plaintiff to confirm receipt of her request and inform her that her healthcare provider needed to complete a job accommodation questionnaire (JAQ) by October 5, 2022, so her request could be processed. *See* Ex. A, pp. 23:9-24:22; *see also* **9/20/2022 Email Correspondence, attached as Ex. A-3**. The JAQ and other information Broadspire requested was due by October 5, 2022. Ex. A-3.

On September 26, 2022, Plaintiff sent Smith a letter from Dr. Lisa Miller, Pharm. D, which stated that Plaintiff has PTSD, TBI, and osteopenia, which affects her balance and makes her prone to falling. *See* Ex. A, pp. 26:1-28:14; *see also* **9/26/2022 Email Correspondence, attached as Ex. A-4**. The letter also stated Plaintiff needed a service dog to accompany her to work to help Plaintiff with her balance and to provide "Deep Pressure Therapy." *See id*. The letter did not mention alternative options. *See id*.

The following morning, Smith sent an email to Plaintiff explaining that she needed documentation from a medical doctor that is licensed to diagnose the Plaintiff's conditions described in Dr. Miller's letter, because Dr. Miller was a pharmacist, not a physician. *See* Ex. A, p. 28:6-14; Ex. A-4, p. 2 (Strife_00062). Thereafter, on September 29, 2022, Plaintiff sent Smith a letter dated September 29, 2022, this time from psychiatrist Dr. Gurtej S. Mann, M.D., which was substantively identical to Dr. Miller's September 22, 2022, letter. *See* Ex. A, pp. 28:16-30:10; *see also* **9/29/2022 Letter from Dr. Mann, attached as Ex. A-5**.

On November 1, 2022, Plaintiff emailed Smith to inform her that she left a copy of a completed JAQ in Smith's office. *See* Ex. A, pp. 51:20-52:25; *see also* **11/1/2022 Email**

**Correspondence, attached as Ex. A-6, p. 1 (Strife_00076)**. The JAQ did not address alternative accommodations. *See* Ex. A, pp. 54:19-25, 56:18-58:2; *see also* **JAQ, attached as Ex. A-7**. The JAQ provided that Plaintiff's physical limitations impacted her performance of job duties. Ex. A, pp. 57:6-58:2; Ex. A-7.

Smith and Dr. Javier Villareal, Chief of Operations for AISD, determined Plaintiff needed to attend an examination with a third-party medical provider to get additional information the Committee still needed to finalize the interactive process. *See* Ex. B, pp. 10:20-13:3. AISD Board Policy DBB (Local) provides that an employee may "undergo a medical examination if information received from the employee . . . or other sources indicates the employee has a physical or mental impairment that . . . interferes with the employee's ability to perform essential job functions[.]" **AISD Board Policy DBB (Local), attached as Ex. A-8** (omissions and alterations added); Ex. A, pp. 70:4-72:16. Here, although AISD had Plaintiff's diagnostic conclusions and that she wanted a service animal at work, AISD still lacked answers about whether alternative accommodations were available. *See* Ex. B, pp. 10:20-13:3.

Thereafter, on November 11, 2022, Smith met with Plaintiff and notified her that she would be scheduled to attend a medical examination so that the physician could fully evaluate Plaintiff's accommodation needs and opine regarding potential alternative accommodations. *See* Ex. A, pp. 58-60, 64:15-19, 66:19-22; *see also* **11/10/2022 Email Correspondence, attached as Ex. A-9**. Later that afternoon, Smith received a letter from O'Connell (of The Rescue for PTSD organization), espousing legal conclusions regarding the interactive process with Plaintiff and the District's request that Plaintiff attend a medical examination. *See* Ex. A, pp. 65:16-66:18; *see also* **11/11/2022 Letter, attached as Ex. A-10**. This letter still did not address the information the Committee deemed

incomplete regarding Plaintiff, including whether there were any alternative accommodations that could support Plaintiff's limitations. *See id.*

On November 16, 2022, Smith sent Plaintiff a letter following up on their November 11, 2022, discussion, wherein Smith explained the medical examination would occur at the Concentra Occupational Health Center. *See* Ex. A, pp. 66:23-68:11; *see also* **Medical Examination Letters, attached as Ex. A-11, p. 1 (Strife_00394)**. Smith also attached AISD Board Policy DBB (Local) to the letter. *See* Ex. A, pp. 69:18-72:25; *see also* Ex. A-8. After returning from Thanksgiving break, Smith sent Plaintiff a letter on December 23, 2022, that informed Plaintiff that the medical examination was scheduled for January 10, 2023, and disclosed the physician who would perform the examination. *See* Ex. A, p. 68:12-23; Ex. A-11, p. 2 (Strife_00395). However, Plaintiff did not attend the scheduled appointment on January 10, 2023, or anytime thereafter, and did not inform AISD that she was not going to attend. *See* Ex. A, pp. 68:19-69:7.

Plaintiff's counsel sent AISD a letter dated January 11, 2023, from Dr. Darlene Makulski, Physical Therapist at the VA. *See* Ex. A, pp. 74:13-25, 78:19-79:4; *see also* **Strife January 2023 Supporting Documentation, attached as Ex. A-12, p. 1 (Strife_00115)**. Dr. Makulski opined that she and Plaintiff's physical therapist felt that a certified service mobility dog was appropriate for Ms. Strife to utilize to avoid further balance-related injuries. *See id*. In addition, Dr. Makulski directed AISD to review a medical note from Dr. Sheryl Vandeven, Doctor of Physical Therapy. *See id*. Dr. Vandeven's' physical therapy consult notes dated January 10, 2023, provided a thorough analysis of Plaintiff's physical limitations and tasks her service animal would provide to address Plaintiff's mobility related impairments. *See* Ex. A, pp. 76:11-79:25; Ex. A-12, pp. 5-8 (Strife_00107-00114). Notably, however, neither Dr. Makulski's letter nor Dr. Vandeven's consult notes addressed whether any alternative accommodations existed for Plaintiff's mobility-and-stability based limitations. *See*

Ex. A, p. 79:9-24; Ex. A-12; Ex. B, pp. 83:24-86:16. Dr. Villareal testified that although the District finally possessed a thorough analysis of Plaintiff's physical limitations and how Plaintiff's service dog would be utilized to assist with her physical limitations, information remained lacking regarding whether alternative accommodations existed. *See* Ex. B, pp. 83:24-86:16.

***C. Plaintiff sues AISD twice before the conclusion of the interactive process.***

On January 18, 2023, Plaintiff filed an Original Petition in Harris County District Court, seeking a temporary restraining order (TRO) and injunction. *See* **Case No. 2023-03186 Judgments/Events Summary, attached as Ex. C**. Plaintiff non-suited the state court lawsuit after failing to obtain a TRO at the January 27, 2023, hearing, and on February 1, 2023, Plaintiff filed the instant lawsuit and sought injunctive relief. *See id.*; *see also* Dkts. 1 and 7.

The Court held a TRO hearing on February 15, 2023. *See generally* Dkt. 17. The Court denied the TRO. *See id.* at p. 28:7-8. The Court admonished the parties with the expectation that the interactive process be completed through a decision regarding Plaintiff's accommodation prior to the permanent injunction hearing. *See id.* at pp. 33-35. The Court advised Plaintiff that perhaps she could provide a "more limited release that will get [AISD] the information that they need regarding the decision-making of the doctors in affording this particular accommodation to the Plaintiff." *See id.* at p. 36:10-14 (alteration added).

***D. AISD approves Plaintiff's requested accommodation.***

On February 17, 2023, AISD's counsel wrote Plaintiff's counsel seeking authorization to have Plaintiff's medical providers specifically address whether alternative accommodations existed, such as a walker, cane, or wheelchair, which could address Plaintiff's mobility-and-stability related limitations. *See* Ex. A, pp. 80:1-14, 84:8-25; *see also* **Strife Accommodation Approval Letter, attached as Ex. A-13, p. 2 (Strife_00473)**. In response, Plaintiff's counsel provided it was "self-

evident that a walker, cane, and/or wheelchair would not be an effective accommodation," and explained the basis for that contention. *Id*. This was the first time AISD received an answer concerning potential alternative accommodations for Plaintiff. *See* Ex. A, pp. 85:24-86:9. Based on the latest information received from Drs. Makulski and Vandeeven, as well as the information from Plaintiff's counsel negating alternative accommodations, the Committee approved Plaintiff's request to bring Inde to work on February 24, 2023. *See* Ex. A, p. 80:1-14; Ex. A-13; Ex. B, pp. 81:1-83:9. Plaintiff and Inde worked together at AISD once the accommodation was approved. *See* Ex. A, pp. 83:24-84:1.

## III. Arguments and Authorities

### *A. The Fifth Circuit's Decision Forecloses Plaintiff's Failure-to-Accommodate Claim.*

On May 16, 2025, the Fifth Circuit affirmed judgment in favor of AISD on Plaintiff's claims for disability discrimination, retaliation, interference, and hostile work environment, leaving only Plaintiff's failure-to-accommodate claim. *Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 247-48 (5th Cir. 2025). While the Fifth Circuit remanded Plaintiff's failure-to-accommodate claim based on Plaintiff's allegations of AISD's purported "delay" in approving her request for a service animal, the Fifth Circuit's analysis and dismissal of Plaintiff's ADA retaliation claim necessarily forecloses her failure-to-accommodate claim. The Fifth Circuit held as follows:

> **[T]he evidentiary record offers ample support for AISD's assertions that despite Strife's submissions, it still needed an independent medical exam to complete its review.** At the time the district made its first exam request, on November 11, 2022, Strife had supplied the district with five pieces of information: (1) certifications that allowed her to own a service animal; (2) letters from the VA that identified her physical and psychological disabilities; (3) a letter from Dr. Miller, her treating pharmacologist, stating that Strife's psychological conditions necessitated a service dog; (4) a letter from Dr. Mann, her treating psychologist, with nearly-identical contents to Dr. Miller's letter; and (5) the questionnaire that Dr. Mann completed, which stated that a "trained service animal" could help "ground" Strife. Each of these documents explained that a service dog at Strife's workplace would be beneficial to her physical and psychological health. But none addressed whether any alternative measures, such as a cane, wheelchair, or

> workplace modifications, could alternatively redress Strife's disabilities. And that missing piece is significant because "[t]he ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation." *E.E.O.C. v. Agro Distrib., LLC*, 555 F.3d 462, 471 (5th Cir. 2009). **AISD accordingly held a legitimate, non-discriminatory reason for insisting that Strife undergo an independent medical exam: to determine whether any alternative accommodations existed. Indeed, as soon as Strife's attorney affirmatively confirmed that no alternative accommodations were sufficient, the district dropped its request for an independent medical exam and approved Inde's presence in the workplace. The burden then returns to Strife to demonstrate that AISD's rationale was, in reality, a pretext for discrimination. She points to the district's repeated requests for additional documentation, its failure to suggest any alternative accommodations, and request for an exam, as evidence that AISD's rationale was pretextual. But those actions do not evince discrimination or retaliation; they simply illustrate AISD's attempts to confirm, as part of the interactive process, whether alternative accommodations existed.** And to the extent that Strife believes that the district was incorrect or mistaken in requesting additional information, the ADA retaliation inquiry lies in identifying "discriminatory motive," not simply "erroneous decision[making]." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995). The district court correctly granted summary judgment on Strife's retaliation claim.

*Strife*, 138 F.4th at 250-51 (emphasis added).

The Fifth Circuit's reasoning cannot be reconciled with Plaintiff's remaining theory that AISD violated the ADA by delaying approval of her preferred accommodation while it completed the interactive process. The Fifth Circuit expressly held that AISD had "ample support" for its determination that additional information was necessary to evaluate Plaintiff's request; that the documentation Plaintiff initially provided failed to address whether alternative accommodations could adequately address her limitations; that AISD therefore possessed a "legitimate, non-discriminatory reason" for requesting additional information and an independent medical examination; and that the District approved Plaintiff's request "as soon as" Plaintiff's counsel confirmed that no alternative accommodations were sufficient. *Strife*, 138 F.4th at 250-51. Most significantly, the Fifth Circuit rejected Plaintiff's contention that AISD's repeated requests for additional documentation, failure to immediately propose an alternative accommodation, and request for an independent medical examination evidenced unlawful conduct, holding instead that

"those actions do not evince discrimination or retaliation; they simply illustrate AISD's attempts to confirm, as part of the interactive process, whether alternative accommodations existed." *Id*. at 250-51. Those factual conclusions substantially undermine Plaintiff's remaining claim because the only alleged "delay" identified by Plaintiff consists of the very actions the Fifth Circuit determined were lawful efforts to discharge AISD's obligations under the ADA's interactive process.

The Fifth Circuit reversed dismissal of Plaintiff's failure-to-accommodate claim because, solely accepting the allegations in the complaint as true, Plaintiff plausibly alleged that AISD acted in bad faith by unnecessarily prolonging the interactive process. But after reviewing the evidentiary record, the Fifth Circuit concluded that AISD's conduct was supported by a legitimate need to determine whether alternative reasonable accommodations existed and that the District approved Plaintiff's request immediately after receiving the information necessary to complete that analysis. There is no remaining factual basis upon which a reasonable jury could conclude that AISD's review process constituted an unlawful delay rather than the good-faith interactive process required by the ADA.

***B. AISD Fully Complied with Its Duty to Engage in the Interactive Process.***

The Fifth Circuit narrowed this case to a single issue: whether AISD unreasonably delayed approving Plaintiff's request to bring her service dog to work. However, the Fifth Circuit emphasized that it was reviewing only the sufficiency of Plaintiff's allegations at the Rule 12 stage and was therefore required to accept those allegations as true. *Strife*, 138 F.4th at 244, 247-48. The Fifth Circuit expressly acknowledged AISD's position that it sought additional medical information to determine whether accommodations other than a service dog would effectively address Plaintiff's limitations but concluded only that Plaintiff had plausibly alleged otherwise. *Id.*

The summary judgment record demonstrates that, rather than ignoring Plaintiff's request or delaying consideration of it without justification, AISD immediately initiated the interactive process, repeatedly communicated with Plaintiff and her counsel, evaluated each new submission as it was received, sought clarification from Plaintiff's medical providers, and continued requesting information necessary to determine whether any reasonable accommodation other than Plaintiff's preferred accommodation would enable her to perform the essential functions of her position. The Fifth Circuit has long recognized that responsibility for fashioning an accommodation is shared by the employer and employee and requires a constructive, bilateral discussion and good-faith exploration of possible accommodations. *See Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996); *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 735–36 (5th Cir. 1999); *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621–22 (5th Cir. 2009). When AISD finally received the information it had consistently sought throughout the interactive process, it approved Plaintiff's request within days. No reasonable jury could conclude from this record that AISD failed to satisfy its obligations under the ADA, and AISD is accordingly entitled to summary judgment on Plaintiff's remaining failure-to-accommodate claim. *See E.E.O.C. v. Methodist Hosps. of Dallas*, 62 F.4th 938, 947-52 (5th Cir. 2023) (affirming summary judgment where the evidence demonstrated that the employer continued engaging in the interactive process and did not foreclose consideration of possible accommodations).

### ***C. The ADA Required AISD to Evaluate Plaintiff's Accommodation Request Through the Interactive Process.***

The ADA requires employers to engage in a good-faith interactive process with an employee requesting a reasonable accommodation. *See Chevron Phillips*, 570 F.3d at 621-22; *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 112 (5th Cir. 2005). "Under the ADA, once the employee presents a request for an accommodation, the employer is required to

engage in [an] interactive process so that *together* they can determine what reasonable accommodations might be available." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 699 (5th Cir. 2014) (alteration in original) (quoting *Chevron Phillips*, 570 F.3d at 622). That process necessarily contemplates communication between the parties, the exchange of relevant medical information, and an individualized assessment of the employee's limitations and potential accommodations. *See Methodist Hosps.*, 62 F.4th at 947-48; *Loulseged*, 178 F.3d at 735-36. Indeed, the governing regulation explains that the process should identify "the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3); *see also Methodist Hosps.*, 62 F.4th at 947.

An employer is entitled to obtain information reasonably necessary to evaluate the request and is not required to accept an employee's preferred accommodation without first determining whether another reasonable accommodation would effectively enable the employee to perform the essential functions of the position. *See Taylor*, 93 F.3d at 165-66 (explaining that the employee must provide sufficient information concerning the disability and resulting limitations to permit the employer to identify an appropriate accommodation); *Loulseged*, 178 F.3d at 735–36 (recognizing that both parties must exchange information necessary to identify an effective accommodation). The interactive process is intended to permit the parties to determine what accommodation is appropriate, not to require the employer to approve the employee's initial demand without inquiry. *See Methodist Hosps.*, 62 F.4th at 947-48.

Indeed, the Fifth Circuit has repeatedly recognized that the ADA guarantees access to a reasonable accommodation, which is not necessarily the accommodation preferred by the employee. *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009); *see also Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 418 (5th Cir. 2017) ("The ADA provides

a right to reasonable accommodation, not to the employee's preferred accommodation."). An employer and employee therefore should engage in "flexible, interactive discussions" to determine the appropriate accommodation. *Agro Distribution*, 555 F.3d at 471. An employer acts consistently with the ADA when it seeks information necessary to determine whether alternative reasonable accommodations exist before approving a requested accommodation.

Here, Plaintiff's accommodation request did not merely seek permission to bring a service animal into the workplace; it asked AISD to determine whether a service animal was the reasonable accommodation required by the ADA. Before making that determination, AISD was entitled to understand Plaintiff's functional limitations and whether those limitations could be effectively addressed through another reasonable accommodation. The Fifth Circuit expressly held that the absence of information concerning alternative accommodations was "significant" and supplied AISD with a legitimate basis for seeking additional information. *Strife*, 138 F.4th at 250–51.

***E. The Summary Judgment Evidence Demonstrates That AISD Continuously Participated in the Interactive Process.***

The summary judgment evidence demonstrates that AISD began evaluating Plaintiff's request almost immediately after it was submitted. The Committee met within weeks of Plaintiff's request and identified specific information it required before reaching a decision. Rather than denying Plaintiff's request, the Committee requested additional medical information concerning Plaintiff's limitations, the manner in which the requested accommodation would address those limitations, and whether alternative reasonable accommodations would permit Plaintiff to perform the essential functions of her position. Such efforts are precisely what the interactive process contemplates. *See Taylor*, 93 F.3d at 165; *Chevron Phillips*, 570 F.3d at 621-22; *LHC Group*, 773 F.3d at 699.

AISD continued to engage in the interactive process over the ensuing months. Plaintiff submitted additional medical documentation on multiple occasions and each submission was reviewed by the Committee. *Supra Section II*. Ms. Smith communicated directly with Plaintiff, attempted to speak with Plaintiff's medical providers, exchanged correspondence with Plaintiff's counsel, and continued gathering information requested by the Committee. *Id.* At no point did AISD terminate the interactive process, refuse to consider Plaintiff's request, or advise Plaintiff that her request had been denied. *Id.*

The Fifth Circuit has held that an employer does not violate the ADA when the record reflects continuing efforts to identify and provide an appropriate accommodation. *Methodist Hosps.*, 62 F.4th at 947-52. In determining whether an employer abandoned the interactive process, the relevant inquiry includes whether anything in the record would permit a reasonable inference that the employer had clearly foreclosed consideration of possible accommodations. *Loulseged*, 178 F.3d at 739-40; *Methodist Hosps.*, 62 F.4th at 951–52. Where there is no "clear finality" and the employer remains willing to consider possible accommodations, no reasonable jury may find that the employer ended the interactive process. *Loulseged*, 178 F.3d at 739-40.

Instead, the record reflects an ongoing dialogue in which each new submission generated additional review and additional requests for clarification. AISD's conduct stands in sharp contrast to cases in which an employer refused to discuss a proposed accommodation, remained silent, walked away, or terminated the employee before an accommodation could be considered. *See Chevron Phillips*, 570 F.3d at 622; *LHC Group*, 773 F.3d at 699–700; *Cutrera*, 429 F.3d at 112–13. The undisputed evidence therefore refutes Plaintiff's allegation that AISD simply delayed acting on her request.

### *E. AISD Reasonably Sought Information Concerning Alternative Reasonable Accommodations.*

Plaintiff's primary argument concerning AISD's conduct is that the District continued requesting medical information after receiving documentation supporting the use of a service dog. The summary judgment record explains the basis for these requests. *Supra Section II*. Although Plaintiff's providers consistently recommended the use of a service dog, the Committee continued seeking information concerning whether Plaintiff's functional limitations could be effectively addressed through another reasonable accommodation. *Id*. Dr. Villareal testified that this question remained unanswered throughout much of the interactive process and prevented the Committee from completing its evaluation. *Id*.

That inquiry was entirely consistent with the ADA, which *required* AISD to determine whether a reasonable accommodation existed and not simply whether Plaintiff's preferred accommodation was appropriate. *See Agro Distribution*, 555 F.3d at 471; *Moss*, 851 F.3d at 418. The Fifth Circuit recognizes that the interactive process is a mechanism through which the parties identify both the employee's precise limitations and the potential accommodations capable of overcoming those limitations. *Methodist Hosps.*, 62 F.4th at 947; *LHC Group*, 773 F.3d at 699; *Chevron Phillips*, 570 F.3d at 621–22. AISD acted reasonably by seeking clarification regarding whether alternative mobility accommodations, including the use of a walker, cane, or wheelchair, would adequately address Plaintiff's limitations. *Supra Section II.*

Indeed, the Fifth Circuit has already held *in this case* that the medical documentation submitted by Plaintiff supported the benefits of a service dog but did not address whether "alternative measures, such as a cane, wheelchair, or workplace modifications, could alternatively redress Strife's disabilities." *Strife*, 138 F.4th at 250. The court deemed that omission "significant" because the ADA does not entitle an employee to her preferred accommodation and held that AISD therefore had a legitimate basis for seeking the missing information. *Id*. at 250-51.

The evidence establishes that this information was not provided until February 2023, when Plaintiff's counsel advised AISD that those alternatives would not effectively accommodate Plaintiff's disabilities. Ex. A-13. Only then did AISD possess the information it had consistently sought throughout the interactive process. As the Fifth Circuit expressly recognized, "as soon as Strife's attorney affirmatively confirmed that no alternative accommodations were sufficient, the district dropped its request for an independent medical exam and approved Inde's presence in the workplace." *Strife*, 138 F.4th at 251.

### *F. The Timing of AISD's Approval Confirms That It Participated in the Interactive Process in Good Faith.*

Perhaps the strongest evidence of AISD's good faith is the undisputed fact that, within one week after receiving confirmation that alternative mobility accommodations would not effectively address Plaintiff's limitations, the Committee approved Plaintiff's request to bring her service dog to work. That sequence of events conclusively rebuts Plaintiff's theory that AISD intentionally delayed or obstructed the accommodation process.

Although an employer's unwillingness to engage in the interactive process may support liability when it results in a failure to provide a reasonable accommodation (*Cutrera*, 429 F.3d at 112), the ADA does not require an employer to "move with maximum speed to complete this process and preempt any possible concerns." *Loulseged*, 178 F.3d at 737; *see Strife*, 138 F.4th at 246. Rather, the inquiry is whether the employer obstructed the process or failed to act in good faith. *See Loulseged*, 178 F.3d at 736–37 & n.6; *Schilling v. La. Dep't of Transp. & Dev.*, 662 F. App'x 243, 246–47 (5th Cir. 2016). Delay may evidence a lack of good faith, but elapsed time alone does not establish an ADA violation. *Strife*, 138 F.4th at 246-48; *Schilling*, 662 F. App'x at 246-47.

Had AISD been attempting to avoid providing the requested accommodation, there would have been no reason to approve the request almost immediately after receiving the final information the Committee had repeatedly requested. Instead, the undisputed chronology of events demonstrates exactly what AISD has maintained throughout this litigation: the District continued evaluating Plaintiff's request until it obtained sufficient medical information to make an informed decision, and once that information was received, it approved Plaintiff's requested accommodation without delay. *Supra Section II*. The Fifth Circuit reached precisely that conclusion in holding that AISD's actions "simply illustrate AISD's attempts to confirm, as part of the interactive process, whether alternative accommodations existed." *Strife*, 138 F.4th at 251.

***G. No Reasonable Jury Could Find That AISD Violated the ADA.***

Plaintiff ultimately received the precise accommodation she requested. She remained employed by AISD throughout the interactive process, and there is no evidence that AISD ever abandoned its efforts to evaluate her request or refused to participate in the interactive process. While the Fifth Circuit concluded that Plaintiff's complaint plausibly alleged an unreasonable delay sufficient to survive a motion to dismiss, the summary judgment record confirms that AISD consistently participated in the interactive process, repeatedly evaluated Plaintiff's evolving medical submissions, sought information reasonably necessary to determine whether alternative reasonable accommodations existed, and approved Plaintiff's request immediately after receiving the final information necessary to complete that evaluation. *Supra Section II.*

An employer violates the ADA through the interactive process only when its unwillingness to engage in a good-faith process leads to a failure to reasonably accommodate the employee. *Cutrera*, 429 F.3d at 112; *Loulseged*, 178 F.3d at 736. The interactive process is not itself an independent source of liability; the process exists to facilitate identification of an appropriate

reasonable accommodation. *See Methodist Hosps.*, 62 F.4th at 947–52. Moreover, responsibility for the process is shared, and an employer is not liable for a breakdown attributable to the employee or for continuing to seek information necessary to evaluate possible accommodations. *Taylor*, 93 F.3d at 165; *Loulseged*, 178 F.3d at 736; *Methodist Hosps.*, 62 F.4th at 947-52.

On this record, no reasonable jury could conclude that AISD failed to engage in the interactive process in good faith or unreasonably delayed Plaintiff's accommodation. AISD never rejected Plaintiff's request, never abandoned the interactive process, and never foreclosed consideration of the requested accommodation. Instead, AISD approved Plaintiff's request immediately after receiving the information necessary to determine that no effective alternative reasonable accommodation existed. *See Strife*, 138 F.4th at 250-51. Accordingly, AISD is entitled to judgment as a matter of law on Plaintiff's remaining failure-to-accommodate claim.

### *H. AISD Retains Its Governmental Immunity from Plaintiff's Chapter 21 Claim.*

AISD is a governmental entity entitled to immunity from state law claims except to the extent that immunity has been expressly waived by the Texas Legislature. Although Chapter 21 of the Texas Labor Code contains a limited waiver of governmental immunity, that waiver exists only when a plaintiff states and ultimately proves conduct that violates Chapter 21. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 783 (Tex. 2018). Thus, when a governmental employer conclusively negates an essential element of a Chapter 21 claim, the statutory waiver does not apply, and the governmental entity retains its immunity. *Id.*

As demonstrated above, the Fifth Circuit's decision, together with the summary judgment evidence, conclusively establishes that AISD fulfilled its obligations under the ADA's interactive process and did not fail to provide Plaintiff with a reasonable accommodation. The undisputed evidence demonstrates that AISD promptly initiated the interactive process, reasonably sought

information necessary to determine whether alternative reasonable accommodations existed, continuously engaged with Plaintiff and her counsel throughout that process, and approved Plaintiff's requested accommodation immediately after receiving the information necessary to complete its evaluation. *Supra Section II*. Because Plaintiff cannot establish that AISD failed to provide a reasonable accommodation or otherwise violated Chapter 21, the statute does not waive AISD's governmental immunity. *See Clark*, 544 S.W.3d at 783. Accordingly, because Plaintiff cannot establish conduct that violates Chapter 21, AISD retains its governmental immunity, and the Court lacks subject-matter jurisdiction over Plaintiff's Chapter 21 claim.

**Prayer**

Defendant Aldine Independent School District requests that the Court grant its Motion for Summary Judgment and dismiss Plaintiff's claims against AISD with prejudice.

Respectfully submitted,

SPALDING NICHOLS LAMP LANGLOIS

/s/ *Melissa M. Goins*
MELISSA M. GOINS
State Bar No. 24074671
mgoins@snll-law.com
PAUL A. LAMP
State Bar No. 24002443
plamp@snll-law.com
3700 Buffalo Speedway, Suite 500
Houston, Texas 77098
Telephone: 713/993-7066
Facsimile: 888/726-8374

ATTORNEYS FOR DEFENDANT AISD

**CERTIFICATE OF CONFERENCE**

I hereby certify that on July 29, 2026, I conferred in good faith with opposing counsel regarding the filing of this Motion and relief requested therein, and opposing counsel stated that he was opposed to the same.

/s/ *Melissa M. Goins*
ATTORNEY FOR DEFENDANT AISD

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record via electronic mail and/or ECF on July 30, 2026, addressed as follows:

Scott Newar
440 Louisiana Street, Suite 900
Houston, Texas 77002
newar@newarlaw.com
*(Attorney for Plaintiff)*

/s/ Melissa M. Goins
ATTORNEY FOR DEFENDANT AISD